UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
RYAN BIBB, Individually and on                    :
Behalf of All Others Similarly Situated,          :        Case No. 1:21-cv-07025-AKH
                                                  :
                        Plaintiff,                :
                                                  :        "ECF" Case
        vs.                                       :
                                                  :
SESEN BIO, INC., THOMAS R. CANNELL,               :
and MONICA FORBES,                                :
                                                  :
                        Defendants.               :
_____:
MICHAEL CIZEK, Individually and on                :
Behalf of All Others Similarly Situated,          :        Case No. 1:21-cv-07309-AKH
                                                  :
                        Plaintiff,                :
                                                  :        "ECF" Case
        vs.                                       :
                                                  :
SESEN BIO, INC., THOMAS R. CANNELL,               :
and MONICA FORBES,                                :
                                                  :
                        Defendants.               :
_____:
SCOTT MARKMAN, Individually and on                :
Behalf of All Others Similarly Situated,          :        Case No. 1:21-cv-08308-AKH
                                                  :
                        Plaintiff,                :        "ECF" Case
                                                  :
        vs.                                       :
                                                  :
SESEN BIO, INC., THOMAS R. CANNELL,               :
and MONICA FORBES,                                :
                                                  :
                        Defendants.               :
_____:

**MEMORANDUM OF LAW IN SUPPORT OF MOVANTS' SCOTT MARKMAN AND
DONALD DAUGHERTY'S MOTION TO CONSOLIDATE RELATED ACTIONS,
APPOINT DONALD DAUGHERTY AS LEAD PLAINTIFF, AND APPROVE
PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................................. 1

II.   FACTUAL BACKGROUND................................................................................................ 3

III.  ARGUMENT....................................................................................................................... 7

   A.  Consolidation is Appropriate ....................................................................................... 7

   B.  Movant Should be Appointed Lead Plaintiff............................................................... 8

      1.  Notice Was Properly Published Under the PSLRA .............................................. 9

      2.  Movant is "The Most Adequate Plaintiff" ........................................................... 9

         a.  Movant has Moved for Appointment as Lead Plaintiff Within 60 Days of

             Publication of Notice .................................................................................... 10

         b.  Movant has the Largest Financial Interest in the Relief Sought.................. 11

      3.  Movant Otherwise Satisfies the Requirements of Fed. R. Civ. P. 23 ............... 12

         a.  The Claims of Movant are Typical of the Claims of Other

             Members of the Class.................................................................................... 13

         b.  Movant will Fairly and Adequately Represent the Interests of the Class .... 15

      4.  The Court Should Approve Movant's Choice of Counsel .................................. 16

III.  CONCLUSION ................................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**

*Daniels v. City of N.Y.*,

   198 F.R.D. 409 (S.D.N.Y. 2001) ...................................................... 14

*De La Fuente v. Stokely-Van Camp, Inc.*,

   713 F.2d 225 (7th Cir. 1983)............................................................ 13, 14

*Ferrari v. Impath*,

   No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004) .................. 14

*Fischler v. Amsouth Bancorporation*,

   No. 96-1567-Civ.-T-17A 1997 WL 118429 (M.D. Fla. Feb. 6, 1997) ..................................... 13

*Greebel v. FTP Software, Inc.*,

   939 F. Supp. 57 (D. Mass. 1996) ........................................................ 9

*Hart Holding Co. v. Drexel Burnham Lambert Group, Inc.*,

   506 U.S. 1088 (1993) ....................................................................... 15

*Hurd v. Monsanto Co.*,

   164 F.R.D. 234 (S.D. Ind. 1995)........................................................ 14

*In re Amb. Bus. Fin. Serv., Inc. Sec. Litig.*, No. Civ. A. 04-0265,

   2004 WL 1221353 (E.D. Pa. June 3, 2004) ........................................ 11

*In re AOL Time Warner Sec. & "ERISA" Litig.*,

   MDL No. 1500, 2003 U.S. Dist. LEXIS 145 (S.D.N.Y. Jan. 8, 2003) .................................... 10

*In re Cavanaugh*,

   306 F.3d 726 (9th Cir. 2002).............................................................. 10, 13, 15, 16

*In re Cell Pathways, Inc. Sec. Litig.*,

 203 F.R.D. 189 (E.D.Pa. 2001) ............................................................................. 11

*In re Cendant Corp. Litig.*,

 264 F.3d 201 (3d Cir. 2001) ................................................................................... 10

*In re Drexel Burnham Lambert Group, Inc.*,

 960 F.2d 285 (2d Cir. 1992) ................................................................................... 14

*In re Fuwei Films Sec. Litig.*,

 247 F.R.D. 432 (S.D.N.Y. 2008) .................................................................. 13, 14, 15

*In re Heritage Bond Litig.*,

 MDL No. 02-1475, 2004 U.S. Dist. LEXIS 15386, at *25 (C.D. Cal. July 12, 2004) ............. 14

*In re Nice Systems Sec. Litig.*,

 188 F.R.D. 206 (D. N.J. 1999) ................................................................................. 9

*In re Nortel Net2works Corp.*,

 No. 01-1855, 2002 U.S. Dist. LEXIS 1633, at *2 (S.D.N.Y. Feb. 4, 2002) ....................... 16,17

*In re Star Gas Sec. Litig.*,

 No. 3:04cv1766, 2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005) ................................ 10

*In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*,

 122 F.R.D. 251 (C.D. Cal. 1988) ............................................................................. 15

*In re Vicuron Pharmaceuticals, Inc. Sec. Litig.*,

 225 F.R.D. 508 (E.D. Pa. 2004) ............................................................................. 11

*In re Waste Management, Inc. Sec. Litig.*,

 128 F.Supp.2d 401 (S.D. Tex. 2000) .......................................................................... 1

*Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*,

    102 F.R.D. 457 (N.D. Cal. 1983) ...................................................................... 15

*Johnson v. Celotex Corp.*,

    899 F.2d 1281 (2d Cir. 1990) ........................................................................... 7

*Kuriakose v. Fed. Home Loan Mortg. Co.*,

    No. 1:08-cv-7281, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) .......................... 10

*Khunt v. Alibaba Grp. Holding Ltd.*,

    102 F. Supp. 3d 523 (S.D.N.Y. 2015) .................................................................. 10

*Kux-Kardos v. VimpelCom, Ltd.*,

    151 F. Supp. 3d 471 (S.D.N.Y. 2016) ................................................................... 7

*Lax v. First Merchants Acceptance Corp.*,

    No. 97-C-2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) .................................... 9, 13

*Lerwill v. Inflight Motion Pictures, Inc.*,

    582 F.2d 507 (9th Cir. 1978) .......................................................................... 15

*Pirelli Armstrong Tire Corp. Retiree Medical Benefit Trust v. LeBranche & Co., Inc.*,

    229 F.R.D. 395 (S.D.N.Y. 2004) ........................................................... 10, 11, 13, 15

*Primavera Familienstiftung v. Askin*,

    173 F.R.D. 115 (S.D.N.Y. 1997) ........................................................................ 7

*Rosario v. Livaditis*,

    963 F.2d 1013 (7th Cir. 1992) ......................................................................... 13

*Sofran v. Labranche & Co.*,

    220 F.R.D. 398 (S.D.N.Y. 2004) .................................................................. 8, 9, 10

iv

*Wilder v. Bernstein*,

 499 F. Supp. 980 (S.D.N.Y. 1980) ............................................................................. 14

*Xianglin Shi v. Sina Corp.*,

 No. 05 Civ. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005) .................................... 11

**Statutes**

15 U.S.C. § 77z-1(a)(3)(A) and (B) ................................................................................. 8

15 U.S.C. § 78u-4 ................................................................................................. passim

**Rules**

Fed. R. Civ. P. 23 ................................................................................................. passim

Fed. R. Civ. P. 42 ................................................................................................... 7,8

Plaintiff Scott Markman ("Plaintiff") and class member Donald Daugherty ("Movant") (collectively "Movants"), move the Court for an order: (1) consolidating the above-styled and related actions; (2) appointing Donald Daugherty as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "1934 Act" or the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), as amended by Section 101(a) of the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (the "PSLRA"); (3) approving Movant's selection of the law firm of George Gesten McDonald, PLLC ("GGM") and Federman & Sherwood as Lead Counsel;[1] and (4) granting such other relief as the Court may deem just and proper.

## I.    INTRODUCTION

Pending before this Court are three (3) securities class action lawsuits brought by purchasers of the common stock of Sesen Bio, Inc. ("Sesen Bio" or the "Company") against Sesen Bio and certain of its present and former officers and directors: (1) *Bibb v. Sesen Bio, Inc.*, *et al.*, Case No. 1:2021-cv-07025-AKH (S.D.N.Y.) ("*Bibb* Action"); (2) *Cizek v. Sesen Bio, Inc.*, *et al.*, Case No. 1:21-cv-07309-AKH (S.D.N.Y.) ("*Cizek* Action"); and *Markman v. Sesen Bio, Inc.*, *et al.*, Case No. 1:21-cv-08308-AKH (S.D.N.Y.) ("*Markman* Action").  The complaints allege that Defendants Sesen Bio, Inc., Thomas R. Cannell ("Cannell"), and Monica Forbes ("Forbes") (collectively, "Defendants") violated the federal securities laws by knowingly and/or recklessly disseminating false and misleading information, which inflated the market price of the Company's

---

[1] The PSLRA permits any putative class member -- regardless of whether they have filed a complaint -- to move for appointment of lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). Consequently, Movants are unable to identify those class members that may file competing motions and accordingly oppose this motion. Courts have held that defendants do not have standing to object to lead plaintiff motions. *See, e.g.*, *In re Waste Management, Inc. Sec. Litig.*, 128 F.Supp.2d 401, 409 (S.D. Tex. 2000).

common stock during the period beginning December 21, 2020, through and including August 17, 2021 (the "Class Period").

Plaintiffs allege that, during the Class Period, Defendants failed to disclose material adverse facts regarding the Company's business, operations, and prospects with respect to obtaining United States Food and Drug Administration ("FDA") approval for the Company's lead drug, Vicineum, developed to treat high-risk non-muscle invasive bladder cancer ("NMIBC"). *Markman* Compl. ¶¶ 1-10. Specifically, Plaintiffs allege that Defendants failed to disclose to investors that:

1) Sesen's Bio's bladder cancer study showed that Vicineum had led to dangerous elevations in liver enzymes that are associated with organ failure and death;

2) Sesen Bio's bladder cancer study for Vicineum, which enrolled approximately 130 patients, had more than 2,000 violations of trial protocol, including 215 classified as "major;"

3) Independent monitors reported three (3) of Sesen Bio's clinical investigators to the FDA for particularly egregious violations and they were found guilty of "serious noncompliance," "continued noncompliance," and actions that "placed subjects at risk of harm" including "back-dating data;"

4) Sesen Bio submitted the tainted data in connection with the BLA for Vicineum despite being advised that "the data from these affected centers cannot be used in any data analysis;"

5) As a result of the foregoing issues, the Company's BLA for Vicineum was not likely to be approved;

6) As a result of the foregoing issues, there was a reasonable likelihood Sesen Bio would need to conduct additional clinical trials to support the efficacy and safety of Vicineum; and

7) As a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

*Id.* at ¶ 10.

These misrepresentations, according to Plaintiffs, rendered Defendants' statements concerning the Company's financial condition and future prospects, particularly regarding potential FDA approval, materially false and misleading.  Plaintiffs bring claims for violations of Sections 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission ("SEC") Rule 10b-5.  *Id.* at ¶¶ 1, 10.

Movant Donald Daugherty is a suitable Lead Plaintiff and class representative in this action.  Movant has satisfied the procedural requirements of the PSLRA. First, Movant is believed to be the movant with the largest loss and the most appropriate Lead Plaintiff due to the size of his investments in Sesen Bio common stock as well as his interest in the litigation. Movant purchased 100,500 shares of Sesen Bio common stock during the Class Period and suffered losses of $374,920.00 from his transactions in Sesen Bio securities during the Class Period.[2]  *See* Exhibit 1 to the Federman Decl. Second, Movant satisfies the requirements of Fed. R. Civ. P. 23(a). Movant's claims are typical of those of the class. Movant will also adequately represent the class. Movant will actively participate in and vigorously pursue this case and has selected and retained GGM and Federman to serve as Co-Lead Counsel.

## II.    FACTUAL BACKGROUND

Defendant Sesen Bio is a late-stage clinical company developing targeted fusion protein therapeutics for the treatment of patients with cancer. *Markman* Compt. ¶ 3. The Company's lead drug or "program" as the Company refers to it, is Vicineum, also known as VB4-845. Vicineum

---

[2] Movant Daugherty's investor certification and a table setting forth Movant's purchases and sales of Sesen Bio common stock during and after the Class Period, and losses, are attached as Exhibits 1-2 to the Declaration of William B. Federman in Support of Movant's Motion and Memorandum in Support of Consolidation, Appointment of Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Lead Counsel ("Federman Decl."), filed contemporaneously herewith.

was developed to treat high-risk non-muscle invasive bladder cancer ("NMIBC"). *Id.* Sesen Bio's common stock trades on the NASDAQ under the symbol "SESN." *Id.* at ¶ 17. Plaintiff Scott Markman resides in and purchased his Sesen Bio common stock in this District. *Id.* at ¶ 14. Defendant Cannell is, and during the Class Period was, the Company's Chief Executive Officer ("CEO"). *Id.* at ¶ 18. Defendant Forbes is, and during the Class Period was, the Chief Financial Officer ("CFO") of Sesen Bio. *Id.* at ¶ 19.

Sesen Bio has been developing Vicineum for more than a decade. On December 21, 2020, Sesen Bio issued a press release announcing the December 18, 2020, submission of its completed Biologics License Application ("BLA") for Vicineum to the United States Food and Drug Administration ("FDA"). *Id.* at ¶ 4. Following that announcement, and throughout the Class Period Sesen Bio consistently painted an increasingly positive and misleading picture of its regulatory progress, fueling unrealistic enthusiasm in the market pertaining to the anticipated approval of the FDA for Vicineum and creating the impression that Vicineum's approval was more of a formality. *Id.* Enthusiasm for Vicineum was fueled largely by, among other representations, a July 13, 2021, meeting with the FDA that Sesen Bio described as productive, the hiring of additional executives to strengthen the Company's executive leadership team, and Sesen Bio's remarkable announcement that 34 of 35 sales representatives had already been hired in July 2021, a month before Vicineum's August 18, 2021, Prescription Drug User Fee Act ("PDUFA") date. *Id.* at ¶ 7.

However, on August 13, 2021, the Company issued a press release announcing that the FDA declined to approve the Vicineum BLA in its current form and provided recommendations specific to additional clinical/statistical data and analyses in addition to chemistry, manufacturing, and controls ("CMC") issues pertaining to a recent pre-approval inspection and product quality. *Id.* at ¶ 5. When the market learned the truth about the prospects of FDA approval of Vicineum,

the Company's stock price plummeted by 57%, from a closing price of $4.91 per share on August 12, 2021 to a closing price of $2.11 per share on August 13, 2021. *Id*. On August 16, 2021, Sesen Bio held an analyst call during which the Company finally admitted that it needed to put Vicineum through a brand new confirmatory clinical trial, which would push a filing resubmission out to 2023. *Id.* at ¶ 8.  Then on August 18, 2021, before the market opened, the health and medicine news site *STAT* published an article entitled "Sesen Bio trial of cancer drug marked by misconduct and worrisome side effects, documents show." *Id.* at ¶ 9. Citing "hundreds of pages of internal documents" and "three people familiar with the matter," the article set forth in detail that the clinical trial for Vicineum was "marked by thousands of violations of study rules, damning investigator conduct, and worrying signs of toxicity the company did not publicly disclose." *Id.* These revelations caused a dramatic decline in the price of Sesen Bio shares. *Id.* at *Id.* at ¶ 47, 52.

Accordingly, throughout the Class Period, Defendants made materially false and misleading statements and failed to disclose material adverse facts regarding the Company's business, operations, and prospects. Specifically, Defendants failed to disclose that: (i) the Company's bladder cancer study showed Vicineum had led to dangerous elevations in liver enzymes that are associated with organ failure and death; (ii) the bladder cancer study for Vicineum, which enrolled approximately 130 patients, had more than 2,000 violations of trial protocol, including 215 classified as "major;" (iii) independent monitors reported three (3) of Sesen Bio's clinical investigators to the FDA for particularly egregious violations and they were found guilty of "serious noncompliance," "continued noncompliance," and actions that "placed subjects at risk of harm" including "back-dating data;" (iv) the Company submitted the tainted data in connection with the BLA for Vicineum despite being advised that "the data from these affected centers cannot be used in any data analysis;" (v) as a result of the foregoing issues, the

5

Company's BLA for Vicineum was not likely to be approved; (vi) as a result of the foregoing issues, there was a reasonable likelihood Sesen Bio would need to conduct additional clinical trials to support the efficacy and safety of Vicineum; and (vii) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis. *Id.* at ℙ 10. These positive statements about Sesen Bio's business, operations, and prospects, were materially false and misleading and/or lacked a reasonable basis at all relevant times, artificially inflating the price of Sesen Bio's securities during the Class Period. *Id.*

The *Bibb* Action, the first lawsuit filed in this District raising these allegations was filed on August 19, 2021, on behalf of purchasers of Sesen Bio's publicly traded securities between December 21, 2020 and August 17, 2021. The *Cizek Action,* a substantially similar lawsuit filed on behalf of purchasers of Sesen Bio securities between December 21, 2020 and August 17, 2021, was filed on August 31, 2021. On October 7, 2021, the undersigned counsel filed the *Markman* Action which raises substantially similar allegations as in the *Bibb* and *Cizek* Actions.

On August 19, 2021, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), a notice announcing the filing of the *Bibb* Action was published on *Business Wire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than 60 days from that day, or October 18, 2021. *See* Federman Decl., Ex. 2. On August 31, 2021, a notice announcing the filing of the *Cizek* Action was published on PR Newswire. *See* Federman Decl., Ex. 3. Movant Donald Daugherty is a Class Member who has timely filed this motion within the 60-day period following publication of the August 19, 2021, notice. *See* Federman Decl., Ex. 3.

6

### III.   ARGUMENT

**A.    Consolidation is Appropriate**

Pursuant to the PSLRA, "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title has been filed," courts shall not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Pursuant to Fed. R. Civ. P. 42(a):

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions, it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

*Id.*

"The Court enjoys 'broad discretion to determine whether consolidation is appropriate.'" *Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 475 (S.D.N.Y. 2016) (quoting *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); Wright & Miller, *Consolidation—Discretion of Court*, 9A FED. PRAC. & PROC. CIV. § 2383 (3d ed.) ("[D]istrict court is given broad discretion to decide whether consolidation under Rule 42(a) would be desirable and the district judge's decision inevitably is highly contextual.").

Courts have recognized that securities class actions are ideally suited for consolidation pursuant to Fed. R. Civ. P. 42(a) because their unification expedites pretrial proceedings, reduces case duplication, avoids contacting of the parties and witnesses for inquiries in multiple proceedings, and minimizes the expenditure of time and money by all persons concerned. *Primavera Familienstiftung v. Askin*, 173 F.R.D. 115, 129 (S.D.N.Y. 1997). Consolidating shareholder class actions streamlines and simplifies pre-trial and discovery proceedings, including motions, class action issues, clerical and administrative duties, and generally reduces the confusion and delay that result from prosecuting related actions separately before two or more judges.

Movant asks this Court to consolidate the above-captioned related actions presently before the Court, as well as any other action now pending or hereafter filed in or transferred to this Judicial District as a class action on behalf of purchasers of Sesen Bio shares which arise out of the same facts as alleged in the above-referenced actions. The class actions currently before the Court are ideally suited for consolidation pursuant to Fed. R. Civ. P. 42 because they present virtually identical claims for relief based upon a single course of conduct.

## B.      Movant Should be Appointed Lead Plaintiff

The PSLRA establishes a procedure for the appointment of a "Lead Plaintiff" in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." §21D(a)(1), 15 U.S.C. §78u-4(a)(1). It provides that the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff. §21D(a)(3)(A)(i), 15 U.S.C. §78u-4(a)(3)(A)(i). Here, the first such notice was published on August 19, 2021, which was the same day the first Complaint was filed. *See* Exhibit 2 to the Federman Decl.  Within 60 days after publication of the required notice, any member or members of the proposed Class may apply to the Court to be appointed as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(A) and (B) and 15 U.S.C. § 77z-1(a)(3)(A) and (B); s*ee generally Sofran v. Labranche & Co.*, 220 F.R.D. 398, 401 (S.D.N.Y. 2004).

The PSLRA further provides that within 90 days after the publication of the notice of pendency, or as soon as practicable after the consolidation of multiple related cases if consolidation occurs after the expiration of the 90-day period, the Court shall consider any motion made by a class member and "shall appoint as lead plaintiff the member or members of the purported plaintiff

class that the court determines to be most capable of adequately representing the interests of class members." §21D(a)(3)(B)(i), 15 U.S.C. §78u-4(a)(3)(B) (i).

### 1.    Notice Was Properly Published Under the PSLRA

On August 19, 2021, one of the law firms that filed the initial lawsuit, filed a notice pursuant to Section 21D(a)(3)(A)(i) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(3)(A)(i) over a national newswire, Business Wire, advising putative members of the proposed class of their right to move the Court to serve as lead plaintiff no later than 60 days from the issuance of the notice. *See* Exhibit 3 to the Federman Decl.  The notice is sufficient and satisfies the requirements of Section 21D(a)(3)(i) of the 1934 Act, §15 U.S.C. 78u-4(a)(3)(i).  *See Greebel v. FTP Software, Inc.*, 939 F. Supp. 57, 62-64 (D. Mass. 1996) (recognizing *Business Wire* as "widely circulated" in satisfaction of the PLSRA). National wire services have consistently been recognized as suitable vehicles for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire service." *See, e.g.*, *Lax v. First Merchants Acceptance Corp.*, No. 97-C-2715, 1997 WL 461036, *4 (N.D. Ill. Aug. 11, 1997); *In re Nice Systems Sec. Litig.*, 188 F.R.D. 206, 216 (D. N.J. 1999); *Greebel*, 939 F. Supp. at 62-64.

### 2.    Movant is "The Most Adequate Plaintiff"

Under 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court is then to consider any motion made by class members and is to appoint as lead plaintiff the movant that the Court determines to be most capable of adequately representing the interests of class members. *See generally Sofran*, 220 F.R.D. at 401. The PSLRA directs the courts to presume, when appointing lead plaintiffs pursuant to this statute, that the most adequate plaintiff is the person that:

(aa)    has either filed the complaint or made a motion in response to a notice . . . [within 60 days of publication of the notice];

9

> (bb)     in the determination of the court, has the largest financial interest [of those class members moving for lead plaintiff] in the relief sought by the class; and

> (cc)     otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

§21D(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B) (iii)(I). Thus, the moving class member with the largest financial stake in the litigation and who otherwise satisfies the requirements of Fed. R. Civ. P. 23(a), is the presumptive lead plaintiff. *In re Cavanaugh*, 306 F.3d 726, 729-730 (9th Cir. 2002); *Pirelli Armstrong Tire Corp. Retiree Medical Benefit Trust v. LeBranche & Co., Inc.*, 229 F.R.D. 395 (S.D.N.Y. 2004).

Two leading Circuit Courts have directly addressed the procedural standards applicable to the PSLRA lead plaintiff process – the Ninth Circuit, in *In re Cavanaugh*, 306 F.3d 726, 729-31 (9th Cir. 2002), and the Third Circuit, in *In re Cendant Corp. Litig.*, 264 F.3d 201, 262-68 (3d Cir. 2001). District courts in this Circuit routinely rely on these cases for guidance.[3]

As discussed below, Movant satisfies each of the criteria set forth above and is entitled to the presumption set forth in §21D(a)(3)(B)(iii)(I) of the Exchange Act (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)) that he is the most adequate plaintiff.

### a.  Movant has Moved for Appointment as Lead Plaintiff Within 60 Days of Publication of Notice

Movant has moved within the statutory 60-day period of the initial PSLRA notice of this lawsuit. Movant's motion contains the required certification setting forth, *inter alia*, Movant's

---

[3] *See, e.g.*, *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) (citing *Cavanaugh* and *Cendant*); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 1:08-cv-7281, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) (citing *Cavanaugh* and *Cendant*); *In re Star Gas Sec. Litig.*, No. 3:04cv1766, 2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005) (citing *Cavanaugh* and Cendant); *Pirelli*, 229 F.R.D. 395 (citing *Cendant*); *Sofran*, 220 F.R.D. at 402 (citing *Cavanaugh*); *In re AOL Time Warner Sec. & "ERISA" Litig.*, MDL No. 1500, 2003 U.S. Dist. LEXIS 145 (S.D.N.Y. Jan. 8, 2003) (citing *Cavanaugh*).

transactions in Sesen Bio securities during the Class Period and indicating that Movant has reviewed the Complaint filed in this action and is willing to serve as the representative party on behalf of the class. *See* Exhibit 1 to Federman Decl. Accordingly, Movant has satisfied this prong of the PSLRA's lead plaintiff criteria.

### b.   Movant has the Largest Financial Interest in the Relief Sought

Section 21D(a)(3)(iii)(I)(bb) of the PSLRA defines the most adequate plaintiff (presumptively) as the "person or group of persons" that, among other things, has "the largest financial interest in the relief sought by the class." §15 U.S.C. 78u-4(a)(3)(I)(bb). Courts have determined the largest financial interest by looking to: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the Class Period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *Pirelli*, 229 F.R.D. at 404.  However, some courts have determined the financial loss is the most significant factor in determining the person or group of persons with the largest financial interest in the relief sought. *See In re Vicuron Pharmaceuticals, Inc. Sec. Litig.*, 225 F.R.D. 508, 510 (E.D. Pa. 2004); *see e.g., In re Amb. Bus. Fin. Serv., Inc. Sec. Litig.*, No. Civ. A. 04-0265, 2004 WL 1221353 (E.D. Pa. June 3, 2004); *In re Cell Pathways, Inc. Sec. Litig.*, 203 F.R.D. 189 (E.D.Pa. 2001); *see Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154 (NRB), 2005 WL 1561438 at *2 (S.D.N.Y. July 1, 2005) (appointing lead plaintiff based on largest claimed losses).

Section 21D(e)(2) of the PSLRA provides that a plaintiff's recoverable losses in any securities fraud class action shall be measured as:

> [T]he difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after dissemination of information correcting the misstatement or omission and ending on the date on which the plaintiff sells or repurchases the security.

§15 U.S.C. 78u-4(e)(2). If a plaintiff does not sell his securities within the 90-day period immediately following dissemination to the market of the information correcting the omissions and misstatements, its losses are measured as follows:

> [T]he difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. §78u-4(e)(1).

Under the above calculation, Movant Donald Daugherty has suffered net losses of approximately $374,920.00 from his purchases of Sesen Bio common stock during the Class Period. *See* Exhibit 2 to the Federman Decl. As of this filing, Movant is unaware of any motion for appointment as lead plaintiff by a class member that claims to have sustained greater financial losses in connection with the purchase and sale of Sesen Bio common stock during the Class Period.  Nor has Movant received any notice that any potential applicant has greater financial losses resulting from purchases of Sesen Bio stock during the Class Period.

Movant Donald Daugherty believes that he has sustained a greater financial loss in connection with the purchase and sale of Sesen Bio's common stock during the Class Period than any competing movant for lead plaintiff. Accordingly, Movant Donald Daugherty has satisfied this prong of the PSLRA's prerequisites for appointment as Lead Plaintiff.

### 3. Movant Otherwise Satisfies the Requirements of Fed. R. Civ. P. 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15

12

U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

    (1)    the class is so numerous that joinder of all members is impracticable;

    (2)    there are questions of law or fact common to the class;

    (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

    (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics and/or qualifications of the class representative. Accordingly, in adjudicating a lead plaintiff motion, courts should limit their inquiry to the typicality and adequacy prongs of Fed. R. Civ. P. 23(a) and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *Pirelli*, 229 F.R.D. at 411-12; *In re Cavanaugh*, 306 F.3d at 730; *see, e.g.*, *Lax*, 1997 WL 461036, at *6; *Fischler v. Amsouth Bancorporation*, No. 96-1567-Civ.-T-17A 1997 WL 118429, *2 (M.D. Fla. Feb. 6, 1997). As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23(a), thereby justifying his appointment as Lead Plaintiff in this action. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008).

    **a.  The Claims of Movant are Typical of the Claims of Other Members of the Class**

Rule 23(a)(3) mandates that the claims or defenses of the representative party must be typical of those of the class. Typicality exists if claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of class members and his or her claims are based on the same legal theory." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992) (quoting *De La*

*Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)), *cert. denied*, 506 U.S. 1051

(1993)). Furthermore, factual variations among the claims of the class representatives and class

members will not defeat "typicality":

> The typicality requirement may be satisfied even if there are factual distinctions
> between the claims of the named plaintiffs and those of other class members.  Thus,
> similarity of legal theory may control even in the face of differences of fact.

*De La Fuente,* 713 F.2d at 232 (citations omitted); *see also Hurd v. Monsanto Co.*, 164 F.R.D.

234, 239 (S.D. Ind. 1995); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008).

The requirement that the proposed class representatives' claims be typical of the claims

of the class does not mean, however, that the claims must be identical. *Daniels v. City of N.Y.*,

198 F.R.D. 409, 418 (S.D.N.Y.  2001) (citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y.

1980)); *see also Ferrari v. Impath*, No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18

(S.D.N.Y. July 15, 2004) (same); *In re Heritage Bond Litig.*, MDL No. 02-1475, 2004 U.S. Dist.

LEXIS 15386, at *25 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named

plaintiffs and putative  class members involve the same conduct by the defendant, typicality is

established regardless of the factual differences."); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432,

437 (S.D.N.Y. 2008) ("[T]he possibility of factual distinctions between the claims of the named

plaintiffs and those of other class members does not destroy typicality, as similarity of legal theory

may control even in the face of differences of fact.").

Movant's claims are typical of, if not identical to, the claims of the other members of the

class.  Here, Movant: (1) purchased Sesen Bio common stock during the Class Period at prices

alleged to have been artificially inflated by the false and misleading statements issued by

Defendants; and (2) was damaged by the alleged fraud. Thus, Movant's claims meet the typicality

requirement because questions of liability are common to all class members. *See In re Drexel*

14

*Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (typicality requirement "is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability") (citations omitted), *cert. dismissed sub nom., Hart Holding Co. v. Drexel Burnham Lambert Group, Inc.*, 506 U.S. 1088 (1993); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008) ("Typicality is satisfied if each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.") (internal quotations omitted).

### b.  Movant will Fairly and Adequately Represent the Interests of the Class

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, 122 F.R.D. 251, 257 (C.D. Cal. 1988); *Int'l Molders' & Allied Workers' Local Union No. 164 v. Nelson*, 102 F.R.D. 457, 464 (N.D. Cal. 1983).  So long as the Movant with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would be a better representative.  *Pirelli*, 229 F.R.D. at 411-12. Once the presumption is triggered, the only remaining question is whether anyone can prove that the presumptive lead plaintiff will not fairly and adequately represent the interests of the class. *In re Cavanaugh*, 306 F.3d at 732 and n.10.  Movant will fairly and adequately represent the class. First, counsel for the class is well-qualified. Movant has retained counsel with considerable experience in the prosecution of class action and federal securities law claims.  *See* Federman & Sherwood and GGM firm resumes attached as Exhibits 4 and 5, respectively, to the Federman Decl.

Second, there are no potential conflicts between Movant and the interests of the absent class members. Movant's claims are typical of the claims of the rest of the class. All investors are aligned in the common interest of recovering their damages from Defendants. Movant has indicated that he will protect the interests of the class, as reflected in the Movant's investor certification. *See* Exhibit 1 to Federman Decl. Moreover, having suffered the largest financial loss of all class members seeking to be appointed lead plaintiff in the action, Movant has a strong incentive to pursue this action vigorously on behalf of the entire class.

In short, Movant is a *prima facie* adequate representative. As evidenced by the injuries suffered by Movant Daugherty, who acquired Sesen Bio securities at prices that were artificially inflated by Defendants' materially false and misleading statements and/or omissions, the interests of Movant are clearly aligned with the members of the Class, and there is no evidence of any antagonism between his interests and those of the other members of the Class. Furthermore, the Movant has retained competent, experienced, and highly qualified counsel who are able to conduct this complex litigation in a professional manner. Thus, Movant satisfies the minimal, *prima facie* typicality and adequacy requirements of Rule 23, is thus the presumptive "most adequate plaintiff," and should therefore be appointed Lead Plaintiff.

### 4. The Court Should Approve Movant's Choice of Counsel

Pursuant to PSLRA §21D(a)(3)(B)(v), 15 U.S.C. §78u-4(a)(3)(B)(v), a lead plaintiff applicant shall, subject to court approval, select and retain counsel to represent the class. The inquiry is not into the adequacy or fitness of counsel but into the adequacy of plaintiff. *In re Cavanaugh*, 306 F.3d at 733. It is lead plaintiff and not the court that selects counsel. *Id.* at 31-33. Courts have refrained from disturbing lead plaintiffs' choice of counsel unless it is necessary to protect the interests of the class. *In re Nortel Networks Corp.*, No. 01-1855, 2002 U.S. Dist. LEXIS

16

1633, at *2 (S.D.N.Y. Feb. 4, 2002) . Only in rare circumstances should the counsel chosen by lead plaintiff not be approved by the court. *See id*.

Movant has selected and retained GGM and Federman & Sherwood as Co-Lead Counsel. Federman & Sherwood possess extensive experience in the areas of securities and other complex litigation. *See* Exhibits 4 and 5 to Federman Decl. The Court can be assured that, in the event this Motion is granted, the members of the class will receive quality legal representation. Accordingly, the Court should approve Movant's selection of Co-Lead Counsel

## III. CONCLUSION

For the reasons set forth above, Movant respectfully requests that the Court: (1) consolidate the actions referenced in the instant captions; (2) appoint Movant Donald Daugherty as Lead Plaintiff in this action; (3) approve Movant Donald Daugherty's selection of GGM and Federman & Sherwood as Co-Lead Counsel; and (4) grant such other relief as the Court may deem just and proper.

Date:    October 18, 2021.                        Respectfully submitted,

*/s/ William B. Federman*
William B. Federman (WF9124)
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Avenue
Oklahoma City, OK 73120
Telephone: (405) 235-1560
Facsimile: (405) 239-2112
Email: Wbf@federmanlaw.com

Lori G. Feldman (LF-3478)
**GEORGE GESTEN MCDONALD PLLC**
102 Half Moon Bay Drive
Croton-on-Hudson, New York 10520
Phone: (917) 983-9321
Fax: (888) 421-4173
Email: LFeldman@4-Justice.com
E-Service: eService@4-Justice.com

17

David J. George*
Brittany L. Brown*
**GEORGE GESTEN MCDONALD, PLLC**
9897 Lake Worth Road, Suite #302 Lake Worth, FL 33467
Phone: (561) 232-6002
Fax: (888) 421-4173
Email: DGeorge@4-Justice.com
        BBrown@4-Justice.com
E-Service: eService@4-Justice.com

*Attorneys for Plaintiff*

*\*Pro hac vice forthcoming*

**CERTIFICATE OF SERVICE**

This is to certify that on October 18, 2021, I electronically transmitted this document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the counsel of record.

/s/ *William B. Federman*
William B. Federman

18