NEMATZADEH PLLC
Justin Solomon Nematzadeh
101 Avenue of the Americas, 9th Floor
New York, NY 10013
Tel: (646) 417-8424
Email: justin.nematzadeh@gmail.com

BERGER MONTAGUE PC
Sherrie R. Savett
Michael Dell'Angelo
Barbara Podell
Andrew Abramowitz
1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: ssavett@bm.net
      mdellangelo@bm.net
      bpodell@bm.net
      aabramowitz@bm.net

*Attorneys for Proposed Lead Plaintiff*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN BIBB, Individually and On Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br>   v.<br><br>SESEN BIO, INC., THOMAS R. CANNELL, and MONICA FORBES,<br><br>           Defendants. | Case No. 1:21-cv-07025 |
| MICHAEL CIZEK, Individually and On Behalf of All Others Similarly Situated,<br><br>             Plaintiff,<br>   v.<br><br>SESEN BIO, INC., THOMAS R. CANNELL, and MONICA FORBES,<br><br>           Defendants. | Case No. 1:21-cv-07309 |

| | |
|---|---|
| SCOTT MARKMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>   v.<br><br>SESEN BIO, INC., THOMAS R. CANNELL, and MONICA FORBES,<br><br>Defendants. | Case No. 1:21-cv-08308 |

**MEMORANDUM OF LAW IN SUPPORT OF MOVANT
MICHAEL MILLER'S MOTION FOR CONSOLIDATION, APPOINTMENT AS
LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................ 1

FACTUAL BACKGROUND .............................................................................................. 2

ARGUMENT ....................................................................................................................... 5

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED ...................................... 5

II.     MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF ........................................... 6

      A.      The PSLRA Standard for Appointing Lead Plaintiff.............................................. 6

      B.      Movant Is The "Most Adequate Plaintiff"............................................................ 7

            1.      Movant's Motion Is Timely ............................................................................ 7

            2.      Movant Has A Substantial Financial Interest................................................. 7

            3.      Movant Satisfies Rule 23's Typicality and Adequacy Requirements......... 8

                  a.      Movant's Claims Are Typical of Those of the Class...................... 8

                  b.      Movant Satisfies the Adequacy Requirement of Rule 23 ............... 9

III.    MOVANT'S SELECTION OF LEAD COUNSEL MERITS APPROVAL .................... 10

CONCLUSION................................................................................................................... 12

## TABLE OF AUTHORITIES

Case                                                                                          Page(s)

*Faig v. Bioscrip, Inc.*,
    No. 13 Civ. 06922 (AJN), 2013 WL 6705045 (S.D.N.Y. Dec. 19, 2013) ................................. 8

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, No. 08 MDL 1963 (RWS),
    2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) ................................................................................... 9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) ................................................................................................... 10

*In re Elan Corp. Sec. Litig.*,
    No. 1:08-cv-08761-AKH, 2009 WL 1321167 (S.D.N.Y. May 11, 2009) .................................. 9

*In re Third Ave. Mgmt. LLC Sec. Litig.*,
    No. 16-cv-02758 (PKC), 2016 WL 2986235 (S.D.N.Y. May 13, 2016) ................................... 8

*Kemp v. Universal Am. Fin. Corp.*,
    No. 05 Civ 9883 (JFK), 2006 WL 1190691 (S.D.N.Y. May 1, 2006) ...................................... 7

*Kux-Kardos v. VimpelCom, Ltd.*,
    151 F. Supp. 3d 471 (S.D.N.Y. 2016) ...................................................................................... 8

*Martingano v. Am. Int'l Grp., Inc.*,
    No. 06CV1625(JG)(JMA), 2006 WL 1912724 (E.D.N.Y. July 11, 2006) ............................... 7

*Micholle v. Ophthotech Corp.*,
    No. 17-CV-210 (VSB), 2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ................................. 7, 9

*Randall v. Fifth St. Fin. Corp.*,
    No. 15-cv-7759 (LAK), 2016 WL 462479 (S.D.N.Y. Feb. 1, 2016) ......................................... 8

*Tan v. NIO, Inc.*,
    No. 19-CV-1424 (NGG)(VMS), 2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) ........................ 8

*Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*,
    No. 10-CV-01405 (SLT)(RER), 2011 WL 3511057 (E.D.N.Y. May 31, 2011) ........................ 8

Statutes

15 U.S.C. § 78u-4(a)(1) ................................................................................................................. 6
15 U.S.C. § 78u-4(a)(3)(A)(i) .................................................................................................... 6, 7
15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ................................................................................................. 10
15 U.S.C. § 78u-4(a)(3)(B) ........................................................................................................ 1, 6
15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................................................... 1, 6
15 U.S.C. § 78u-4(a)(3)(B)(ii) ...................................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................. 7, 8
15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ......................................................................... 2, 6
15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ...................................................................... 7, 10
15 U.S.C. § 78u-4(a)(3)(B)(v) ............................................................................. 2, 10

Rules

Fed. R. Civ. P. 42(a) ................................................................................................ 5

Other Authorities

H.R. Conf. Rep. No. 104-369 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730 ..................... 10, 11

Proposed Lead Plaintiff Michael Miller ("Movant") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of Movant's Motion for the entry of an Order: (i) consolidating the above-captioned actions; (ii) appointing Movant as Lead Plaintiff on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired the securities of Sesen Bio, Inc. ("Sesen" or the "Company") between December 21, 2020, and August 17, 2021, both dates inclusive (the "Class Period"); (iii) approving Movant's selection of Berger Montague PC ("Berger Montague") as Lead Counsel and Nematzadeh PLLC as Local Counsel for the Class; and (iv) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Movant respectfully submits that he should be appointed Lead Plaintiff on behalf of all investors who acquired Sesen securities during the Class Period (the "Class") and who were damaged as a result of Defendants' alleged fraud.[1] The above-captioned actions (the "Actions") allege violations of Sections 10(b) and 20(a) of the Exchange Act against Sesen, Chief Executive Officer Thomas R. Cannell, and Chief Financial Officer Monica Forbes (collectively, the "Defendants").

The PSLRA requires that the Court appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court must determine which movant has the "largest financial interest" in the relief sought by the Class and whether such movant has

---

[1] A copy of Movant's Certification pursuant to the PSLRA is attached as Exhibit ("Ex.") A to the Declaration of Justin Solomon Nematzadeh, Esq. ("Nematzadeh Decl."), submitted concurrently herewith.

1

made a *prima facie* showing that the movant is a typical and adequate Class representative under Federal Rule of Civil Procedure 23 ("Rule 23"). *See* 15 U.S.C. § 78u- 4(a)(3)(B)(iii)(I).

For the reasons stated herein, Movant respectfully submits that he is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff. On his Class Period transactions in Sesen securities, Movant incurred losses of $41,677 on a last-in-first-out ("LIFO") basis and $41,782 on a first-in-first-out ("FIFO") basis. Movant has the largest known loss of any other movant and a substantial financial interest in recovering losses attributable to Defendants' violations of federal securities laws.

Further, Movant satisfies the typicality and adequacy requirements of Rule 23 in that (i) Movant's claims arise from the same course of events as those of the other Class members, (ii) Movant relies on similar legal theories to prove Defendants' liability, and (iii) Movant has retained experienced counsel and is committed to vigorously prosecuting the claims.

Finally, pursuant to the PSLRA, Movant respectfully requests that the Court approve his selection of Berger Montague as Lead Counsel for the Class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). ("[T]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.") Berger Montague is a nationally recognized leader representing investors in shareholder litigation and securities class actions for more than fifty years and has the expertise and resources necessary to handle this complex litigation.

Accordingly, Movant respectfully requests that the Court appoint him as Lead Plaintiff for the Class and approve his selection of Lead Counsel and Local Counsel.

## FACTUAL BACKGROUND

Sesen is a late-stage clinical company developing targeted fusion protein therapeutics for the treatment of patients with cancer. The Company's lead drug is Vicineum, also known as VB4-

845. Vicineum was developed to treat high-risk non-muscle invasive bladder cancer ("NMIBC"). Sesen Bio has been developing Vicineum for more than a decade.

On December 21, 2020, Sesen issued a press release announcing the December 18, 2020, submission of its completed Biologics License Application ("BLA") for Vicineum to the United States Food and Drug Administration ("FDA"). Following that announcement, Sesen painted an increasingly positive and misleading picture of its regulatory progress, fueling unrealistic enthusiasm in the market pertaining to the anticipated approval of the FDA for Vicineum.

However, on August 13, 2021, the Company issued a press release announcing that the FDA declined to approve the Vicineum BLA in its current form and provided recommendations specific to additional clinical/statistical data and analyses in addition to chemistry, manufacturing, and controls ("CMC") issues pertaining to a recent pre-approval inspection and product quality. When the market learned the truth about the prospects of FDA approval of Vicineum, the Company's stock price plummeted by 57%, from a closing price of $4.91 per share on August 12, 2021, to a closing price of $2.11 per share on August 13, 2021.

Just a few days ahead of the FDA announcement, along with its second-quarter financials, Sesen said that it had a "productive" late-stage meeting on July 13, 2021, with the agency and that the FDA confirmed that there was no Advisory Committee meeting planned and that no post-marketing requirements, including a confirmatory trial, have been identified at that time. Also, in the meeting, the company and the FDA discussed remaining questions related to manufacturing facility inspections, product-quality information requests, and additional information related to CMC, and a timeline to submit additional supporting information was agreed upon.

In the months leading up to the FDA's denial of the Vicineum BLA, the Company, through its press releases, announcements, and SEC filings, fueled unrealistic optimism creating the

impression that Vicineum's approval was more of a formality. Enthusiasm for Vicineum was fueled largely by, among other representations, a July 13, 2021, meeting with the FDA that Sesen described as productive, the hiring of additional executives to strengthen the Company's executive leadership team, and Sesen's remarkable announcement that 34 of 35 sales representatives had already been hired in July 2021, a month before Vicineum's August 18, 2021, Prescription Drug User Fee Act date.

Two events drove Sesen's stock price down. The first occurred on August 13, 2021, when the Company announced that the FDA had declined to approve the Vicineum BLA and requested additional clinical and statistical data and raised manufacturing issues stemming from a recent pre-approval inspection. The second occurred on August 16, 2021, when Sesen held an analyst call during which the Company finally admitted that it needed to put Vicineum through a brand new confirmatory clinical trial, which would push a filing resubmission out to 2023.

Then, on August 18, 2021, before the market opened, the health and medicine news site *STAT* published an article entitled "Sesen Bio trial of cancer drug marked by misconduct and worrisome side effects, documents show." Citing "hundreds of pages of internal documents" and "three people familiar with the matter," the article set forth in detail that the clinical trial for Vicineum was "marked by thousands of violations of study rules, damning investigator conduct, and worrying signs of toxicity the company did not publicly disclose."

These revelations caused investors to suffer substantial losses, as the price of Sesen stock fell precipitously from a closing price of $4.91 per share on August 12, 2021, to a closing price of $1.31 on August 18 – a decline of more than 73%.

The Actions allege that Defendants misrepresented and/or failed to disclose the following: (1) Sesen's bladder cancer study showed that Vicineum had led to dangerous elevations in liver

enzymes that are associated with organ failure and death; (2) the Vicineum study, which enrolled approximately 130 patients, had more than 2,000 violations of trial protocol, including 215 classified as "major;" (3) independent monitors reported three of Sesen's clinical investigators to the FDA for particularly egregious violations, and they were found guilty of "serious noncompliance," "continued noncompliance," and actions that "placed subjects at risk of harm," including "back-dating data;" (4) Sesen submitted the tainted data in connection with the BLA for Vicineum, despite being advised that "the data from these affected centers cannot be used in any data analysis;" (5) as a result of the foregoing issues, the Company's BLA for Vicineum was not likely to be approved; and (6) as a result of the foregoing issues, there was a reasonable likelihood that Sesen would need to conduct additional clinical trials to support the efficacy and safety of Vicineum.

## ARGUMENT

## I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed," the court should not appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii).   Under Rule 42(a), consolidation is appropriate when actions "involve a common question of law or fact."  Fed. R. Civ. P. 42(a).

Consolidation is appropriate because the Actions rely on the same underlying facts and assert similar false and misleading statements and omissions.  Moreover, the Actions all bring claims under the federal securities laws against substantially overlapping defendants. Consolidation would preserve judicial resources and promote efficient prosecution of the litigation.  Accordingly, the Court should consolidate the Actions.

## II.     MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

Movant respectfully submits that he should be appointed Lead Plaintiff because he filed the instant Motion in a timely manner, has a substantial – if not the largest – financial interest in this litigation, and satisfies the typicality and adequacy requirements of Rule 23.

### A.     The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(1); *see also* 15 U.S.C. § 78u-4(a)(3)(B) (setting forth procedure for selecting lead plaintiff). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class –
>
> > (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
> >
> > (II)     that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as Lead Plaintiff and appoint the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court should adopt a presumption that the "most adequate plaintiff" is the person or group of persons who: (i) filed a complaint or timely filed a motion to serve as Lead Plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) who otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

6

This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 WL 1307285, at *4 (S.D.N.Y. Mar. 13, 2018); *Martingano v. Am. Int'l Grp., Inc.*, No. 06CV1625(JG)(JMA), 2006 WL 1912724, at *3 (E.D.N.Y. July 11, 2006). Under the criteria established by the PSLRA, Movant is the most adequate plaintiff and should be appointed Lead Plaintiff.

### B.    Movant Is The "Most Adequate Plaintiff"

#### 1.    Movant's Motion Is Timely

Movant has timely filed this Motion to serve as Lead Plaintiff. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), the plaintiff in the above-captioned action caused notice regarding the pending nature of this case to be published on *Business Wire,* a widely circulated, business-oriented news wire service, on August 19, 2021. *See* Notice, Nematzadeh Decl., Ex. B. Thus, pursuant to the PSLRA, any person who is a member of the proposed Class may apply to be appointed lead plaintiff within sixty days after publication of the notice, *i.e.*, on or before October 17, 2021. Movant filed this Motion seeking appointment as Lead Plaintiff within this deadline and thus has satisfied the procedural requirements of the PSLRA.

#### 2.    Movant Has A Substantial Financial Interest

The PSLRA requires a court to adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii); *see also Kemp v. Universal Am. Fin. Corp.*, No. 05 Civ. 9883 (JFK), 2006 WL 1190691, at *2 (S.D.N.Y. May 1, 2006).

Movant has incurred substantial losses of $41,677 on a LIFO basis and $41,782 on a FIFO basis on his Class Period transactions in Sesen securities. *See* Loss Analysis, Nematzadeh Decl., Ex. C; *see also Waterford Twp. Police & Fire Ret. Sys. v. Smithtown Bancorp, Inc.*, No. 10-CV-01405 (SLT)(RER), 2011 WL 3511057, at *4 (E.D.N.Y. May 31, 2011) (finding the movant with the largest financial interest to be the presumptive "most adequate plaintiff"). Accordingly, Movant has a substantial financial interest in the outcome of the litigation and is presumptively the "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Randall v. Fifth St. Fin. Corp.*, No. 15-cv-7759 (LAK), 2016 WL 462479, at *1 (S.D.N.Y. Feb. 1, 2016) (same).

### 3.    Movant Satisfies Rule 23's Typicality and Adequacy Requirements

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Federal Rule of Civil Procedure 23." *See Tan v. NIO, Inc.*, No. 19-CV-1424 (NGG)(VMS), 2020 WL 1031489, at *2-3 (E.D.N.Y. Mar. 3, 2020); *see also In re Third Ave. Mgmt. LLC Sec. Litig.*, No. 16-cv-02758 (PKC), 2016 WL 2986235, at *1 (S.D.N.Y. May 13, 2016). At the lead plaintiff selection stage, all that is required to satisfy Rule 23 is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See Kux-Kardos v. VimpelCom, Ltd.*, 151 F. Supp. 3d 471, 477 (S.D.N.Y. 2016). Here, Movant satisfies both requirements.

### a.    Movant's Claims Are Typical of Those of the Class

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice, or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See Faig v. Bioscrip, Inc.*, No. 13 Civ. 06922 (AJN), 2013 WL 6705045, at *3 (S.D.N.Y. Dec. 19, 2013). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *See id.*

Movant's claims are typical of the claims asserted by the proposed Class. Like all members of the Class, Movant alleges that, in violation of the federal securities laws, Defendants misrepresented and/or concealed from investors that the Company's clinical study for its bladder cancer drug Vicineum yielded tainted data due to major violations of trial protocol and "serious noncompliance" with FDA protocols. Like all the Class members, Movant purchased Sesen securities in reliance on Defendants' public statements, including their alleged misrepresentations and omissions, and was damaged thereby. Because Movant's claims arise from the same course of events as the claims of all other Class members, the typicality requirement is satisfied. *See Micholle*, 2018 WL 1307285, at \*6.

### b.    Movant Satisfies the Adequacy Requirement of Rule 23

In addition, Movant satisfies the adequacy requirement of Rule 23. The adequacy of representation requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it "will fairly and adequately protect the interests of the class."

Courts in this District assess a movant's adequacy based on the following: "(1) the size, available resources and experience of the proposed lead plaintiff; (2) the qualifications of the proposed class counsel; and (3) any potential conflicts or antagonisms rising among purported class members." *In re Elan Corp. Sec. Litig.*, No. 1:08-cv-08761-AKH, 2009 WL 1321167, at \*2 (S.D.N.Y. May 11, 2009) (quoting *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, No. 08 MDL 1963 (RWS), 2009 WL 50132, at \*8 (S.D.N.Y. Jan. 5, 2009)).

Here, Movant will fairly and adequately represent the interests of the proposed Class. Movant has resources and motivation sufficient to pursue the above-captioned action to a successful conclusion. Moreover, Movant is committed to pursuing the best recovery possible for himself and all other Class members. Movant incurred substantial losses and thus is highly

motivated to maximize any recovery. Movant also has selected and retained experienced counsel, Berger Montague, with a more than a fifty-year record of prosecuting securities class actions vigorously and efficiently. *See infra* Section III. Movant has timely submitted his choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) & (B)(v).

Furthermore, no antagonism exists between Movant's interests and those of the absent Class members. Rather, they are aligned. Like all other Class members, Movant suffered substantial losses due to Defendants' alleged misconduct and, therefore, has a sufficient and identical interest in the outcome of this case to ensure vigorous prosecution of the litigation for the benefit of all Class members.

Finally, there is no evidence to suggest that Movant is "subject to unique defenses that render such plaintiff incapable of representing the class," because no such evidence exists. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Accordingly, Movant satisfies the adequacy requirement.

Thus, Movant clearly satisfies the requirements of the PSLRA for lead plaintiff appointment and should be appointed Lead Plaintiff on behalf of the putative Class of damaged Sesen investors here.

## III.    MOVANT'S SELECTION OF LEAD COUNSEL MERITS APPROVAL

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001) (stating that "the [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Consistent with Congressional intent, a court should not disturb the lead plaintiff's choice of counsel, unless it is "necessary to protect the interests of the plaintiff class." H.R. Conf.

Rep. No. 104-369, at 35 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 734.

Here, Movant has selected the law firm of Berger Montague to represent the Class. Berger Montague has a long record of success in securities litigation and has achieved many of the largest securities recoveries since Congress enacted the PSLRA. The firm advises clients on litigation and recovery options in securities proceedings throughout the United States and internationally. Berger Montague has served as lead or co-lead counsel in numerous other major securities class action cases, both within this District and beyond, where substantial settlements were achieved on behalf of investors, including the following, without limitation: *In re Merrill Lynch Securities Litigation* (S.D.N.Y.) (recovery of $475 million); *In re Sotheby's Holding, Inc. Securities Litigation* (S.D.N.Y.) (a $70 million settlement, of which $30 million was contributed, personally, by an individual defendant); *In re KLA Tencor Securities Litigation* (N.D. Cal.) (settlement of $65 million); *In re CIGNA Corp. Securities Litigation* (E.D. Pa.) (settlement of $93 million); and *In re Rite Aid Corp. Securities Litigation* (E.D. Pa.) (settlements totaling $334 million).

In addition, Movant has selected the law firm of Nematzadeh PLLC to serve as Local Counsel, a law firm that Justin Solomon Nematzadeh ("Nematzadeh") launched in June 2021. The law firm specializes in sophisticated civil litigation with a focus on representing plaintiffs in complex class actions in the areas of securities fraud, antitrust, and other matters. Nematzadeh played an important role as part of the lead counsel team in the *In re Petrobras Securities Litigation* (S.D.N.Y.), while practicing at Pomerantz LLP; in 2018, lead counsel secured a historic $3 billion settlement on behalf of the class. And throughout his career, Nematzadeh has played roles as part of lead counsel teams representing plaintiffs in several class and individual actions that have achieved recoveries amounting to over $300 million in total. In 2018, Nematzadeh was honored as a Rising Star under 40 years of age by Law360® in Class Actions,

11

a prestigious award given to a select few "top litigators and dealmakers practicing at a level usually seen from veteran attorneys." He has also been honored by Lawyers of Distinction® in securities law and by Super Lawyers® as a Rising Star in antitrust and securities law. Nematzadeh began his legal career as an associate at Gibson, Dunn & Crutcher LLP, a world-renowned litigation powerhouse, where he practiced for several years before focusing on representing plaintiffs.[2]

In light of the foregoing, by approving Movant's selection of Berger Montague as Lead Counsel and Nematzadeh PLLC as Local Counsel for the Class, the Court can be assured that the Class will receive the highest quality representation. Thus, the Court should approve this selection.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that the Court grant his Motion and enter an Order: (i) appointing Movant Michael Miller as Lead Plaintiff; (iii) approving Movant's selection of Berger Montague as Lead Counsel and Nematzadeh PLLC as Local Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

Dated: October 18, 2021                    Respectfully submitted,

/s/ *Justin Solomon Nematzadeh*
Justin Solomon Nematzadeh

NEMATZADEH PLLC
101 Avenue of the Americas, 9th Floor
New York, NY 10013
Tel: (646) 417-8424
Email: justin.nematzadeh@gmail.com

Sherrie R. Savett
Michael Dell'Angelo
Barbara Podell
Andrew Abramowitz
BERGER MONTAGUE PC

---

[2] The firm biographies of Berger Montague PC and Nematzadeh PLLC are available upon request.

12

1818 Market Street, Suite 3600
Philadelphia, PA 19103
Tel: (215) 875-3000
Email: ssavett@bm.net
          mdellangelo@bm.net
          bpodell@bm.net
          aabramowitz@bm.net

***Attorneys for Lead Plaintiff Movant Michael Miller and Proposed Lead Counsel for the Class***

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 18, 2021, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ *Justin Solomon Nematzadeh*
Justin Solomon Nematzadeh