**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| *In re Sesen Bio, Inc. Securities Litigation* | ) ) ) ) ) ) ) | Civil Action No. 1:21-cv-07025-AKH

CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MAURICE HARRIS'S MOTION FOR PARTIAL RECONSIDERATION**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

ARGUMENT ....................................................................................................................... 4

    A.    The Sesen Investor Group is an improperly formed group that cannot aggregate its financial interest to be appointed Lead Plaintiff. ...................................................... 4

    B.    Harris has the largest financial interest. ................................................................ 12

    C.    Harris satisfies the relevant requirements of Rule 23(a). ...................................... 15

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Africa v. Jianpu Tech. Inc.*,
  2021 WL 1999467 (S.D.N.Y. May 19, 2021) .......................................................... 12

*Chauhan v. Intercept Pharms*., 2021 WL 235890 (S.D.N.Y. Jan. 25, 2021) .............................. 13

*City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343
 (S.D.N.Y. Feb. 4, 2021) .......................................................................................... 13

*Cortina v. Anavex Life Sciences Corp.*,
  2016 WL 1337305 (S.D.N.Y. Apr. 5, 2016) ............................................... 12, 14, 15

*Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005) ................................................ 13

*Elstein v. Net1 UEPS Techs, Inc.*, 2014 WL 3687277 (S.D.N.Y. July 23, 2014) ......................... 5

*Hevesi v. Citigroup Inc.*, 366 F. 3d 70 (2d Cir. 2004) ................................................. 2, 4

*In re Comverse Tech., Inc. Sec. Litig.*, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008) .................... 3

*In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117 (S.D.N.Y. 2002) ................................. 2, 4

*In re Petrobras Sec. Litig.,* 104 F. Supp. 3d 618 (S.D.N.Y. 2015) ................................. 4, 7, 10, 11

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
  2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015) ................................................... 5, 7, 9

*Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523 (S.D.N.Y. 2015) ....................... 4, 7, 11

*Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259 (S.D.N.Y. 2019) .......................................... 15

*Lucas v. United States Oil Fund, LP*,
  2020 WL 5549719 (S.D.N.Y. Sept. 16, 2020) .......................................................... 15

*Luckin Coffee Inc.*, 2020 WL 3127808 (S.D.N.Y. June 12, 2020) ....................................... passim

*Phuong Ho v. NQ Mobile, Inc.* 2014 WL 1389636 (S.D.N.Y. Apr. 9, 2014) .............................. 10

*Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*,
  275 F.R.D. 187 (S.D.N.Y. 2011) .......................................................................... 10

*Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265 (S.D.N.Y. 2015)........................................... 15

*Stitt v. On Deck Cap., Inc.*, 2016 WL 889535 (S.D.N.Y. Feb. 17, 2016).................................... 15

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
   589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................. 5, 7

*Williams v. Block.One*, 2020 WL 4505569 (S.D.N.Y. Aug 4, 2020) ................................... 4, 6, 10

**Statutes**

15 U.S.C. § 78 ....................................................................................................... 1, 2, 12, 15

**Other Authorities**

S. Rep. No. 104-98 (1995) ........................................................................................... 2

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 15, 16

Fed. R. Civ. P. 60 ............................................................................................................... 1

Local Civil Rule 6.1 ........................................................................................................... 1

**INTRODUCTION**

Two weeks ago, on October 18, 2021, nine movants filed competing motions asking to be appointed Lead Plaintiff in this securities fraud action. Under Local Civil Rule 6.1(b), opposition briefs were due 14 days later, on November 1, 2021. Although four of the movants withdrew their motions or filed non-oppositions—five movants remained, including Maurice Harris.[1] His moving papers showed him to be the investor with the single largest financial interest in the case. As such, he is the presumptive candidate to serve as Lead Plaintiff under the Private Securities Litigation Reform Act of 1995 ("PSLRA"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

Mr. Harris had been preparing an opposition brief to address the remaining competing motions, which he intended to timely file on November 1. Before he could file that brief, however, the Court entered an order on October 29, granting a competing motion for appointment of Lead Plaintiff, though none of the investors behind that motion had a financial interest that approached Mr. Harris's. *See* ECF No. 48 (the "Lead Plaintiff Order").

Federal Rule of Civil Procedure 60(b) allows courts to reconsider orders for reasons including "mistake, inadvertence, [and] surprise," and the rule also allows for reconsideration based on "any other reason that justifies relief." Here, the fact that Mr. Harris did not have the opportunity to file his opposition papers justifies allowing him to provide reasons why the granted motion should have been denied, and to explain why the Court should instead grant Mr. Harris's

---

[1] The nine movants are: (1) Harris (ECF No. 25); (2) the Sesen Investor Group (ECF No. 31); (3) Julio C. Hernandez (ECF No. 32); (4) Moises Jacobs (ECF No. 24); (5) Joseph P. Nolff (ECF No. 12); (6) Donald Daugherty (ECF No. 9); (7) Curtis Cinelli (ECF No. 17); (8) Michael Miller (ECF No. 14); and (9) Cesar Bustamante (ECF No. 21). As noted above, five motions remained pending when the Court entered the Lead Plaintiff Order: (1) Harris; (2) the Sesen Investor Group; (3) Hernandez; (4) Nolff; and (5) Miller. On October 25, 2021, Cinelli withdrew his motion and Bustamente filed a notice of non-opposition. ECF Nos. 40, 43. Jacobs filed a notice of non-opposition on October 27, 2021 and Daugherty did the same on October 29. ECF Nos. 44, 47.

motion.  Critically, the PSLRA specifically provides Harris—and all class members—with the opportunity to oppose the appointment of the competing movants.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  By ruling on the Lead Plaintiff motions prior to opposition briefs being filed, class members did not have the opportunity to exercise that statutory right.

As detailed below, while Mr. Harris is the single investor with the largest reported financial interest, the investors in the motion that the Court granted, referred to as the "Sesen Investor Group," are ineligible for appointment under the PSLRA.  No investor within the Sesen Investor Group has a financial interest individually that matches Mr. Harris's.  And as the case law from courts in this district make clear, it is improper to combine a group of investors with no prior connection to one another to amass the largest financial interest for purposes of a Lead Plaintiff motion.  *See infra*, at 4-12.  Instead, courts have "rejected repeatedly" attempts to "cobble together a lead plaintiff group" because doing so "undermines the purpose of the PSLRA."  *Hevesi v. Citigroup Inc.*, 366 F. 3d 70, 82 n.13 (2d Cir. 2004) (quoting *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 123 (S.D.N.Y. 2002)).  This is because Congress intended the PSLRA "to empower investors so that they—not their lawyers—exercise primary control over private securities litigation."  *Hevesi*, 366 F.3d at 82 n.13 quoting S. Rep. No. 104-98, at *4 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 683 (1995).

Indeed, no movant other than the Sesen Investor Group sought to aggregate their financial interests with others.  And the circumstances of the Sesen Investor Group's motion make it obvious that its counsel used aggregation merely to obtain appointment and shows that counsel is controlling the plaintiffs.  The members of the Sesen Investor Group have no connection except their lawyers (save two that are brothers but who together have a smaller financial interest than Harris), never met, and apparently never spoke to each other until immediately before the Lead

Plaintiff deadline.  *See* ECF No. 38-4.  The group does not sufficiently explain how it would function separate from its counsel and fails to establish how its appointment would do anything but increase costs and inefficiencies.  *Id.*  The Sesen Investor Group does not provide a coherent reason why its members are seeking joint appointment as opposed to individually, nor attempt to explain how the group is appropriate under the PSLRA or would best serve the class.  *Id.*

No prejudice will result to any party or the class by granting this motion.  The Court entered the Lead Plaintiff Order on the prior business day, the case is at its earliest stages, and no amended complaint or responsive pleading has been filed.  There is not even a schedule set for those filings. *See* ECF No. 8 (providing Lead Plaintiff and defendants 14 days from appointment of Lead Plaintiff to submit a proposed schedule for the filing of an amended complaint).  To the contrary, granting the motion will only increase efficiencies and decrease costs for the class, given the inadequacies that afflict the Sesen Investor Group.

Accordingly, reconsideration is appropriate here, with the Court not yet having been presented with a timely opposition brief to point out the key facts and law discussed in this brief. *See In re Comverse Tech., Inc. Sec. Litig.*, 2008 WL 820015, at *2 (E.D.N.Y. Mar. 25, 2008) (granting motion for reconsideration of Lead Plaintiff decision when "court never considered [that] Group . . . could not fairly and adequately protect the class").  With Mr. Harris being the movant with the largest eligible financial interest, he respectfully asks that the Court partially reconsider its order—keeping in place the portion of the order that consolidated the cases—but changing the Lead Plaintiff selection to appoint Mr. Harris to represent the proposed class.

3

**ARGUMENT**

**A.    The Sesen Investor Group is an improperly formed group that cannot aggregate its financial interest to be appointed Lead Plaintiff.**

Per Mr. Harris's motion to be appointed Lead Plaintiff, he has suffered losses exceeding $770,000—the highest total of any single investor who sought appointment as Lead Plaintiff. *See* ECF No. 27-4. In contrast, the individual members of the Sesen Investor Group each incurred substantially lower losses: the highest of their reported losses was less than $420,000, and the lowest was just over $150,000. *See* ECF No. 38-3 at 2. It would be necessary to aggregate all four investors' financial interests to exceed that of Mr. Harris's.

The appointment of aggregated groups of unrelated investors such as the Sesen Investor Group, however, is inconsistent with the PSLRA and the law of this district. *See, e.g.*, *Hevesi*, 366 F. 3d at 82 n.13 (quoting *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. at 123); *In re Petrobras Sec. Litig.,* 104 F. Supp. 3d 618, 621-22 (S.D.N.Y. 2015) ("Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest does just the opposite" of what the PSLRA intends). "Many courts—including this one—have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation, because, to allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 532 (S.D.N.Y. 2015); *see also Williams v. Block.One*, 2020 WL 4505569, at *3 (S.D.N.Y. Aug 4, 2020) (rejecting Lead Plaintiff group when its motion "raise[d] doubts that the group—rather than its lawyers—is truly in charge of the litigation, as the PSLRA hopes"); *Luckin Coffee Inc.*, 2020 WL 3127808, at *4 (S.D.N.Y. June 12, 2020) (refusing to appoint group when "there is every reason to believe that the members agreed to be assembled by counsel and to ratify counsel's representation of them—rather than that they gathered together and engaged in a truly independent selection of counsel"); *Int'l Union of*

4

*Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, 2015 WL 7018024, at \*4 (S.D.N.Y. Nov. 12, 2015) (rejecting artificial group that "failed to meet their evidentiary burden to prove that their grouping was not the product of lawyer-driven litigation").

Courts in this district require such unrelated groups to "proffer an evidentiary showing" that the "grouping would best serve the class" "before its members will be designated as presumptive lead plaintiffs." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). To entertain the idea of appointing a group of investors, courts require evidence that the "group will be able to function cohesively" and "effectively manage the litigation apart from their lawyers." *Id*. Factors aiding this assessment include: (1) "the existence of a pre-litigation relationship between group members;" (2) "whether the members chose outside counsel and not vice versa;" (3) "plans for cooperation;" (4) the "involvement of the group members in the litigation thus far;" (5) and "the sophistication of its members." *Id.* The Sesen Investor Group relies on *Varghese* twice in its initial brief (ECF No. 35 at 6-7) but failed to satisfy any of these elements.

**No Pre-Litigation Relationship.** The Sesen Investor Group primarily consists of unrelated strangers that have no pre-litigation relationship. In this district, courts have generally limited the definition of a "pre-litigation relationship" to situations where the members of a group have close knit economic or familial ties. *See FXCM*, 2015 WL 7018024, at \*3-4 (no pre-litigation relationship when two investors "lack economic and familial ties"). Courts have held that the failure to demonstrate a significant pre-litigation relationship further heightens the burden on the purported group movant with respect to the other factors. *See Elstein v. Net1 UEPS Techs, Inc.*, 2014 WL 3687277, at \*4 (S.D.N.Y. July 23, 2014) ("courts have typically required that plaintiffs lacking such a relationship present a more compelling showing as to their fitness for the position").

The Sesen Investor Group's Joint Declaration is silent as to whether Ryan Bibb and Rodney Samaan have any close economic or familial ties with each other or with the two brothers (Lionel and Benjamin Dreshaj) that are part of this lawyer-created pastiche of unrelated plaintiffs. *See* ECF No. 38-4. And while the Dreshajs are related, their combined loss of roughly $350,00 (ECF No. 38-3 at 2) is still less than Harris' loss. Further, their relationship does not allow counsel to graft additional unrelated investors onto the group to manufacture the largest financial interest. *See Luckin*, 2020 WL 3127808, at *4, n.6 (refusing to appoint group of five unrelated investors that included a "Canadian engineer and a principal of [a] British investment company [that] have known one another for approximately seven years as a consequence of overlapping business interests"). The lack of a significant pre-litigation relationship between the members of the Sesen Investor Group weighs against aggregating its members' losses and further heightens the necessary evidentiary showing as to the other factors.

**Counsel Aggregated the Group.** Critically, the members of the group have no connection besides their lawyers (except the two brothers), reside in different states across the country, work in different fields, and provide no coherent reason as to why they seek joint appointment. *See Block.One*, 2020 WL 4505569, at *3 (refusing to appoint group that "has not explained adequately why these five apparently unrelated plaintiffs opted to proceed as a group. Nor has it resolved the Court's concern this decision was, and future decisions by the group would be, driven by the lawyers").

While the Sesen Investor Group's Joint Declaration states that "[w]e each reached out to counsel seeking representation in this class action," ECF No. 38-4 ¶ 6, the declaration does not state that the members reached out as a collective group as opposed to individually, fails to explain who reached out, when, and why, and does not even state whether the group members reached out

6

to their proposed lead counsel, Glancy Prongay & Murray LLP, or to another firm (presumably The Law Offices of Frank R. Cruz) that then teamed up with the Glancy firm for purposes of manufacturing the largest financial interest. *Id.*

The most reasonable inference from the available information is that the group's law firms cobbled the group together over the course of two months through dozens of advertisements for investors to contact the firms. The Sesen Investor Group does not offer any evidence otherwise. This is precisely what the PSLRA and courts in this district strictly forbid. The Lead Plaintiff Order did not have the opportunity to consider any of this. *See Luckin*, 2020 WL 3127808, at *4 (rejecting group when "members provide no evidence that they chose outside counsel, as opposed to counsel choosing them"); *FXCM*, 2015 WL 7018024, at *4 (refusing to allow aggregation when group "fail[ed] to provide evidence that their grouping was not the product of lawyer-driven litigation"); *Alibaba,* 102 F. Supp. 3d at 532 ("[m]any courts—including this one—have turned away pastiche plaintiffs whose grouping appears to be solely a product of the litigation, because, to allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff"); *In re Petrobras Sec. Litig.,* 104 F. Supp. 3d at 621-22 ("Allowing unrelated plaintiffs to band together in order to manufacture a larger financial interest [is inconsistent with the PSLRA because it] . . . ensures that the lawyers, who are invariably the matchmakers behind such marriages of convenience, are the true drivers of the litigation"); *Varghese*, 589 F. Supp. 2d at 392 (denying aggregation because "courts in this District do not hesitate to deny a proposed group's motion for lead plaintiff status if the movants have not provided a sufficient evidentiary basis for aggregation or if the court otherwise is persuaded that the proposed group has been assembled as a makeshift by attorneys for the purpose of amassing an aggregation of investors purported to have the greatest financial interest in the action").

Specifically, on August 18, 2021, the Glancy firm published a notice on *Business Wire* announcing that "it has commenced an investigation on behalf of Sesen Bio, Inc. [] investors." *See* Bleichmar Decl. Ex. A.  That notice further advised investors that "if you . . . would like to inquire about potentially pursuing claims to recover your loss under the federal securities laws, you can submit your contact information at https://www.glancylaw.com/cases/sesen-bio-inc/." *Id.*  The Cruz firm published a similar notice on the same day, which told investors that all they had to do was "click here to participate." *See* Bleichmar Decl. Ex. B.  The next day, on August 19, 2021, Glancy and Cruz firms jointly filed the first complaint in this action on behalf of Ryan Bibb, one of the members of the Sesen Investor Group.  ECF No. 1.  That complaint did not refer to any other member of the Sesen Investor Group, let alone name them as a plaintiff at the time.  *Id.*

After filing the first complaint on behalf of Bibb—who asserts a loss of roughly $418,000 (ECF No. 38-3 at 2), substantially less than Harris's loss—the Glancy and Cruz firms continued to seek out additional investors.  On August 19, 2019, the same day that his counsel filed suit on behalf of a different investor, Rodney Samaan signed his PSLRA certification that "authorize[d] the filing of a Lead Plaintiff motion on my behalf."  ECF No. 38-2 at 12.  That certification does not state that Samaan contemplated serving as part of a group, knew anything about the Sesen Investor Group or the members of the group at the time he authorized his motion.

After Samaan signed his PSLRA certification, the Glancy and Cruz firms continued to seek out investors to participate in this case.  After issuing an additional press release (Bleichmar Decl. Ex. C), on August 23, 2021, Lionel Dreshaj "authorize[d] [] the filing of a Lead Plaintiff motion on my behalf."  ECF No. 38-2 at 14.  It was not until two months later, on October 17, 2021— after the firms published 19 additional investor press releases (Bleichmar Decl. Ex. D)—that Lionel's brother, Benjamin Dreshaj, did the same.  ECF No. 38-2 at 16.  Again, there is no evidence

8

that the Dreshaj's knew of Bibb, Samaan, the Sesen Investor Group, or any group whatsoever at the time that they authorized the filing of their respective Lead Plaintiff motions.  The only apparent connection is to the Glancy or Cruz firms—there is no evidence which law firm the investors contacted when they authorized the filing of their motions.

On the day of the Lead Plaintiff deadline, October 18, 2021, Bibb, Samaan and the Dreshaj's signed their Joint Declaration and apparently met each other for the first time through a "conference call with each other and with Glancy . . . to discuss filing a joint motion for appointment as lead plaintiff."  ECF No. 38-4 ¶6.  There is no evidence that the members of the group knew of each other's existence before that call.  *See Luckin*, 2020 WL 3127808, at *4 (refusing to appoint "random assemblage of unlike individuals" that "apparently did not even know of one another before counsel introduced them"); *FXCM*, 2015 WL 7018024, at *4 (refusing to aggregate two investors that "acknowledge[d] that only after conferring with one another and with counsel" that they "decide[d] to jointly file a motion for lead plaintiff").  The fluid nature of the Sesen Investor Group and the strong hand of counsel in assembling the group undermines any claims of cohesion and that the group can efficiently prosecute this action independent of counsel.

**No Plans for Cooperation.**  The Lead Plaintiff Order overlooked that the Sesen Investor Group's purported plans to oversee the litigation and communicate with one another and with counsel further demonstrate the group's inadequacy.  The only information the Sesen Investor Group submits regarding its plans for cooperation is that its members "discussed a protocol for maintaining regular contact" and "have each other's contact information."  ECF No. 38-4 ¶6.  Vague assurances to keep in touch are not the same as concrete plans to supervise litigation.  *See FXCM*, 2015 WL 7018024, at *4 (rejecting aggregation when group of two investors stated that they will "confer via phone and/or email as necessary to ensure that we are able to independently

9

communicate and make timely decisions"); *Phuong Ho v. NQ Mobile, Inc.* 2014 WL 1389636, at *5 (S.D.N.Y. Apr. 9, 2014) (rejecting group of three unrelated investors and finding that "[a] declaration that an unrelated group has implemented communication protocols to enable [them] to confer via phone and/or email is insufficient to show that the Group would be able to effectively manage litigation"); *Pipefitters Local No. 636 Defined Ben. Plan v. Bank of America Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) (refusing to appoint group that stated in joint declaration that they discussed "protocols for managing the litigation" and "have implemented communication procedures").

Critically, the Sesen Investor Group neither explains how it will be able to effectively oversee the Glancy and Cruz firms' work, nor how it can cohesively advance the interests of the class. This is particularly important here, when Harris is available to serve, asserts the largest individual financial interest of all the movants, and selected a single experienced law firm to pursue this matter. *See Block.One*, 2020 WL 4505569, at *3 (rejecting aggregation of five investors when group "failed [] to explain why the putative class would benefit from having five lead plaintiffs authorized to make decisions on its behalf. . . . the application [] creates an unnecessary risk of having too many cooks in the kitchen—or, perhaps worse, a risk of having disinterested cooks"); *Petrobras*, 104 F. Supp. 3d at 621-22 (rejecting appointment of "wholly artificial groupings" which would generate "problems of coordination, risks duplication of effort, and reduces the incentive of any individual group member to carry out its lead plaintiff duties to the fullest extent").

What's more, the group specifically recognizes that disagreements may arise but does not offer any mechanism to resolve disputes. ECF No. 38-4 ¶ 10. The Lead Plaintiff Order neither considered nor resolved this issue. This places the class at risk given that this complex litigation could be left at a standstill and the class rudderless in the event of a disagreement. Even more

10

concerning is that the Sesen Investor Group has four members; how will a dispute be resolved if two of the members share one view (for instance, the two Dreshaj brothers), and the remaining two members have an opposing view (Bibb and Samaan)?  The group does not offer an answer, let alone any plan, and the generic assurances it makes regarding "mak[ing] all efforts, in good faith, to reach consensus" are insufficient.  *See Luckin*, 2020 WL 3127808, at \*4 (insufficient to state that group will "make all efforts, in good faith, to reach consensus with respect to litigation decisions, and to that end will consult with each other and our counsel as we deem necessary"); *Petrobras,* 104 F. Supp. 3d at 623 (rejecting aggregation when group had "no agreement in place regarding the resolution of disputes amongst themselves").  The class should not be saddled with group leadership that failed to take the initiative to persuasively articulate how it can lead complex litigation by committee.

**Minimal Involvement in Litigation.**  "The rote recitation" of a conference call and the general matters that were discussed on that call "does not provide evidence that any member of the group—much less the group as a whole—has had significant involvement in the litigation thus far."  *Luckin*, 2020 WL 3127808, at \*4.  While Bibb filed the first complaint in this case, he did so individually, and as not part of the group, which further demonstrates the fragmented nature of the group.

**Sophistication.**  Even if the Court found that the group members are sophisticated, the Sesen Investor Group would still be an improper group under the PSLRA given the deficiencies discussed above.  *See Alibaba*, 102 F. Supp. 3d at 534 (rejecting aggregation when "[o]n the whole, no matter how experienced or sophisticated these plaintiffs may be, the [] Group appears to be nothing more than a lawyer-created group of unrelated investors who were cobbled together in the hope of thereby becoming the biggest loser").

In sum, the Sesen Investor Group has failed to satisfy the evidentiary burden articulated in *Varghese*, which the Lead Plaintiff Order did not have the opportunity to consider or address. It punishes the class to appoint this fragmented, lawyer-driven group as its figurehead. With courts in the Southern District frequently holding that group leadership comprised of unrelated individual investors is inappropriate under the PSLRA, the Sesen Investor Group has not provided the strong justifications that would be needed to consider deviating from that rule here.

**B.      Harris has the largest financial interest.**

With the Sesen Investor Group inadequate to lead this litigation, Harris "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). In determining the largest financial interest, "courts have generally relied on four factors . . . commonly known as the *Lax* factors." *Africa v. Jianpu Tech. Inc.*, 2021 WL 1999467, at *1 (S.D.N.Y. May 19, 2021). The four factors in order of importance are:

1. "the approximate losses suffered by the plaintiffs;"

2. "the total net funds expended by the plaintiffs during the class period;"

3. "the number of net shares purchased;" and

4. "the number of shares purchased" during the class period.

*Id.*; *see Cortina v. Anavex Life Sciences Corp.*, 2016 WL 1337305, at *1 (S.D.N.Y. Apr. 5, 2016) ("courts tend to treat the factors in ascending order of importance, with the number of shares purchased as the least important and the size of the loss the most important"); *see also Jianpu*, 2021 WL 1999467, at *1 (same).

Here, per the table blow, Harris incurred the largest loss among the remaining eligible movants as assessed under the four most well-accepted loss calculation methodologies in this district. "In evaluating approximate losses, most courts in this district rely on the last in, [first] out

or LIFO method, though some will consider the FIFO method." *City of Sunrise Firefighter's Pension Fund v. Citigroup Inc.*, 2021 WL 396343, at *3 (S.D.N.Y. Feb. 4, 2021). What's more, "[w]hen calculating approximate loss for the purposes of appointing a lead plaintiff under the PSLRA, following the Supreme Court's decision in *Dura Pharmaceuticals v. Broudo*, 544 U.S. 336 (2005), courts in this district ordinarily will not include losses that occurred prior to the first corrective disclosure of the alleged fraudulent misrepresentation made by the defendant." *Id.* Regardless of the method used, Harris incurred the largest loss among the eligible movants, which is the most important factor in determining financial interest. Harris also incurred a larger loss than any member of the Sesen Investor Group, as well as the two Dreshaj brothers combined. The Lead Plaintiff Order did not have the opportunity to consider these facts.[2]

| Movant | LIFO | FIFO | Dura LIFO[3] | Dura FIFO |
|---|---|---|---|---|
| Harris | $770,287 | $770,287 | $770,287 | $770,287 |
| Hernandez | $768,825 | $768,825 | $768,825 | $768,825 |
| Samaan (Sesen Investor Group Member) | $417,590 | $419,311 | $417,562 | $419,282 |
| Bibb (Sesen Investor Group Member) | $418,331 | $418,331 | $418,259 | $418,259 |
| Nolff | $394,368 | $394,368 | $380,681 | $380,681 |
| L. Dreshaj (Sesen Investor Group Member) | $196,707 | $196,707 | $196,314 | $196,314 |
| B. Dreshaj (Sesen Investor Group Member) | $151,791 | $151,791 | $161,373 | $156,013 |
| Miller | $41,677 | $41,782 | $37,200 | $57,751 |

While loss is the most important factor in assessing financial interest, when the losses of competing movants are close—as is the case here between Harris and Hernandez—courts

---

[2] Harris provides the individual financial interests of the Sesen Investor Group for the Court's convenience. *See Chauhan v. Intercept Pharms.*, 2021 WL 235890, at *6 (S.D.N.Y. Jan. 25, 2021) (declining to consider individual members when the members failed to submit separate motions for appointment).

[3] Counsel for Harris calculated the Dura LIFO and FIFO losses stated herein based on the trading information the movants submitted with their initial papers. Charts setting forth those calculations are attached as Ex. E to the Bleichmar Decl.

oftentimes place greater weight on the remaining *Lax* factors. *See Anavex,* 2016 WL 1337305, at *2 (appointing movant that purchased more net shares and expended more net funds over movant whose loss was "only slightly" larger).

With respect to the remaining *Lax* factors, in order of importance:

**Net Funds Expended.** Harris expended more net funds during the Class Period than any other remaining eligible movant, and expended 40% more net funds than Hernandez, the movant with the second largest loss;

**Net Shares Purchased.** Harris also purchased more net shares during the Class Period than any other remaining eligible movant. Specifically, Harris purchased 255,171 more net shares than Hernandez. In fact, Harris purchased more net shares than all other movants combined, when ignoring the improper Sesen Investor Group.

**Total Shares Purchased.** Harris also purchased the second most total shares of Sesen Bio stock, as set forth in the table below.

| Movant | Net Funds Expended | Net Shares Purchased | Total Shares Purchased |
|---|---|---|---|
| **Harris** | $1,079,047 | 255,171 | 255,171 |
| **Hernandez** | $768,825 | 0 | 274,888 |
| **Nolff** | $559,492 | 147,777 | 147,777 |
| **Bibb (Sesen Investor Group Member)[4]** | $534,520 | 127,085 | 127,085 |
| **Samaan (Sesen Investor Group Member)** | $436,258 | 29,492 | 101,000 |
| **B. Dreshaj (Sesen Investor Group Member)** | $242,073 | 98,748 | 109,475 |
| **L. Dreshaj (Sesen Investor Group Member)** | $196,707 | 0 | 115,227 |
| **Miller** | $48,610 | 6,878 | 45,142 |

That Harris purchased slightly fewer total shares than Hernandez—a difference of just 7%—does not outweigh the fact that Harris incurred the largest loss, expended 40% more net funds than Hernandez, and purchased 255,171 more net shares than Hernandez (an incalculable

---

[4] Includes Bibb's purchases of Sesen Bio options for the calculation of net funds expended, but not net or total shares purchased because options are not shares.

14

percentage because Hernandez purchased zero net shares). This is particularly true because total shares purchased is the least important factor as discussed above. *See supra* at 13; *see also e.g., Lucas v. United States Oil Fund, LP*, 2020 WL 5549719, at *3 (S.D.N.Y. Sept. 16, 2020) (appointing movant who incurred largest loss despite purchasing 60% less total shares than opposing movant); *Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263-64 (S.D.N.Y. 2019) (appointing movant that incurred largest *Dura* loss despite purchasing 90% less total shares than opposing movant); *Anavex*, 2016 WL 1337305, at *2 (appointing movant that expended more net funds and purchased more net shares over applicant that purchased more total shares); *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 271, 277 (S.D.N.Y. 2015) (appointing movant that incurred the largest recoverable loss over movant that purchased more than twice the amount of total shares).

## C.    Harris satisfies the relevant requirements of Rule 23(a).

In addition to possessing the largest financial interest in the outcome of the litigation, Harris satisfies the requirements of Rule 23(a)(3), (a)(4). *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(iii)(I)(cc). To overcome the presumption entitling Harris to appointment, the PSLRA requires proof of inadequacy. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No such proof exists in this case.

Harris's claims are typical because like all other class members, Harris: (1) purchased Sesen Bio securities during the Class Period, (2) at prices artificially inflated by Defendants' materially false and misleading statements and/or omissions, and (3) was damaged as a result. *See Stitt v. On Deck Cap., Inc.*, 2016 WL 889535, at *2-3 (S.D.N.Y. Feb. 17, 2016) (typicality satisfied when movant "claims that [defendant] issued false and misleading statements that caused the company's shares to trade at an inflated price [and] claims arise from the same course of conduct affecting each member of the proposed class").

15

Harris likewise satisfies the adequacy requirement of Rule 23(a)(4) because he is capable of "fairly and adequately protect[ing] the interests of the class." Harris has a substantial financial stake in the litigation, is an experienced investor, and has over a decade of experience overseeing teams of people. *See* ECF No. 27-1. Harris also affirmed that he has the resources, time and wherewithal to ensure the vigorous and efficient prosecution of this action, is committed to achieving the best possible result for all class members, and will fulfill all the necessary duties with which the PSLRA charges a Lead Plaintiff. *Id.* Harris's interests are aligned with those of other class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Harris and other class members.

Harris has further demonstrated his adequacy by selecting Gibbs Law Group—a single, experienced, and highly qualified law firm in the areas of securities and financial fraud litigation—to represent the class in this case. *See* ECF Nos. 26 at 9-10; 27-5. Bleichmar Fonti & Auld LLP ("BFA") is serving as local counsel with founding partner Javier Bleichmar as the principal attorney, who was previously a partner at Labaton Sucharow LLP for years before founding BFA. In sum, Harris will be an excellent steward for the class.

## CONCLUSION

For the reasons discussed above, Harris respectfully requests that the Court: (1) grant his motion for partial reconsideration; (2) vacate the Lead Plaintiff Order; (3) appoint him to serve as Lead Plaintiff; (4) approve his selection of Gibbs Law Group as Lead Counsel for the class; and (5) grant any such further relief as the Court may deem just and proper.

Dated: November 1, 2021                                    Respectfully Submitted,

                                                           **BLEICHMAR FONTI & AULD LLP**

                                                           */s/ Javier Bleichmar*
                                                           Javier Bleichmar

16

7 Times Square, 27th Floor
New York, New York 10036
Telephone: (212) 789-1340
Facsimile:  (212) 205-3960
jbleichmar@bfalaw.com

*Local Counsel for Proposed Lead Plaintiff Maurice Harris*


**GIBBS LAW GROUP LLP**
David Stein (*pro hac vice*)
505 14th Street, Suite 1110
Oakland, California 94612
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
ds@classlawgroup.com

*Counsel for Proposed Lead Plaintiff Maurice Harris, and Proposed Lead Counsel for the Class*

17