# EXHIBIT 5

1

F15ncirc                    Conference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------x

PERRY CIRAULU, et al.,

                Plaintiffs,

          v.                          14 Civ. 8659 (AKH)

AMERICAN REALTY CAPITAL
PROPERTIES, INC., et al.,

                Defendants.

-----------------------------x

                                      New York, N.Y.
                                      January 5, 2015
                                      11:40 a.m.

Before:

                HON. ALVIN K. HELLERSTEIN,

                                      District Judge

                        APPEARANCES

POMERANTZ LLP
     Attorneys for Plaintiff Ciraulu
BY:  JEREMY LIEBERMAN


ROBBINS GELLER RUDMAN & DOWD
     Attorneys for Plaintiff TIAA CREF
BY:  DARREN ROBBINS
     SAMUEL RUDMAN
     DAVID ROSENFELD

MOTLEY RICE LLC
     Attorneys for Plaintiffs KBC, UAM and SMWNPF
BY:  WILLIAM H. NARWOLD


STULL STULL & BRODY
     Attorneys for Plaintiff Berney Harris
BY:  JASON D'AGNENICA


                SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

2

F15ncirc                        Conference

APPEARANCES (Continued)


THE ROSEN LAW FIRM
     Attorneys for Plaintiff ARCP Group
BY:  PHILLIP KIM


MORGAN & MORGAN
     Attorneys for Plaintiff City of Tampa General Employees
     Retirement Fund
BY:  ELIZABETH METCALF


LOWEY DANNENBERG
     Attorneys for Plaintiff CORSAIR
BY:  BARBARA HART

BERNSTEIN LIEBHARD LLP
     Attorneys for Defendant State Employee Retirement System
     of Ohio
BY:  JEFFREY HABER


POMERANTZ LLP
     Attorneys for Plaintiff Ciraulu
BY:  JEREMY LIEBERMAN


GARDY & NOTIS
     Attorneys for Plaintiff Schenker
BY:  JAMES S. NOTIS


WEISS LAW
     Attorneys for Plaintiffs
BY:  JOSEPH A. WEISS


STEVEN J. TOLL
     Attorney for Plaintiff New York City Pension Fund

MILBANK TWEED HADLEY & MCCLOY
     Attorneys for Defendant American Realty Capital
     Properties, Inc.
BY:   SCOTT A. EDELMAN
      ANTONIA APPS
      JED M. SCHWARTZ


SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F15ncirc                          Conference                          3

APPEARANCES (Continued)

DAVIS POLK & WARDWELL LLP
     Attorneys for Defendant Berson
BY:  MICHAEL S. FLYNN

PAUL WEISS
     Attorneys for Defendant Schorsh
BY:  DANIEL J. KRAMER

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

4

F15ncirc                    Conference

(In open court; case called)

THE COURT:  I think the task this morning is to have a lead plaintiff.  Right?

MR. TOLL:  No, your Honor.  The lead plaintiff motions were filed on December 29.  As you know, there were many of them filed and responses are due in mid-January, and then replies.

THE COURT:  The defendants are not going to take a position on this?  I have everything that I need to consider?

MR. TOLL:  Not yet until the oppositions come in and then the replies.

THE COURT:  Each of you is going to oppose the other I suppose.

MR. TOLL:  Correct.

All I am saying is today I didn't think we were going to get substantively into the merits, but whatever you would like.  More briefing is coming.

THE COURT:  How do you think it's going to happen, Mr. Toll?  Are the plaintiffs going to take positions opposing one another?

MR. TOLL:  I can't speak for everyone.  I think some will withdraw because their losses are so tiny, and then some might oppose the others or try to argue why they should be a lead plaintiff.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

5

F15ncirc                    Conference

THE COURT:  It's probably going to come down to two or three or one.

MR. TOLL:  I think it's going to be a small number, your Honor, one or two more likely.

THE COURT:  What is the most efficient way I can handle this?

MR. TOLL:  Today or in general?

THE COURT:  The most efficient way to do it today, but you are telling me I can't.

MR. TOLL:  Today I don't any there's too much to do. I think you will wait for the opposition and replies to come in and then decide on the papers.

THE COURT:  The major criterion is who is the biggest, right?

MR. TOLL:  That is one of the predominant factors.

THE COURT:  That is the predominant factor subject to exceptions.  But if I find that X is the largest, and that issue doesn't always come clearly, but if I find that, given some imperfection that is immaterial, that is the company that is the lead plaintiff.

MR. TOLL:  That is typically the case.

THE COURT:  And that company will pick its lawyer.

MR. TOLL:  We do have a somewhat unique situation.  I guess I am in the middle of that with the New York City pension funds.  They bought bonds.  They lost a lot of money on bonds,

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

6

F15ncirc                     Conference

and the most of the other top movants, the only movants I think are larger than New York City's losses, none of them bought any bonds.  There are some very strong bond claims that need to be brought.

THE COURT:  Is a bond claim different from a stock claim?

MR. TOLL:  Yes.  There are Section 11 claims and 10(b) claims, the exchange account claims under 10(b) for stock claimants are different, and different defendants would be involved in the bond claims.  There would be underwriters and auditors who are not under the 10(b) claims, so it is quite unique here.

THE COURT:  In respect to the bonds, speaking very generally, the question is asset value.  The position of stocks, it is a question of appreciation.

MR. TOLL:  They are different, no question, your Honor.  They are all securities, no doubt about that.  But they are different in the way they perform, the way they react to the news in the marketplace.

THE COURT:  I couldn't have one lawyer represent both bond classes and stock classes, could I?

MR. TOLL:  We think it is better to have one for stock and one for bonds.

THE COURT:  So the answer is I can't?  I shouldn't?

MR. TOLL:  I don't know that you cannot.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F15ncirc                    Conference

THE COURT:  I shouldn't.

MR. TOLL:  I think you have discretion.  I don't think you should have one.

THE COURT:  How do you feel?

MR. TOLL:  I am sure they will feel differently.

THE COURT:  You are?

MR. ROBBINS:  Darren Robbins for TIAA-CREF.

THE COURT:  Yes.

MR. ROBBINS:  Your Honor has addressed these issues on numerous occasions.  I doubt there are many judges in this Court that have dealt with the lead plaintiff issue more than your Honor.

THE COURT:  You're kidding.

MR. ROBBINS:  Having gone through it a dozen or so times in the context of these actions.

THE COURT:  Usually it is not really contested.

MR. ROBBINS:  Your Honor, I think we have, as Mr. Toll pointed out, a number of lead plaintiff movants who have indicated after reviewing all the motions that my client should be appointed.  It has a loss of almost $32 million.

THE COURT:  All by itself?

MR. ROBBINS:  All by itself, your Honor.  An institution here formed by the Carnegie Foundation almost a hundred years ago --

THE COURT:  I know TIAA-CREF.  You are basically the

(212) 805-0300

F15ncirc                    Conference

pensions of teachers.

MR. ROBBINS:  Correct, your Honor.

THE COURT:  Of all levels.

MR. ROBBINS:  Correct.

THE COURT:  A very credible institution.

MR. ROBBINS:  Your Honor has on several occasions seen that when lead plaintiff motions are made then all of a sudden there is twisting and turning and switching gears by those with much smaller losses.

In this case, there is no other movant who claims even more than $20 million other than the Public Sector Investment Board, which I don't think made an appearance today.  And like many others --

THE COURT:  Should I have one lawyer or two lawyers, thinking about the bond class and the stock classes?

MR. ROBBINS:  Well, I think, your Honor, one lead plaintiff -- this has been dealt with repeatedly and endorsed by the Second Circuit in the WorldCom, case where the argument was made that you need multiple plaintiffs, and the notion that every warrior is a general doesn't work.  And having multiple lawyers, this Court has repeatedly expressed its concern about efficiencies in costs and litigation, and having duplicative counsel is not an ideal practice.

THE COURT:  There is no real ideal.  It is a big enough case where you can't confine the activity to one lawyer,

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F15ncirc                    Conference

and maybe not even one law firm.  Just like there are a number of defendant law firms, efficiency may come up with more than one.

I am inclined to believe that there is enough differences in the quality of the security, in the bond and the stock, that a different class representative should be chosen. I would reduce the number of allied counsel that normally forms itself behind the lead counsel.

MR. ROBBINS:  Typically the selection of counsel in this case by TIAA-CREF, and Mr. Feigelson, who is the general counsel at TIAA-CREF, put in a declaration.  It's Exhibit 5 to docket 18.  He articulated his concern about multiple lawyers and inefficiencies, and I think in recognition of the notion that in this case, your Honor, there are several different types of securities involved, there are several bonds --

THE COURT:  Tell me about that.

MR. ROBBINS:  Well, there are bonds, there is preferred stock, there are claims, your Honor, tied to -- and I'm sure Mr. Weiss will talk to you about this -- tied to the merger with Cole, in which your Honor it was over a $10 billion transaction, a stock-for-stock transaction in which shares were exchanged.  It will be Mr. Weiss' argument, I'm sure, that those claims differ, just like the bond claims.

I don't buy into that, and I subscribe to the Second Circuit's theory that you can have a single lead plaintiff and

(212) 805-0300

10

F15ncirc                    Conference

a single lead counsel.

I think that's why several of the movants here, including the largest individual movant, the largest bond purchaser, which is my colleague over here, Mr. Narwold, who has a client who lost millions of dollars in the bonds, have indicated it would be more efficient to have a single lead counsel and work under the auspices of a single lead plaintiff and single lead counsel. Because each of the arguments that you will hear from Mr. Toll or Mr. Weiss will be that the preferred need their own plaintiff, the bonds need their own plaintiff, the Cole merger needs their own lead plaintiff, and lead counsel and pretty soon this will be Balkanized. That's why I think in reviewing this in the context of the WorldCom case, the Second Circuit definitively said that is not necessary.

THE COURT: It's my discretion.

MR. ROBBINS: Pardon me?

THE COURT: It is my discretion.

MR. ROBBINS: Absolutely, it's your discretion, your Honor. Your Honor does have discretion.

THE COURT: How many different securities are there?

MR. ROBBINS: There are at least five bond issuances that were traded during the relevant period. There is common stock. There is preferred F stock that was issued in connection with one transaction. There are the Cole merger

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

                                                        11
F15ncirc                    Conference

shares.

THE COURT:  What is that?

MR. ROBBINS:  Cole was another entity that was acquired by ARCP during the class period.  That transaction was consummated on February 7, 2014.  Approximately $9 billion worth of stock was exchanged, and the argument would be, at least as I understand it, that they somehow need some kind of special designation.

Then, your Honor, there was, in addition, a May 2014 offering, and those have '33 Act claims associated with them. It would be our intention, your Honor, that if my client was appointed lead plaintiff, it, for example, has those '33 Act claims, that it would consolidate all of the actions, of which there are seven, and would have plaintiffs for each of those, but only a single lead plaintiff and a single lead counsel, and follow this Court's admonition in Elan and Pfizer, where your Honor directed us to act efficiently and effectively, and we will do so.

THE COURT:  Mr. Edelman, will you be able to prepare for me a chart that would depict the different kinds of securities that are involved here and the periods of time where they were operating?

MR. EDELMAN:  Yes.

THE COURT:  And pass it to Mr. Robbins and then give it to me?

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F15ncirc                    Conference

MR. EDELMAN:  We will do so, your Honor.

THE COURT:  How many other security holders of whatever type wish to vie for leadership?

MR. WEISS:  Your Honor, Joseph Weiss.

THE COURT:  I will take the lady first.

MR. WEISS:  Sure, your Honor.

MS. HART:  Thank you, your Honor.

THE COURT:  I am old-fashioned.

MS. HART:  That is very kind.

THE COURT:  It is not politically correct.

MS. HART:  In this instance I can appreciate it.

We have close to $20 million in losses, your Honor, and so on the gross loss analysis the --

THE COURT:  You are representing whom?

MS. HART:  CORSAIR, your Honor, Barbara Hart.  We have claims based on the secondary offering and the Cole merger as well as open market claims.  So we do represent the panoply of claims.  Not the bond claims, I don't want to overrepresent it, because the city would be able to represent, but I do think that in this instance I was unaware --

THE COURT:  Why should I pick your claim over Mr. Robbins claim if Mr. Robbins has a client that lost more?

MS. HART:  Mr. Robbins' clients' claims are very significant.  I was not aware that Mr. Robbins' clients' claims represent the secondary offering.  So I am not clear that

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

13

F15ncirc                    Conference

that's true.  I did understand that --

THE COURT:  If you want to have redress against the issuer by reason of a secondary offering, you can put yourself in exactly the same position as the party that took on the initial offering.

MS. HART:  In this instance, your Honor, there are very significant additional defendants and potential resources for recovery that could be triggered by being able to state a claim for all the claims.  In this instance we have --

THE COURT:  Your interest is getting recovery from additional defendants.

MS. HART:  Yes, your Honor.  And the open market purchasers of the Cole merger not might capture all of the defendants, and you could have a situation where there are -- there are allegations ever intentional misconduct, and you can have a disavowal of certain D&O based on the allegations of intentional misconduct whereas director perhaps or additional underwriters negligence claims could stand, but the intentional misconduct claims might trigger a disavowal.  So it's important to make sure --

THE COURT:  What would you get by proving intent?  You could get recovery by proving negligence.

MS. HART:  We can prove negligence under the Section 11, Section 14 claims, your Honor.

THE COURT:  So could Mr. Robbins, can't he?

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

14

F15ncirc                    Conference

MS. HART:  I don't want to misrepresent.  My understanding was he did not have the secondary offering claims.

THE COURT:  I'm asking you.  What is the difference?  If you are looking to get American Realty Capital, the issuer, on a secondary offering, you are in the same situation as Mr. Robbins.

MS. HART:  We could potentially get additional defendants, the accountants.

THE COURT:  So could he.

MS. HART:  Not if he doesn't have proper standing.  I was not aware that they had already cobbled together other plaintiffs with additional standing, but that overrides --

THE COURT:  He was talking about himself.  He said, I don't need anybody else.  My losses were so large they encompass everybody else's.

MS. HART:  Our losses are additionally also very large, just shy of $20 million.

THE COURT:  How much were yours, Mr. Robbins?

MR. ROBBINS:  Your Honor, they are approximately $32 million.

THE COURT:  OK.

MS. HART:  I think by bringing more people under the tent in this instance you could avoid the proliferation of independent litigation.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

15

F15ncirc                    Conference

So if the Court directs counsel to forge an alliance between the clients that have the biggest losses, the Court will more efficiently be able to keep this under one tent.

THE COURT:  If you bring your individual case in some other court, all the more power to you.  If you bring them in my court, you get consolidated, and the consolidation won't make any change.

If you want to focus your argument on why it would be useful for you to be under the umbrella of the larger plaintiff, you might be able to state the point.  By contesting against Mr. Robbins -- I will give you my initial view -- you won't achieve anything, because he's got a larger client.  I am telling you the facts.

Who else wants to tell me something?  Mr. Weiss?

MR. WEISS:  Thank you, your Honor.  Hopefully I will be able to tell you something new.  I represent Mr. Abadi.

THE COURT:  I just read Ecclesiastes out of season. So what is your chance?

MR. WEISS:  My chance is, I think, is pretty good.

THE COURT:  Not pursuant to Ecclesiastes.

MR. WEISS:  No.  My client was a shareholder of Cole, your Honor.  We are the only ones to have filed a Section 11.

THE COURT:  Robbins got 11.

MR. WEISS:  No, your Honor.

THE COURT:  No?  Mr. Robbins?

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

16

F15ncirc                    Conference

MR. ROBBINS:  Your Honor, we do have the claim. Mr. Weiss is correct that we did not file, because my client did not file a lawsuit.  As your Honor is well aware, we are entitled to file a lead plaintiff motion, and we have two and a half million shares.

THE COURT:  Just answer my question, please.

MR. ROBBINS:  Yes, your Honor.

THE COURT:  Do you have a Section 11 claim.

MR. ROBBINS:  We do, yes, your Honor.

MR. WEISS:  He hasn't filed it.  He may have it, but he hasn't filed it.

THE COURT:  Now I'll ask you why.

MR. ROBBINS:  Your Honor, because my client directed us to file a motion, not a complaint.  We will file a complaint if appointed.

THE COURT:  You didn't file a complaint yet?

MR. ROBBINS:  Just a lead plaintiff motion, your Honor.

THE COURT:  How can you do could that if you don't have a complaint?

MR. ROBBINS:  Because, your Honor, the statute provides that any class members, it's designed to encourage institutions like TIAA-CREF to have the complaints filed, the notice to go out pursuant to the statute, and then the motions are made.  That's why your Honor sees that many of the movants

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

17

F15ncirc                    Conference

here never filed a complaint.  Ms. Hart's client, Mr. Toll's client.

THE COURT:  Do you start a lawsuit by a motion?

MR. ROBBINS:  By the lead plaintiff motion, which was no different, your Honor, than in Pfizer, where you had competing movants and you asked us to work and coordinate after appointment and file a complaint, which is what we did.

MR. WEISS:  Your Honor, Mr. Robbins is correct.  He can do it this way.  But the fact is that we went ahead and we filed a Section 11 claim and a Section 12(2) claim.

THE COURT:  What is the law, Mr. Weiss, on rewards to the swiftest?

MR. WEISS:  Rewards to the swiftest?  I don't think there is a reward to the swiftest, your Honor.  But I want to tell you we have done more than just being rewarded to the swiftest.  What has happened is I don't think any of these people would be here now if not for me.

Why do I say that, your Honor?  Because there was a previous action which was brought -- not by my client, and I wasn't involved -- which was brought in Baltimore when the merger between Cole and ARCP took place.  In connection with that action, the shareholders were claiming it's not fair to the Cole shareholders.  Eventually, they came to an agreement to settle that case.

There was a hearing scheduled on that agreement to

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F15ncirc                    Conference

settle the case, which took place just a few weeks ago, and the decision has not yet come out.  However, I looked at the release.  And the release language would have barred all claims, state and federal, including these very claims.  It would bar all claims from being brought in any court in connection with the takeover of Cole.

So we, of course, objected, and we appeared, and there are others who subsequently filed objections, and we appeared and we led the objection to it, again in order to make sure that this is carved out.

In addition, your Honor, there was an agreement --

THE COURT:  So it is yet certain whether it will or won't be carved out.

MR. WEISS:  It is not certain, your Honor.  But if the Court should do the completely unexpected, obviously it is going to be the subject of an appeal.

THE COURT:  Federal court or state court?

MR. WEISS:  It is in state court, and the state court exhibited -- how shall I put it? -- a healthy skepticism as to the scope of the release.

THE COURT:  OK.

MR. WEISS:  So we have gone ahead and taken the lead in that regard.

THE COURT:  What you are telling me really is that you are alert and quick and you are good, but you don't have a big

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F15ncirc                    Conference

enough client.

MR. WEISS:  I do, your Honor, in the following sense.

The Cole shareholders are the ones, frankly, who were -- defrauded is the wrong word, because I have strict liability claims.  I don't have to prove negligence.  I don't have to prove intent.  I have Section 11 strict liability claims.  But they are the ones who were screwed in this transaction, to put it colloquially.

On the other hand, the ARC people who took over Cole, they benefited from this takeover based upon a materially misleading registration statement.

So I agree with Mr. Robbins that he has the largest, and I agree with Mr. Robbins, frankly, that he should be the lead he should be the lead.  However, there is an interclass conflict here.

THE COURT:  You want to be on the committee?

MR. WEISS:  There needs to be a committee.  There needs to be a committee.

THE COURT:  Mr. Robbins, can I make the judgment on a motion without having complaints from everybody?

MR. ROBBINS:  I think your Honor can make that ruling, yes.

THE COURT:  How do I know what you are going to claim?

MR. ROBBINS:  In what regard, your Honor?

THE COURT:  You say you have a Section 11 claim, but

(212) 805-0300

20

F15ncirc                    Conference

you haven't filed one.  How do I know what claims you will be filing, and how do I measure whether everything is covered or not and what that means without complaints?

MR. ROBBINS:  Your Honor, the statute expressly contemplates the PSLRA, the consolidation will happen first, and that the lead plaintiff will select the claims.  You can rest assured that the '33 Act claims and the claims of all members of the class will be asserted.

If you read Mr. Feigelson's declaration that was filed in connection with the lead plaintiff motion by TIAA-CREF, they made it very clear that they will assert all claims.

THE COURT:  I think I should have complaints.

MR. ROBBINS:  Your Honor, I think if you look at not just what happened -- let me use two analogous situations, your Honor, where there were multiple --

THE COURT:  The argument against filing the complaint --

MR. ROBBINS:  It defers the appointment of lead plaintiff, and it would probably end up having seven or eight different complaints on the same subject matter filed.  Your Honor, the statutory provision -- and if I may, can I just quote the Second Circuit, a couple of sentences in the WorldCom decision.

THE COURT:  Sure.  What's the declaration you referred to?

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

21

F15ncirc                    Conference

MR. ROBBINS:  The declaration is the declaration of Mr. Feigelson.  It is attached to the Rudman declaration, and it is filed in connection with docket 18.

THE COURT:  I am not sure we have a complete file. After we finish, if all of you could see Josh and make sure that we have a complete set.  You don't have to read it to me. I have been around this long enough.  I want to know what claims there are.  It shouldn't take you long to do this.  You have been living with this now for a while.  In ten days I would like to have complaints from you.

MR. ROBBINS:  If that is what you would like, your Honor, we will file a complaint in ten days.

THE COURT:  OK.  That's what I would like.  I would like a complaint from all movants.  Whoever wants a piece of the action, give me your complaint.  If you want to vie for being lead or on a committee of some sort, you want to have a say, then I want a complaint.

If you don't want to have a say, you don't have to do anything.  You are a member of the class.

MS. HART:  Your Honor, we would very much like a say. We are the second largest movant in the courtroom.

THE COURT:  So do it.

MS. HART:  Yes, your Honor.

THE COURT:  What else do I need to know?

MR. ROBBINS:  Your Honor, do you want us to continue

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

22
F15ncirc                    Conference

with the briefing on lead plaintiff, or just file the complaints and make a decision from there?

THE COURT:  Well, I have all the briefs, don't I?

MR. ROBBINS:  You have the moving briefs, yes.

MR. WEISS:  Your Honor, the issue is, and I leave it to your Honor, but the issue is whether there should be answering briefs, reply briefs, how much paper you want to be buried with.

THE COURT:  I don't think I need anything else.  The most important criterion is the size.  I have discretion, and I probably will exercise discretion to have a separate leader of the bond classes and a separate leader of the stock classes.  I don't know and I haven't heard any reason I should have a separate leader for secondary offering classes or for merger classes, since the securities that were given are encompassed by bonds and stocks.  I do think that there will have to be some kind of working group, and I would like to know that.

Since, Mr. Robbins, you have such familiarity, more so than my memory gives me, of what I have done in the past, you know that I take a critical stance on duplication and on unnecessary fees.  I am strict on that at the end of the case. So, with that, I think we should try to form a working group that makes sense.

MR. ROBBINS:  Your Honor, we did that in advance, recognizing that once before we went through this process, and

(212) 805-0300

23
F15ncirc                    Conference

so we have someone who has secondary offering Cole merger

claims, bond claims.  The largest bond purchaser is

Mr. Narwold's client and so we tried to formulate something

that would be efficient, because the admonition from your Honor

was I am going to appoint a single lead plaintiff and the last

time I was --

THE COURT:  I don't think I am going to appoint a

single lead plaintiff with bonds and stocks because they are so

different.

MR. ROBBINS:  Your Honor, this is a purchaser case,

not the holders in the bankruptcy.  And the purchasers, the

claims arise under the same --

THE COURT:  There's different materiality.  A

bondholder is interested in different things than a

stockholder.

MR. ROBBINS:  Not as a purchaser of the security.  As

a holder, I would agree.

THE COURT:  As a purchaser as well.  The purchaser is

going to become a holder, or he's going to flip.  If he's going

to flip, he's not much interested in this case.  It is a

purchase to acquire a position.  That is mostly involved in the

prosecution of the case.

MR. ROBBINS:  The underlying claim associated with the

acquisition of the security is that there was a

misrepresentation made, an alleged misrepresentation, and that

(212) 805-0300

24

F15ncirc                    Conference

affects both purchasers of debt and equity.

THE COURT:  That is true.  But in ways that I don't fully understand now and I can only intuit, I think there's enough differences between bonds and stocks to warrant the separate representation of each.  And you will have to work together about some kind of working group.  If you don't work it out, I will intervene and you can get yourselves organized differently.

MR. ROBBINS:  Separate representation is exactly what was contemplated in WorldCom by the Second Circuit, which said that it is the lead plaintiff's job to make sure that each of those claims are covered.

THE COURT:  That's my job.

MR. ROBBINS:  OK, your Honor.

THE COURT:  All right.

MR. KIM:  Your Honor, may I be heard on the Cole merger claim?

THE COURT:  Mr. Kim, yes, sir.

MR. KIM:  I echo what Mr. Weiss presented to the Court.

THE COURT:  Why are you telling me something different?

MR. KIM:  I would like to focus on the reason why I believe there should be a separate class representative who exchanged their Cole shares for ARCP shares.

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

25

F15ncirc                    Conference

THE COURT:  Mr. Kim, you are only demonstrating to me the more people I have the more you are going to cover the same thing, because every lawyer likes to speak who finds a difference.

MR. KIM:  Your Honor, I think the important point here is that, in connection with the share exchange, those people who held ARCP shares, which is within Mr. Robbins' class period, have a direct conflict with those who exchanged Cole shares.

They basically used ARCP shares at the artificially inflated price as currency to exchange the Cole shares.  We talked earlier about the potential different defendants and the bond claim in the Cole case.  Not only do we have a nonfraud claim, we also have a potential Section 14 claim, which can also encompass Cole defendants as defendants within the case.

So I think, given those circumstances, the class would benefit from having a single law firm or a group of plaintiffs just looking out for the Cole merger shareholders as similar to the bond shareholders, as the Court had noted.  I think it is a little bit different.

THE COURT:  I don't see how it's going to be different.  You are making the same arguments.  Maybe you won't be subject to a defense, but I don't have to worry about that in appointing a class leader.

MR. KIM:  I think, your Honor, the actual Cole

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F15ncirc                    Conference

shareholders are in direct conflict.  Where if you held, if you

bought Cole shares before --

THE COURT:  I got you, Mr. Kim.  OK.

The answer is I am not appointing a separate class for

the merger.

I think I've got the outlines of what we are going to

do.  The largest loser -- that seemed to be Mr. Robbins -- your

client will be entitled to have the status of lead plaintiff.

The largest bond loser I don't know who it is.

MR. NARWOLD:  Yes, your Honor.

THE COURT:  What is your name?

MR. NARWOLD:  Bill Narwold of Motley Rice.  We

represent Union Asset Management.  They have the largest bond

loss by about two and a half times, $3.6 million.

THE COURT:  You will probably be the lead lawyers for

the bonds.

MR. NARWOLD:  I am happy to come up with something.  I

have no objection, your Honor, to Robbins Geller being a sole

lead and us representing the bondholders.  That happens all the

time.  It seems to me -- and I came in today with this idea.

THE COURT:  I would like to have a separate

representation.  If you don't want to do it, I will take --

MR. NARWOLD:  Your Honor, we will certainly stand up

as lead counsel.  I have no objection to that.  All I am saying

is for efficiency purposes, we are willing to lead the way.  We

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F15ncirc                    Conference

do have the largest loss here in terms of bonds.

MR. TOLL:  Your Honor, with regard to New York City, New York City has a much larger loss than their clients, total over eleven half a million dollars.

THE COURT:  How does he say he has the largest.

MR. TOLL:  Apparently he says -- and I don't know and I will take him at his word, that their bond losses, New York City's bond losses, are about a million and a half, but it is 11 million in total.

THE COURT:  I don't understand.

MR. TOLL:  New York City has a lot of stock losses, too.  So we have stock and bond losses.  But New York City is the only one who moved to be appointed to represent bonds. Their firm was apparently working in some way with Robbins Geller, which I'm getting what Mr. Robbins said.  But New York actually affirmatively wants to be the lead counsel for the bond class, and we have a larger loss in total than they do.  I think that should count for something here.  Even though their bond losses may be larger, New York City is a larger loser, and is one who really wants to step forward and be a lead while they seemingly don't want to.

THE COURT:  I think not.

MR. NARWOLD:  Your Honor, we did move to be lead counsel in this case.

THE COURT:  I think you are going to have to fit in

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

28

F15ncirc                    Conference

with Motley Rice.

MR. WEISS:  Your Honor, can I just make clear to your Honor that there were three motions filed on behalf of Cole shareholders, including Mr. Kim and including the Gardy & Notis firm.  All three of us are united in the sense of working together and the concept of being a member of a group.

THE COURT:  So maybe --

MR. WEISS:  But we don't want to be excluded --

THE COURT:  I don't --

MR. WEISS:  We are not asking for a separate lead position, but we want to know that we are going to be able to represent Cole shareholders in working with Robbins Geller.

THE COURT:  I think one of you should, but not all three.

MS. HART:  Your Honor, we actually have Cole losses as well and a significantly greater overall loss, and we did move on behalf of the Cole losses.  So we have close to $20 million in loss, and we have both the secondary offering and the Cole merger damages.

THE COURT:  My thought so far -- and in this respect I think lead counsel will have to make the judgments -- my thought so far is that Mr. Robbins should be lead counsel for the stock, that Motley Rice should be the lead counsel for the bonds, that there should be representation in the committee by one person representing the merger, the holders that became

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

F15ncirc                    Conference

such through the merger, and that there ought to be some representation of the very large pension losses, for example, by New York City.  That is as far as I can go today.

MR. ROBBINS:  Your Honor, if I may?

THE COURT:  I think by the next time I see you, that should give you time to file your respective complaints, there should not be any obligation to answer, and I should have another meeting with you.

MR. ROBBINS:  Your Honor, if I may, the filing of the seven or eight complaints may be avoided by the ruling that you just made, which is the appointment of lead counsel.

THE COURT:  No.

MR. ROBBINS:  OK.  You want them filed in how many days, your Honor?

THE COURT:  What do you need?  Ten?

MR. ROBBINS:  If we could have two weeks, that would be great.

THE COURT:  Before we fix the date, I have a disclosure to make to you.

I understand that American Realty Capital had numerous issuances in numerous issuers.  I don't know if I have put it correctly, Mr. Edelman, but my secretary, Nancy Wong, owns some shares which are subject to automatic reinvestment, which means I guess that the class of holdings she has expires on certain dates.  They are automatically converted into a new issuance,

(212) 805-0300

F15ncirc                    Conference                    30

but she has determined that she will not be converting.  They are not publicly traded.

I was going to make this disclosure:  It has come to my attention that my secretary has significant financial investments in publicly registered, nontraded real estate investment trusts, American Realty Capital Trust V Inc. and Phillips Edison American Realty Capital Grocery II, which are affiliated with the American Realty Capital.

I have reviewed her holdings.  I have determined that her investment will have no effect on my ability to remain fair and impartial, nor that it would create an appearance of impropriety.

However, if any party has an objection to my continuing involvement in this case, that party shall submit a letter so stating with sufficient supporting reasons by January 15, 2015.  The letter should be filed not with me, but with the Clerk of Court, and there will be sufficient assurance that I will not see the identity of anyone submitting that letter.

I don't know if anyone wants to make a comment.  You can do so now or you can do so later.  I can tell you this.  I don't have such a love for this case that it will cause me to lose sleep if some other judge were to handle it.  I am the judge on the case because by coincidence I was the number one judge in index numbers, the lowest one.

I don't care.  If anyone has any sensitivity, banish

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

31

F15ncirc                    Conference

that thought.  In fact, I wouldn't mind losing the case.

Do whatever you want.  You can file it with the Clerk of the Court, and we will have some procedure with the clerk so I won't know if anyone wants me recused.

If it works out right, you will all ask for my recusal.

Anything else?

MR. ROBBINS:  No, your Honor.

THE COURT:  Let's fix another meeting date.

Is three weeks all right, Mr. Robbins?

MR. ROBBINS:  That's all right.

THE COURT:  Mr. Edelman, three weeks?

MR. EDELMAN:  Whatever, your Honor.

THE COURT:  You fellows don't have a stake in this. Would three weeks be enough time do you think?

MR. WEISS:  Your Honor, just any day after February 1. I am going to be out of the country.  Any day after February 1 is fine with me.

MR. ROBBINS:  Your Honor, the complaints that you have asked for, you would like them filed with the Court or attached as an exhibit with the filing?

THE COURT:  Filed.

MR. ROBBINS:  Got it.  Thank you, your Honor.

THE COURT:  Let's go off the record.

(Discussion off the record).

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300

32

F15ncirc                    Conference

THE COURT:  February 10, 4 o'clock for our next meeting.  What I would like to accomplish at that next meeting is the appointment of lead counsel presumably for both classes of bond and stocks and a working committee encompassing both groups.  Instead of trying to fill in more details I will let the group form under the leadership of Mr. Robbins and see how it works out.

MR. ROBBINS:  Thank you, your Honor.

THE COURT:  OK.  Anything else?

Thank you very much.

(Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.

(212) 805-0300