# Exhibit E

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

## FORM 10-K

(Mark One)

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the fiscal year ended December 31, 2021

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934

For the transition period from _____ to _____

Commission File Number: **001-36296**

# Sesen Bio, Inc.
(Exact name of registrant as specified in its charter)

| **Delaware** | **26-2025616** |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

| **245 First Street, Suite 1800 Cambridge, MA** | **02142** |
|---|---|
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code **(617) 444-8550**

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Trading Symbol(s) | Name of each exchange on which registered |
|---|---|---|
| Common Stock, $0.001 par value | SESN | The Nasdaq Global Market |

Securities registered pursuant to Section 12(g) of the Act:   **None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. Yes ☐ No ☒

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. Yes ☐ No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☒ No ☐

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). Yes ☒ No ☐

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large accelerated filer | ☒ | Smaller reporting company | ☐ |
| Accelerated filer | ☐ | Emerging growth company | ☐ |
| Non-accelerated filer | ☐ | | |

The successful development and commercialization of Vicineum for the treatment of non-muscle invasive CIS of the bladder in patients previously treated with adequate or less than adequate BCG is highly uncertain. This is due to the numerous risks and uncertainties associated with product development and commercialization, including the uncertainty of:

- the scope, progress, outcome and costs of our clinical trials, including the additional Phase 3 clinical trial, and other research and development activities;
- the efficacy and potential advantages of Vicineum for the treatment of non-muscle invasive CIS of the bladder in patients previously treated with adequate or less than adequate BCG compared to alternative treatments, including any standard of care;
- the market acceptance of Vicineum for the treatment of non-muscle invasive CIS of the bladder in patients previously treated with adequate or less than adequate BCG;
- the cost and timing of the implementation of commercial-scale manufacturing of Vicineum;
- obtaining, maintaining, defending and enforcing patent claims and other intellectual property rights;
- significant and changing government regulation;
- the impact of the COVID-19 pandemic; and
- the timing, receipt and terms of any marketing approvals.

A change in the outcome of any of these variables with respect to the development of Vicineum for the treatment of non-muscle invasive CIS of the bladder in patients previously treated with adequate or less than adequate BCG could mean a significant change in the costs and timing associated with the development of Vicineum for the treatment of non-muscle invasive CIS of the bladder in patients previously treated with adequate or less than adequate BCG. For example, if the FDA or another regulatory authority were to require us to conduct clinical trials or other testing beyond those that we currently contemplate will be required for the completion of clinical development of Vicineum for the treatment of non-muscle invasive CIS of the bladder in patients previously treated with adequate or less than adequate BCG, we could be required to expend significant additional financial resources and time on the completion of clinical development of Vicineum for the treatment of non-muscle invasive CIS of the bladder in patients previously treated with adequate or less than adequate BCG.

We allocate direct research and development expenses, consisting principally of external costs, such as fees paid to investigators, consultants, central laboratories and CROs in connection with our clinical trials, costs related to manufacturing or purchasing clinical trial materials and technology transfer and license milestone fees, to specific product programs. We do not allocate employee and contractor-related costs, costs associated with our platform and facility expenses, including depreciation or other indirect costs, to specific product programs because these costs may be deployed across multiple product programs under research and development and, as such, are separately classified. The table below provides research and development expenses incurred for Vicineum for the treatment of BCG-unresponsive NMIBC and other expenses by category. We have deferred further development of Vicineum for the treatment of SCCHN and VB6-845d in order to focus our efforts and our resources on our ongoing development and, if approved, commercialization of Vicineum for the treatment of non-muscle invasive CIS of the bladder in patients previously treated with adequate or less than adequate BCG.

We did not allocate research and development expenses to any other specific product program during the periods presented (in thousands):

| | Year ended December 31, | | |
| --- | --- | --- | --- |
| | 2021 | 2020 | 2019 |
| Programs: | | | |
| Vicineum for the treatment of BCG-unresponsive NMIBC | $ 15,110 | $ 22,234 | $ 16,023 |
| Total direct program expenses | 15,110 | 22,234 | 16,023 |
| Personnel and other expenses: | | | |
| Employee and contractor-related expenses | 8,977 | 5,775 | 6,513 |
| Platform-related lab expenses | 172 | 303 | 513 |
| Facility expenses | 524 | 442 | 442 |
| Other expenses | 529 | 437 | 1,172 |
| Total personnel and other expenses | 10,202 | 6,957 | 8,640 |
| **Total Research and Development** | $ 25,312 | $ 29,191 | $ 24,663 |

Company is eligible to receive additional regulatory and commercial milestone payments of $2.0 million and is also entitled to receive a 30% royalty on net sales in Turkey and Northern Cyprus. The EIP License Agreement is subject to the provisions of ASC 606 and as of December 31, 2021, none of these amounts have been received by the Company. No initial transaction price was estimated by management as of December 31, 2021, as the upfront payment is subject to a refund if certain regulatory approvals in the US are not obtained. The Company also concluded that its promises under the EIP License Agreement represented two distinct performance obligations, the first of which is a bundled performance obligation related to the delivery of the license and associated know-how. The second performance obligation relates to the delivery of manufactured product. Additional variable consideration, determined to be allocated entirely to the bundled license performance obligation, to be paid to the Company based upon future regulatory milestones will be recognized as achievement of those milestones. In addition, variable consideration related to any future delivery of product will be recognized in future periods as the product is delivered. As of December 31, 2021, none of these additional amounts were reasonably certain to be achieved due to the nature and timing of the underlying activities.

## 18. RELATED-PARTY TRANSACTIONS

The Company leases its facility in Winnipeg, Manitoba from an affiliate of Leslie L. Dan, a director of the Company until his retirement in July 2019. For each of the years ended December 31, 2021, 2020 and 2019, the Company paid $0.3 million of rent, which includes the related operating expenses.

The Company pays fees under an intellectual property license agreement to Protoden Technologies Inc. ("Protoden"), a company owned by Clairmark, an affiliate of Mr. Dan. Pursuant to the agreement, the Company has an exclusive, perpetual, irrevocable and non-royalty bearing license, with the right to sublicense, to certain patents and technology to make, use and sell products that utilize such patents and technology. The annual fee is $0.1 million. Upon expiration of the term on December 31, 2024, the licenses granted to the Company will require no further payments to Protoden. For each of the years ended December 31, 2021, 2020 and 2019, the Company paid $0.1 million under this license agreement.

Due to his retirement in July 2019, Mr. Dan was not deemed a related party during the twelve-month period ended December 31, 2020 and 2021; as such, only payments made through the nine month period ended September 30, 2019 are considered payments to a related party.

## 19. RESTRUCTURING AND RELATED ACTIVITIES

On August 30, 2021, the Company approved a restructuring plan to reduce operating expenses and better align its workforce with the needs of its business following receipt of the CRL from the FDA regarding the BLA for Vicineum for the treatment of BCG-unresponsive NMIBC (the "Restructuring Plan").

The Restructuring Plan included a reduction in the Company's workforce by 18 positions (or approximately 35% of the Company's workforce as of the date of the Restructuring Plan), as well as additional cost-saving initiatives intended to preserve capital while the Company continues development of Vicineum. The following is a summary of accrued restructuring costs related to the Restructuring Plan:

|  | December 31, 2021 |
|---|---|
|  | (in thousands) |
| Severance and benefits costs | $ 2,792 |
| Contract termination costs | 2,736 |
| Other restructuring costs | — |
| Total restructuring costs | $ 5,528 |
| Cash payments | (4,031) |
| Balance at December 31, 2021 | $ 1,497 |

Restructuring costs related to the Restructuring Plan were recorded in operating expenses in the Company's Consolidated Statements of Operations and Comprehensive Loss in the year ended December 31, 2021. The Company expects that substantially all of the accrued restructuring costs as of December 31, 2021 will be paid in cash by the end of September 2022.

## 20. SUBSEQUENT EVENTS