**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
(212) 918-3000 (p)
(212) 918-3100 (f)

*Attorneys for Sesen Bio, Inc.,*
*Thomas R. Cannell, and Monica Forbes*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SESEN BIO, INC. SECURITIES LITIGATION | No. 21-7025-AKH <br><br> <u>Oral Argument Requested</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS PURSUANT TO THE PRIVATE SECURITIES LITIGATION**
<u>**REFORM ACT OF 1995, RULE 9(b), AND RULE 12(b)(6)**</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... iv

PRELIMINARY STATEMENT.......................................................................................................1

ARGUMENT .....................................................................................................................................4

I.   THE OPPOSITION DOES NOT REMEDY THE AMENDED COMPLAINT'S LACK OF
     PARTICULARITY. ............................................................................................................5

     A.   Plaintiffs Fail to Justify Their Reliance on Long-Rejected Puzzle Pleading
          Tactics. ......................................................................................................................5

     B.   Nothing in the Amended Complaint or the Opposition Explains How or
          Why the Alleged Issues with the VISTA Trial Rendered Any of
          Defendants' Statements False or Misleading..............................................................6

     C.   The *STAT* Article Is Not Sufficiently Particular to Support a Claim for
          Securities Fraud. ......................................................................................................8

II.  PLAINTIFFS' OPPOSITION DOES NOT MEANINGFULLY ADDRESS DEFENDANTS'
     ARGUMENTS THAT THE AMENDED COMPLAINT FAILS TO IDENTIFY A FALSE
     STATEMENT. ..................................................................................................................10

     A.   Plaintiffs Ignore That Sesen Bio Disclosed the Allegedly Omitted Liver
          Toxicity Issues and Receipt of the EMA's Day 120 Questions............................10

     B.   Plaintiffs Cannot Recast Defendants' Forward-Looking Statements
          Regarding Future FDA Action as Statements of Historical Fact...........................12

     C.   The Opposition Improperly Attempts to Rewrite Defendants' Opinion
          Statements as Statements of Historical Fact. .........................................................14

     D.   Plaintiffs Ignore That Defendants' Risk Factors Were Expressly Tied to
          Potential Regulatory Approval. ..............................................................................16

     E.   The Opposition Fails to Show That Any of Defendants' Puffery
          Statements Were Actually Material. .......................................................................18

III. PLAINTIFFS' SELECTIVE DISCLOSURE THEORY RESTS ON A FUNDAMENTALLY
     FLAWED INTERPRETATION OF THE FEDERAL SECURITIES LAWS. .......................................19

     A.   An Issuer Is Not Required to Disclose Facts Solely Because an Investor
          Would Want to Know Them.....................................................................................19

B.      There Is No Duty to Disclose the Entire History of a Clinical Trial Every Time an Issuer Discusses Some Aspect of the Regulatory Approval Process. ..................................................................................................20

C.      The Amended Complaint and Plaintiffs' Opposition Confirm That Defendants Did Not Engage in Selective Disclosure. .........................................21

IV.     UNDER SETTLED SECOND CIRCUIT LAW, SESEN BIO WAS NOT REQUIRED TO DISCLOSE THE EMA'S DAY 120 QUESTIONS......................................................................22

V.     THE OPPOSITION FAILS TO IDENTIFY ANY WELL-PLEADED FACTUAL ALLEGATIONS GIVING RISE TO A STRONG INFERENCE OF SCIENTER............................................................24

A.      Plaintiffs' Allegations Do Not Show Conscious or Reckless Misbehavior...........24

B.      Defendants Did Not Engage in Selective Disclosure. .........................................26

C.      Plaintiffs' Argument That Defendants Were "Knowledgeable" Is Just an Application of the Core Operations Doctrine and Should Be Rejected.................27

D.      A Desire to Raise Capital Does Not Create a Strong Inference of Scienter, and the More Cogent and Compelling Inference Is Non-Fraudulent. ...................28

CONCLUSION.............................................................................................................................29

## TABLE OF AUTHORITIES

**Cases**

*Abramson v. Newlink Genetics Corp.*,
965 F.3d 165 (2d Cir. 2020)..................................................................................14

*In re Aratana Therapeutics Inc. Sec. Litig.*,
315 F. Supp. 3d 737 (S.D.N.Y. 2018).................................................................28

*Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*,
28 F.4th 343 (2d Cir. 2022) ...................................................................................4

*Basic Inc. v Levinson*,
485 U.S. 224 (1988)...............................................................................................19

*City of Livonia Emps. Ret. Sys. v. Wyeth*,
No. 07 Civ. 10329(RJS), 2010 WL 3910265 (S.D.N.Y. Sept. 29, 2010).........................13

*Cohen v. Kitov Pharms. Holdings, Ltd.*,
17 Civ. 0917 (LGS), 2018 WL 1406619 (S.D.N.Y. Mar. 20, 2018) ........................ *passim*

*In re Coty Inc. Sec. Litig.*,
No. 14-cv-919 (RJS), 2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016)................................17

*In re Delcath Sys., Inc. Sec. Litig.*,
36 F. Supp. 3d 320 (S.D.N.Y. 2014).....................................................................27

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)...................................................................................24

*In re EDAP TMS S.A. Sec. Litig.*,
No. 14 CIV. 6069 LGS, 2015 WL 5326166 (S.D.N.Y. Sept. 14, 2015) ..........................18

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
986 F. Supp. 2d 487 (S.D.N.Y. 2013)...................................................................17

*Gillis v. QRX Pharma Ltd.*,
197 F. Supp. 3d 557 (S.D.N.Y. 2016)..............................................................20, 28

*Gregory v. ProNAi Therapeutics Inc.*,
297 F. Supp. 3d 372 (S.D.N.Y.), *aff'd*, 757 F. App'x 35 (2d Cir. 2018).....................27-28

*In re Intercept Pharms., Inc. Sec. Litig.*,
No. 14-cv-1123, 2015 WL 915271 (S.D.N.Y. Mar. 4, 2015)....................................24, 25

*Kleinman v. Elan Corp., plc*,
706 F.3d 145 (2d Cir. 2013)...................................................................................18

*In re Lihua Int'l, Inc. Sec. Litig.*,
    No. 14-CV-5037 (RA), 2016 WL 1312104 (S.D.N.Y. Mar. 31, 2016)..............................9

*Leung v. bluebird bio, Inc.*,
    No. 21-CV-10335-DJC, 2022 WL 1192801 (D. Mass. Apr. 21, 2022)........................4, 12

*Long Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020)...............................................................................24

*Lopez v. Ctpartners Exec. Search Inc.*,
    173 F. Supp. 3d 12 (S.D.N.Y. 2016).................................................................................9

*In re Lululemon Sec. Litig.*,
    14 F. Supp. 3d 553 (S.D.N.Y. 2014)................................................................................19

*Matrixx Initiatives v. Siracusano*,
    563 U.S. 27 (2011)...........................................................................................................19

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)..............................................................................................8

*Okla. Law Enf't Ret. Sys. v. Papa John's Int'l, Inc.*,
    517 F. Supp. 3d 196 (S.D.N.Y. 2021)..............................................................................22

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
    575 U.S. 175 (2015).........................................................................................................14

*In re Optionable Sec. Litig.*,
    577 F. Supp. 2d 681 (S.D.N.Y. 2008)...............................................................................9

*In re Pareteum Sec. Litig.*,
    19 Civ. 9767 (AKH), 2020 WL 3448526 (S.D.N.Y. June 23, 2020) ................................5

*In re Regeneron Pharmaceutical Inc. Sec. Litig.*,
    No. 03 Civ.3111 RWS, 2005 WL 225288 (S.D.N.Y. Feb. 1, 2005) ..........................13, 18

*Rice v. Intercept Pharms., Inc.*,
    No. 21-cv-0036 (LJL), 2022 WL 837114 (S.D.N.Y. Mar. 21, 2022)...........................4, 18

*Rombach v. Chang,*
    355 F.3d 164 (2d Cir. 2004).............................................................................................17

*In re Sanofi Sec. Litig.*,
    87 F. Supp. 3d 510 (S.D.N.Y. 2015),
    *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016)..................................14, 22

*Schaeffer v. Nabriva Therapeutics plc*,
    No. 19-cv-4183, 2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020) .......................................25

*Shanawaz v. Intellipharmaceutics Int'l Inc.*,
   348 F. Supp. 3d 313 (S.D.N.Y. 2018)..................................................................................27

*In re Silvercorp Metals, Inc. Sec. Litig.*,
   26 F. Supp. 3d 266 (S.D.N.Y. 2014)....................................................................................24

*State Univs. Ret. Sys. of Illinois v. Astrazeneca PLC*,
   334 F. App'x 404 (2d Cir. 2009) .........................................................................................25

*Tongue v. Sanofi,*
   816 F.3d 199 (2d Cir. 2016)..........................................................................................15, 22

*In re Vivendi Universal, S.A.*,
   381 F. Supp. 2d 158 (S.D.N.Y. 2003)..............................................................................9, 13

*In re XL Fleet Corp. Sec. Litig.*,
   21 Civ. 2002 (LGS), 2022 WL 493629 (S.D.N.Y. Feb. 17, 2022)................................. 9-10

**Statute**

15 U.S.C. § 78u-4(b)(1) .........................................................................................................6

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6).............................................................................................................4

**Other Authorities**

EUROPEAN MEDICINES AGENCY, "Oportuzumab Monatox DLRC Pharma Services:
Withdrawal of the Marketing Authorisation Application,"
https://www.ema.europa.eu/en/medicines/human/withdrawn-applications/oportuzumab-
monatox-dlrc-pharma-services ................................................................................................23

FOOD AND DRUG ADMIN., "Guidance for Industry:  Drug-induced Liver Injury
Premarketing Clinical Evaluation" (July 2009),
https://www.fda.gov/media/116737/download..........................................................................11

## PRELIMINARY STATEMENT

Defendants' moving brief and Plaintiffs' opposition are the proverbial "ships passing in the night." Defendants demonstrated that the Amended Complaint failed to show that any of Sesen Bio's actual statements to investors during the Class Period were false or misleading (whether directly or by omission). Plaintiffs' opposition ignores much of Defendants' moving brief, rehashes the deficient allegations in the Amended Complaint, and attempts to make this a case about whether the VISTA Trial was conducted in accordance with some undefined and irrelevant notion of "best clinical trial practices." The Court should reject Plaintiffs' evasive opposition and dismiss the Amended Complaint for several reasons.

*First*, Plaintiffs' opposition fails to identify the particularized facts mandated by the Reform Act and Rule 9(b). For example, in response to Defendants' showing that the Amended Complaint relied on improper "puzzle pleading" tactics, Plaintiffs respond only that (i) their pleading is shorter than other defective pleadings, and (ii) the puzzle pleading doctrine does not apply in omission cases. Both arguments fail for the same reason – in every securities fraud case, the Reform Act and Rule 9(b) require the plaintiff to identify each statement alleged to be false or misleading and to specify the reasons that each statement was false when made. The Amended Complaint falls well short of this core statutory requirement.

Similarly, Plaintiffs' opposition fails to specify any material facts allegedly omitted from Sesen Bio's Class Period statements. Plaintiffs do not describe a single alleged protocol deviation; do not explain how or why any alleged protocol deviations adversely impacted the VISTA Trial's safety and efficacy data; and do not argue that any alleged protocol deviations caused the FDA to issue the CRL. The conclusory allegations regarding investigator misconduct suffer from the same failing – Plaintiffs do not state what the alleged misconduct actually was or

whether it adversely impacted the VISTA Trial data or the FDA approval process.  Plaintiffs attempt to save the Amended Complaint by pointing to documents and "individuals with knowledge" vaguely referenced in the *STAT* article.  But neither the opposition nor the Amended Complaint identifies what the documents were, what they said, or who sent or received them; nor does either identify who the individuals were, whether they were employees of Sesen Bio and, if so, what their titles were, whether they worked at Sesen Bio during the Class Period, or whether they interacted with senior management.  The Amended Complaint must be dismissed because it does not provide the particularity required by the Reform Act and Rule 9(b).

*Second*, Plaintiffs fail to meaningfully address Defendants' arguments that the Amended Complaint does not identify any actionable false or misleading statements.  Rather than take these argument head on, Plaintiffs merely repeat the allegation that Sesen Bio failed to disclose safety issues in connection with the Vicineum trials while ignoring that prior to and during the Class Period, the Company actually disclosed multiple serious adverse events ("SAEs"), including liver injuries and patient deaths.  Plaintiffs similarly respond to Defendants' safe harbor and *Omnicare* arguments by arguing that the Amended Complaint challenges "statements of historical fact" when, on its face, that pleading attacks Sesen Bio's forward-looking statements concerning the FDA approval process and its opinions concerning the VISTA Trial data and Vicineum's prospects for regulatory approval.  And Plaintiffs respond to Defendants' risk factors argument by ignoring that Sesen Bio's risk factors (1) expressly address the possibility that protocol deviations and investigator conduct issues might adversely impact the FDA's decision-making process, and (2) do not warn of stand-alone risks that deviations or misconduct might occur during the clinical trial process.  In sum, Plaintiffs ignore, rewrite, or

2

mischaracterize Defendants' statements to investors, but fail to plead facts showing that any of Defendants' **actual** statements were false when made.

*Third*, Plaintiffs proffer a selective disclosure theory that is grounded on a fundamentally flawed interpretation of the federal securities laws. Plaintiffs argue that investors would have wanted to know about the alleged protocol deviations, investigator misconduct, and liver safety issues and, for that reason alone, Defendants had a duty to disclose those matters whenever Sesen Bio made any statement about any aspect of the VISTA Trial or Vicineum. This is not the law. An issuer does not have a duty to disclose a fact solely because it is material or because investors would like to know that fact. An issuer must disclose a fact only when required by statute or SEC regulation or, if an issuer chooses to speak on a topic, disclosure of that fact is necessary to prevent the issuer's statement from being misleading. Plaintiffs attempt to rely on the latter option – the duty to speak completely. But that reliance is unfounded because Defendants never made any statements about the number, nature, or extent of any protocol deviations in the VISTA Trial; the existence or non-existence of any investigator misconduct; or whether the VISTA Trial was "typical" or conducted without any errors or issues.

*Finally*, Plaintiffs argue that "[w]hether Defendants believed the [FDA] application [for Vicineum] might be approved is irrelevant." Opp. at 15 n.15. That is wrong as a matter of law. This is a securities fraud case, which means that Defendants' scienter is not only relevant, it is an essential element of Plaintiffs' pleading. A securities fraud complaint can survive dismissal only if a reasonable person would deem the inference of scienter at least as cogent and compelling as any plausible opposing inference. This is far from the case here. Defendants made statements indicating that they believed the VISTA Trial data were sufficient to support a BLA submission and that Sesen Bio expected to receive an FDA decision on the August 18, 2021 PDUFA date.

3

Defendants hired a Vicineum sales force and doubled the number of Company employees in preparation for the product launch.  No insider sold a single share of stock.  Not a single current or former Company employee showed up in the Amended Complaint as a "confidential witness."  The only cogent and compelling inference arising from the facts alleged is that Defendants genuinely believed their statements about the VISTA Trial and the process for potential Vicineum approval were true and correct when made.

For these reasons, this Court should dismiss the Amended Complaint with prejudice.

## ARGUMENT

Plaintiffs begin their opposition with a weak procedural argument that Defendants provided the Court with materials outside the scope of a proper Rule 12(b)(6) motion.  Opp. at 14-17.  The Court can summarily reject this argument.  The Amended Complaint alleges that Defendants violated the federal securities laws by selectively disclosing facts relating to Sesen Bio's attempt to obtain FDA approval for Vicineum.  *Id.* at 5-10, 17-25.  In response, Defendants submitted Sesen Bio's SEC filings (and only the SEC filings) from the relevant period, along with legal authorities available in the Code of Federal Regulations and on the FDA's public website.  As the Second Circuit and other district courts have repeatedly held, it is entirely appropriate and indeed necessary for the Court to consider such materials in adjudicating Plaintiffs' selective disclosure claim.  *See, e.g.*, *Arkansas Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343 (2d Cir. 2022) (affirming judicial notice of FDA guidance materials); *Rice v. Intercept Pharms., Inc.*, No. 21-cv-0036, 2022 WL 837114, at *5-6 (S.D.N.Y. Mar. 21, 2022) (noting that Second Circuit courts can and should consider SEC filings on a motion to dismiss regardless of whether the filings are referenced in the complaint); *Leung v. bluebird bio, Inc.*, No. 21-CV-10335-DJC, 2022 WL 1192801 (D. Mass. Apr. 21, 2022) (considering SEC

4

filings and FDA documents on motion to dismiss); *see also* Mov. Br. at 6, n.4.  As shown below, Plaintiffs' substantive arguments fare no better.

**I.      THE OPPOSITION DOES NOT REMEDY THE AMENDED COMPLAINT'S LACK OF PARTICULARITY.**

      **A.      Plaintiffs Fail to Justify Their Reliance on Long-Rejected Puzzle Pleading Tactics.**

Defendants' moving papers demonstrated that the Amended Complaint relied on improper "puzzle pleading" tactics that Second Circuit courts consistently reject as insufficient to satisfy the Reform Act and Rule 9(b).  Mov. Br. at 4, 22-23.  In opposition, Plaintiffs argue that the puzzle pleading doctrine does not apply because (1) the Amended Complaint is shorter than in another puzzle-pleading case, and (2) puzzle pleading is permitted in an omissions case.  Opp. at 44.  Neither argument has any merit.

First, the length of the pleading is not the issue, the lack of specificity is.  The Reform Act and Rule 9(b) require Plaintiffs to identify each statement alleged to be false or misleading and the reasons why each statement was false or misleading at the time it was made.  *See In re Pareteum Sec. Litig.*, 19 Civ. 9767 (AKH), 2020 WL 3448526 (S.D.N.Y. June 23, 2020).  Puzzle pleading is improper because it shifts the burden – Defendants (and the Court) are left to guess why or how one or more statements contained somewhere within the block quotes cited in the Amended Complaint connect to one or more of the "reasons" set forth in the repeated "reasons" paragraph.  *Id.*

Second, Plaintiffs do not identify any case law supporting their assertion that the puzzle pleading doctrine is inapplicable in omissions cases.  Opp. at 44.  Nor could they, because the particularity requirements of the Reform Act and Rule 9(b) apply in <u>all</u> securities fraud cases.

5

Mov. Br. at 22-23.  To provide just one illustration of the problem, the Amended Complaint

attacks the following statement:

> After the Company submitted its BLA to the FDA in December
> 2020, Sesen Bio was invited to participate in an Application
> Orientation Meeting, which is available in certain Center for Drug
> Evaluation and Research (CDER) review divisions, at the review
> team's discretion, for priority applications where early action is
> expected and/or desired.

Compl., ¶¶ 119, 121.  The Amended Complaint makes no effort to explain how a factual

statement regarding an invitation to a meeting with the FDA was rendered misleading by

omitting any of the *STAT* article allegations or the Day 120 Questions from the EMA.  Plaintiffs

make no attempt to draw a connection because there is none, and they improperly rely on puzzle

pleading in the hope the Court will not notice.  Because the same issue infects the entire

Amended Complaint, it should be dismissed with prejudice for failing to meet the stringent

requirements of Rule 9(b) and the Reform Act.

> **B.     Nothing in the Amended Complaint or the Opposition Explains How or Why
> the Alleged Issues with the VISTA Trial Rendered Any of Defendants'
> Statements False or Misleading.**

Plaintiffs' opposition seeks to turn this case into a postmortem of the conduct of the

VISTA Trial rather than a disclosure question under federal law.  *See, e.g.*, Opp. at 19-20.  As

Defendants explained in their moving brief, to plead a § 10(b) claim based on an omissions

theory, "the complaint shall specify each statement alleged to have been misleading [and] the

reason or reasons why the statement is misleading."  *See* 15 U.S.C. § 78u-4(b)(1).  Here,

Plaintiffs allege that Defendants' statements regarding the FDA's or the EMA's approval

processes for Vicineum failed to disclose protocol deviations and investigator misconduct, but

Plaintiffs fail to plead facts showing how those alleged omissions rendered the challenged

statements false or misleading.  Opp. at 19-20.

6

Plaintiffs provide no particularity about the purported protocol violations – not what they were, not whether they affected the safety or efficacy data, and not whether they had any impact on the FDA's decision to issue the CRL.  The only allegation is that "the VISTA clinical trial for Vicineum had more than 2,000 violations of trial protocol, including 215 classified as 'major,'" a sentence taken verbatim from the *STAT* article and repeated without change (or supporting detail) throughout the Amended Complaint.  Compl., ¶¶ 6, 52, 101, 112, 115, 121, 130, 135, 156, 160, 177, 185, 191, 196, 208, 213, 221, 231.  This "description" of the protocol violations falls far short of the particularity demanded by Rule 9(b) and the Reform Act.

Similarly, Plaintiffs provide no particularity about the purported investigator misconduct – not the nature of the conduct, not whether it impacted the safety data or the efficacy data, and not whether it affected the FDA's decision to issue the CRL.  As with the protocol deviations, the Amended Complaint relies exclusively on the conclusory *STAT* article.  *See* Compl., ¶¶ 6, 101, 112, 115, 121, 130, 135, 156, 160, 177, 185, 191, 196, 208, 213, 221, 231.  Significantly, however, Plaintiffs admit that the alleged investigator misconduct was unrelated to Vicineum or Sesen Bio:

> The study investigator's medical license was temporarily suspended on May 29, 2017 due to inaccurate recordkeeping, **which was unassociated with Sesen Bio and the patients in the VISTA trial**.

Compl., ¶ 55 (emphasis added).  Plaintiffs make no attempt to explain how "inaccurate recordkeeping" unrelated to the VISTA Trial renders Sesen Bio's alleged statements about the VISTA Trial or Vicineum false or misleading.

Finally, Plaintiffs do not provide any particularity about the "documents" referenced in the *STAT* article or the three anonymous sources.  The Amended Complaint alleges that the *STAT* article's author reviewed "hundreds of pages of internal documents" and spoke with "three

people familiar with the matter." *See, e.g.*, Compl., ¶ 11.  But nowhere does the Amended

Complaint identify the documents (or even what kind of documents they were), their contents, or

their author.  Equally egregious, the Amended Complaint does nothing to explain who the "three

individuals" were, their purported roles at Sesen Bio, what they actually said, or whether they

had any basis for any statements allegedly made to a reporter (not Plaintiffs).  This pervasive

lack of specificity warrants dismissal of the Amended Complaint.

In the end, Plaintiffs' theory is fatally undermined by the FDA's recent communication

with Sesen Bio.  At a Type A meeting on December 8, 2021, the FDA encouraged Sesen Bio to

include the VISTA Trial data with its amended BLA.  Regan Decl., Ex. 33 (12/9/21 8-K).  This

statement by the FDA directly contradicts Plaintiffs' repeated assertions that the VISTA Trial's

"misconduct-tainted" data could not support FDA approval.  As explained in more detail in

Defendants' moving papers, the fact that the FDA encouraged Sesen Bio to include the VISTA

Trial data with a new BLA also strongly undercuts Plaintiffs' scienter theory that Sesen Bio

knew or should have known that the Vicineum BLA would never succeed.  Mov. Br. at 19.

## C.    The *STAT* Article Is Not Sufficiently Particular to Support a Claim for Securities Fraud.

In their moving papers, Defendants showed that the *STAT* article cannot form the basis of

a securities fraud claim because it lacks sufficient indicia of reliability.  Mov. Br. at 39-41.  In

opposition, Plaintiffs argue that the *Novak* standard does not apply to news sources, that "courts

routinely credit allegations derived from similar articles," and that the confidential sources in the

*STAT* article "need not be described with particularity" because "they are corroborated by

allegations that 'provide an adequate basis for believing that defendants' statements were false.'"

Opp. at 20-21 (citing *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000)).  Plaintiffs are wrong

on all counts.

First, in citing to *In re Lihua International, Inc. Securities Litigation*, Plaintiffs cherry-pick a partial quote: "nothing in *Novak* suggests that its standard applies to confidential sources quoted in publicly available news articles." No. 14-CV-5037, 2016 WL 1312104, at *12 n.8 (S.D.N.Y. Mar. 31, 2016). However, the remainder of the quote notes that "[a]t least one judge in this district has nonetheless concluded that 'articles should be credited only to the extent that other factual allegations would be – if they are sufficiently particular and detailed to indicate their reliability.'" *Id.* (citing *In re Optionable Sec. Litig.*, 577 F. Supp. 2d 681, 690 (S.D.N.Y. 2008)). The court's analysis in *Lihua* actually supports Defendants' position because the court found the news article "sufficiently specific to support Plaintiffs' claim" based on the very indicia of reliability that are lacking here: the individual quoted in the article was a long-time employee, was identified as having a position that would allow him access to the information he provided, and actually provided specific information about the pertinent issues. Here, by contrast, neither the Amended Complaint nor the *STAT* article provides any detail whatsoever about the "hundreds of pages of internal documents" or "three people familiar with the matter" mentioned in the *STAT* article.

Second, all of the cases on which Plaintiffs rely to show that "courts routinely credit allegations derived from similar articles" are distinguishable. *See Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 31 (S.D.N.Y. 2016) (noting that a plaintiff could rely on newspaper articles, but those articles must "indicate particularized facts"); *In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 168 (S.D.N.Y. 2003) (crediting article because, among other things, it contained quotes from documents and statements from two directors about board meetings they attended).

9

Finally, Plaintiffs cannot rely on *In re XL Fleet Corp. Securities Litigation* to argue that Sesen Bio "effectively corroborated the STAT article by commenting for the article without denying its key claims." Opp. at 21 (citing 21 Civ. 2002 (LGS), 2022 WL 493629 (S.D.N.Y. Feb. 17, 2022)). In *In re XL Fleet*, the company <u>admitted</u> certain allegations in a short seller report. *Id.* Sesen Bio did not make any similar admissions, and Plaintiffs' suggestion that a decision not to comment on portions of a news article is the same as "effectively corroborating" all of the contents of the *STAT* article is disingenuous.

II.   **PLAINTIFFS' OPPOSITION DOES NOT MEANINGFULLY ADDRESS DEFENDANTS' ARGUMENTS THAT THE AMENDED COMPLAINT FAILS TO IDENTIFY A FALSE STATEMENT.**

A.   **Plaintiffs Ignore That Sesen Bio Disclosed the Allegedly Omitted Liver Toxicity Issues and Receipt of the EMA's Day 120 Questions.**

One of the central allegations in the Amended Complaint is that Sesen Bio failed to disclose safety issues, in particular that a small number of patients in the VISTA Trial experienced liver toxicity issues and other serious adverse effects during the VISTA Trial. *See* AC ¶¶ 2, 42-51, 70-78, 101, 112, 115, 121, 130, 135, 156, 157, 160, 177, 185, 191, 196, 208, 213, 221, 231. In their moving brief, Defendants established that this allegation was false, as demonstrated by some of the very documents Plaintiffs challenge. *See* Mov. Br. at 9 (noting that Sesen Bio's 2020 10-K disclosed that, among other adverse events, there were four treatment-related SAEs reported in three patients in the VISTA Trial, including one Grade 4 case of cholestatic hepatitis (liver injury) and one Grade 5 case (meaning a patient death) from kidney failure).[1] Sesen Bio also disclosed adverse events, including liver-related issues, related to the head-and-neck trial for Vicineum.

---

[1]   The same disclosure appears in Sesen Bio's SEC filings both prior to and after the Class Period. *See* Regan Decl., Ex. 23 (2019 10-K) at 3, 15, 46, 82; Reply Regan Decl., Ex. 37 (2021 10-K) at 12, 47, 72.

> The serious adverse events that were reported in the clinical trials of Vicinium for the treatment of [head and neck cancer] and were considered to be possibly, probably or definitely related to treatment consisted of . . . liver function abnormalities . . . .  Seven patients died during the clinical trials of Vicinium for the treatment of [head and neck cancer], but none of the deaths were deemed to be related to Vicinium. Eleven patients discontinued treatment due to liver function test abnormalities; however, the serum levels were transient and they eventually returned to baseline without any evidence of permanent liver damage.

*See* Reply Declaration of William M. Regan, dated May 6, 2022 ("Reply Regan Decl."), Ex. 36 (2018 10-K) at 24.  Plaintiffs ignore this disclosure and instead repeat the demonstrably false allegation that Sesen Bio failed to disclose liver toxicity and other serious patient injuries.  Opp. at 1, 8-10, 22-23, 29, 33, 35.  The Court should dismiss the Amended Complaint to the extent it alleges a failure to disclose liver injuries and other SAEs for the simple reason that such injuries were in fact disclosed in Sesen Bio's SEC filings.[2]

Similarly, Defendants demonstrated that Sesen Bio disclosed that the Company received the Day 80 and Day 120 questions from the EMA.  *See* Mov. Br. at 17 ("'The Company has received the Day 80 and Day 120 questions from the [EMA] and is responding to inquiries and providing supporting information as part of the official review process.'" (citing Compl., ¶ 200)).  Plaintiffs cannot state a claim in an omissions case by ignoring Defendants' actual disclosures.

---

[2]  Sesen Bio's SEC filings disclosed that certain patients suffered liver injuries during the VISTA Trial, but Plaintiffs specifically complain that there were "Hy's Law" cases that Sesen Bio did not disclose.  Opp. at 8-10, 21-23.  According to FDA guidance, Hy's Law is a multi-factor test to determine whether a particular drug is likely causing liver injury.  A case is deemed to be a Hy's Law case where (a) a patient being treated with a drug is showing elevated liver enzymes and (b) all other causes for the elevated liver enzymes (*e.g.*, other medications, alcohol, etc.) can be ruled out.  *See* FOOD AND DRUG ADMIN., "Guidance for Industry: Drug-induced Liver Injury Premarketing Clinical Evaluation" 5 (July 2009), https://www.fda.gov/media/116737/download.  The Amended Complaint does not provide any particularized allegations to support the proposition that the liver injuries during the Vicineum trials were "Hy's Law" cases.  Moreover, even if they were, Sesen Bio's decision not to use the exact term "Hy's Law" would not change the fact that all SAEs (including liver-related SAEs and fatal SAEs) were disclosed.  Finally, Plaintiffs conveniently ignore key text from their own exhibit on this issue.  *See* Compl., Ex. 2 at 118 ("In total three patients died across all studies. The applicant has presented brief case narratives.  None of the cases seem related to [Vicineum].").

11

**B.      Plaintiffs Cannot Recast Defendants' Forward-Looking Statements Regarding Future FDA Action as Statements of Historical Fact.**

Defendants' moving papers demonstrated that many of the allegedly false statements are protected by the Reform Act's safe harbor for forward-looking statements.  Mov. Br. at 23-27. In opposition, Plaintiffs make a blanket statement that the safe harbor is not applicable because the alleged false statements are actually statements of historical facts.  Opp. at 26.  Plaintiffs make this argument without any actual citation to the Amended Complaint or identification of a specific statement that Defendants made.  Plaintiffs' lack of specificity belies the truth:  a look at Defendants' statements shows that the safe harbor is, in fact, applicable.[3]

For example, the Amended Complaint alleges that the following statements were false and misleading, but each uses quintessentially forward-looking language:

- "Our strong non-clinical and clinical data, in addition to our positive comparability data, give us confidence in the regulatory **path forward**," Compl., ¶ 100 (emphasis added);

- "The success of these meetings [with the EMA] . . . are significant milestones toward our regulatory **path forward** in Europe and supported our MAA submission . . . with potential approval **anticipated** in early 2022," *id.*, ¶ 142 (emphasis added); and

- "[W]e believe we have a clear regulatory **path forward** with **potential approval** in the U.S. in August of this year and in Europe in early 2022." *Id.*, ¶ 153 (emphasis added).

*See bluebird bio, Inc.*, 2022 WL 1192801, at *12 (finding statements regarding "potential FDA approval," such as "planning to seek an accelerated approval" and "expect[ing] to submit" a BLA, to be forward-looking statements).

---

[3]      Plaintiffs also argue that the safe harbor does not apply to omissions cases.  Opp. at 27-28.  The text of the safe harbor, however, provides that it applies "in any private action arising under this chapter that is based on an untrue statement of a material fact or omission of a material fact necessary to make the statement not misleading."  15 U.S.C. § 78u(c)(1).  In any event, Plaintiffs fail to identify any material omission or to plead how any alleged omission renders an affirmative statement false or misleading.  *See* Point I, *supra*, at 5-10.

Plaintiffs also are wrong that "[b]ecause clinical trial results relate to historical facts, statements 'pertaining to the purported actual results of the [clinical trial], . . . by definition are not forward-looking.'"  Opp. at 26 (quoting *Cohen v. Kitov Pharms. Holdings, Ltd.*, 17 Civ. 0917 (LGS), 2018 WL 1406619, at *6 (S.D.N.Y. Mar. 20, 2018)).  Plaintiffs base this argument on *Kitov*, but that case addressed statements about the <u>actual results</u> of the clinical trial.  *Id.*  For example, the *Kitov* Court found that a statement that the trial results "successfully met the primary efficacy endpoint of the trial protocol" was not forward looking.  Here, none of the statements Defendants identify as forward-looking are about "the purported actual results" of the VISTA Trial, but instead about the future prospects of Vicineum.[4]

Plaintiffs also are incorrect that Defendants' forward-looking statements are not accompanied by sufficient cautionary language.  As a preliminary matter, Plaintiffs improperly attempt to narrow the safe harbor.  Plaintiffs' own cited cases admit that, because the safe harbor "'is written in the disjunctive, a forward-looking statement is protected under the safe harbor if any of the three prongs applies.'"  *Kitov*, 2018 WL 1406619, at *4 (quoting *Vivendi*, 381 F. Supp. 2d at 245-46).  The three prongs are:  "(1) the forward-looking statement is identified and accompanied by meaningful cautionary language, (2) the forward-looking statement is immaterial, *or* (3) the plaintiff fails to prove that the forward-looking statement was made with

---

[4]      Plaintiffs' citations to *In re Regeneron Pharmaceuticals Inc. Securities Litigation*, No. 03 Civ.3111 RWS, 2005 WL 225288 (S.D.N.Y. Feb. 1, 2005), and *City of Livonia Employees' Retirement System v. Wyeth*, No. 07 Civ. 10329(RJS), 2010 WL 3910265 (S.D.N.Y. Sept. 29, 2010), are equally misplaced.  In *In re Regeneron*, the court addressed statements relaying the efficacy and safety of the company's drug, such as statements that the clinical trial "demonstrated that this dose causes medically significant weight loss."  2005 WL 225288, at *8, *13.  Similarly, in *Wyeth*, the court distinguished between forward-looking statements, such as "we think we have a package that could warrant approvability by FDA," and non-forward-looking statements, such as the drug was "[s]imilar to [a competitor] in terms of efficacy, safety, [and] tolerability."  2010 WL 3910265, at *2.  As in *Kitov* – and unlike here – the statements were about the actual, past results of the study, not about the drug's future prospects.

13

actual knowledge that it was false or misleading." *Id.* (quoting *Vivendi*, 838 F.3d at 245-46) (emphasis in original).

Here, although only one is necessary, **all three** prongs apply. As discussed in Defendants' moving papers, Sesen Bio disclosed that the Company might incur costs and delays, or be unable to commercialize and develop Vicineum, "[i]f clinical trials of Vicineum for the treatment of BCG-unresponsive NMIBC fail to demonstrate safety and efficacy to the satisfaction of the FDA or other foreign regulatory authorities." Regan Decl., Ex. 1 (2020 10-K) at 47; *see also* Mov. Br. at 25-26. Such disclosures are sufficiently cautionary under applicable case law. *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 530 (S.D.N.Y. 2015) (language indicating that a regulator may deny or delay approval for reasons such as differing interpretations of clinical data or problems with the structure or conduct of the clinical trial is sufficient cautionary under the Reform Act's safe harbor). In addition, as discussed in further detail below and in Defendants' moving papers, many of Sesen Bio's forward-looking statements are mere puffery, and thus immaterial as a matter of law. Finally, Plaintiffs have failed to plead that any statement was made with the requisite scienter. *See* Mov. Br. at 38-44; *see also* Point V, *infra*, at 23-28.

**C.     The Opposition Improperly Attempts to Rewrite Defendants' Opinion Statements as Statements of Historical Fact.**

In their moving papers, Defendants showed that many of the challenged statements were mere opinions that are inactionable under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 184-88 (2015). Mov. Br. at 27-33. Plaintiffs argue in their opposition that none of Defendants' statements were opinions because (1) they "relate to historical facts;" or (2) the statements "'implied facts that can be proven false.'" Opp. at 29-31

14

(quoting *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 175 (2d Cir. 2020)).  Plaintiffs are incorrect on both points.

First, Plaintiffs' assertion that opinion statements are not protected if they "relate to historical facts" is wrong as a matter of law.  *See* Opp. at 29.  As set forth in Defendants' moving papers, numerous cases have held that "[i]nterpretations of clinical trial data are considered opinions."  *See* Mov. Br. at 28.  This alone demonstrates that Plaintiffs are incorrect because an interpretation of clinical data by definition "relates to historical facts" – *i.e.*, the clinical data itself – and courts agree that a company's view of that data is an opinion.  *Id.*

Further, the plain language of the statements Defendants identified as opinions reference the Company's views of the future, not historical facts.  For example:

- "[T]he Company **believes** the BLA remains on track for an **anticipated** regulatory decision by August 18, 2021, the target PDUFA date," *id.*, ¶ 190 (emphasis added);

- "The Company **believes** it remains **on track** for an FDA decision on its BLA for Vicineum by August 18, 2021," *id.*, ¶ 198 (emphasis added); and

- "The Company also **believes** it remains on track for **potential** approval in Europe and key markets in MENA in 2022."  *Id.* (emphasis added).

Plaintiffs' "relating to historical facts" argument would render *Omnicare* superfluous. The Supreme Court in *Omnicare* was well aware that opinions could involve facts and established a framework to address that issue:  an opinion is protected under *Omnicare* unless (1) it implies the existence of an "embedded" fact that undermines the opinion (*e.g.*, an opinion mentions patented technology when, in fact, the technology is not patented), or (2) the facts concerning how the speaker formed the opinion undermine the opinion (*e.g.*, a statement asserting a belief that conduct is lawful when the speaker did not consult with a lawyer in

15

forming the opinion). *See Omnicare*, 575 U.S. at 184-88. As explained in Defendants' moving papers, neither of those exceptions applies here. Mov. Br. at 31-33.

At its core, Plaintiffs' argument is one of fraud by hindsight: Defendants could not have reasonably believed in 2020 and early 2021 that Vicineum would be approved by the FDA in mid-2021 or the EMA in 2022 because the FDA issued a CRL in August 2021. The fact that an opinion on a future event turned out wrong is not securities fraud. "As the Supreme Court noted, 'a statement of opinion is not misleading just because external facts show the opinion to be incorrect.'" *Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016) (citing *Omnicare*, 575 U.S. at 1328). Here, Sesen Bio received numerous positive signals from the FDA: the grant of Fast Track designation and Priority Review; withdrawal of the requirements for an AdCom and a confirmatory trial; and near-final agreement on labeling, among others. Mov. Br. at 11, 14-16. As a result, Defendants reasonably and genuinely held the opinion that Sesen Bio's BLA submission would support FDA approval of Vicineum. That the FDA shocked Sesen Bio with a CRL does not invalidate *Omnicare*'s protection of Defendants' honestly held and reasonable opinions.

**D.    Plaintiffs Ignore That Defendants' Risk Factors Were Expressly Tied to Potential Regulatory Approval.**

In their moving brief, Defendants demonstrated that the three risk factors challenged in the Amended Complaint were not false and misleading when issued because the risks identified did not materialize until the FDA issued the CRL on August 13, 2021. Mov. Br. at 33-34. Plaintiffs' opposition offers no meaningful response to Defendants' argument, and instead merely reiterates basic legal principles and the text of the Amended Complaint. Opp. at 32-33. Plaintiffs' argument fails because it ignores half of each of Sesen Bio's risk factors. For example, Plaintiffs cite the following risk factor: "[i]f clinical trials of Vicineum . . . fail to

16

demonstrate safety and efficacy to the satisfaction of the FDA or other foreign regulatory authorities . . . we may incur additional costs or experience delays in completing . . . the development and commercialization of Vicineum." Compl., ¶ 147. The risk identified is not that Sesen Bio might fail to demonstrate safety and efficacy to the satisfaction of the FDA – instead, the risk is that Sesen Bio "may incur additional costs or experience delays in completing . . . the development and commercialization of Vicineum." *Id.* Thus, it is impossible for this risk to have materialized prior to the FDA's issuance of the CRL because all other feedback from the FDA or EMA was interim feedback and not the regulators' final positions on the BLA and MAA submissions. The same is true for the other two risk factors Plaintiffs identify:

- For the risk factor "Vicineum for the treatment of BCG-unresponsive NMIBC may cause undesirable side effects, serious adverse events or have other properties that could . . . delay or prevent its regulatory approval," the risk is the delay or prevention of regulatory approval, not the risk of undesirable side effects.

- For the risk factor "[i]f we or any of our CROs fail to comply with applicable GCP [Good Clinical Practices], the clinical data generated in our clinical trials may be deemed unreliable," the risk is a determination that clinical trial data is unreliable, not the risk that Sesen Bio or its CRO may fail to comply with applicable good clinical practices.

"'Courts in this Circuit have held that a company's purported risk disclosures are misleading where the company warns only that a risk may impact its business when that risk has already materialized,'" but the Amended Complaint does not plead facts supporting an "already materialized" theory. *See In re Coty Inc. Sec. Litig.*, No. 14-cv-919 (RJS), 2016 WL 1271065, at *11 (S.D.N.Y. Mar. 29, 2016) (quoting *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 487, 516 (S.D.N.Y. 2013)).

17

> **E.     The Opposition Fails to Show That Any of Defendants' Puffery Statements Were Actually Material.**

Defendants' moving papers cited binding Second Circuit law that "expressions of puffery and corporate optimism do not give rise to securities violations." Mov. Br. at 34 (citing *Rombach v. Chang,* 355 F.3d 164, 174 (2d Cir. 2004)). In opposition, Plaintiffs rehash their argument that the Company's statements are actionable because they were "statements of historical fact." Opp. at 34. That argument is no more successful here than elsewhere because the plain language of the statements shows that characterizations of data as "strong" or meetings as "successful" and "productive" are quintessential examples of puffery. Mov. Br. at 34. The cases Plaintiffs cite are inapposite because those cases involved objectively verifiable statements about trial results. *See Kitov*, 2018 WL 1406619, at *5-6 (finding statements about actual clinical trial results, such as that the trial "met the primary efficacy endpoint," not to be puffery); *Regeneron*, 2005 WL 225288, at *8 (finding statements about actual clinical trial results, such as that the test group "showed statistically significant weight loss compared to placebo" or that "the drug was not associated with any serious adverse events" not to be puffery).

The statements Defendants identify as puffery could not be more different. *See, e.g.*, Moving Br. at 34 (citing Compl., ¶ 99 ("The BLA is supported by the pivotal Phase 3 VISTA trial, which the Company believes demonstrates a **strong** risk-benefit profile") (emphasis added), ¶ 118 ("[O]n January 29, 2021 the Company participated in a **productive** Application Orientation Meeting") (emphasis added), ¶ 128 ("[W]e have been meeting regularly with the FDA over the past 2 years, and it has been a very **productive** process") (emphasis added). Sesen Bio's statements "place[d] a positive spin" on the FDA process, and such "spin" is puffery. *See In re EDAP TMS S.A. Sec. Litig*., No. 14 CIV. 6069(LGS), 2015 WL 5326166, at *10 (S.D.N.Y. Sept. 14, 2015) (statements that steps in FDA process were "milestones," that the process was

18

"on track" or "timely," and that certain developments were "great news" or created a "a much clearer path" were all "positive spin" that constituted inactionable puffery).

### III.   PLAINTIFFS' SELECTIVE DISCLOSURE THEORY RESTS ON A FUNDAMENTALLY FLAWED INTERPRETATION OF THE FEDERAL SECURITIES LAWS.

#### A.   An Issuer Is Not Required to Disclose Facts Solely Because an Investor Would Want to Know Them.

Plaintiffs' opposition proceeds from the fundamentally flawed proposition that a fact is material and must be disclosed solely because an investor (with the benefit of hindsight) would want to know that fact.  It is well-settled, however, that "'10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information.'"  *Intercept Pharms.*, 2022 WL 837114, at *7 (quoting *Kleinman v. Elan Corp., plc*, 706 F.3d 145, 152 (2d Cir. 2013)).  Even where there is a duty to disclose, only **material** misstatements or omissions are actionable.  *Id.* ("'Additionally, to be actionable under Section 10(b) and Rule 10b-5, the alleged misstatement or omission must be material.'" (quoting *In re Lululemon Sec. Litig.*, 14 F. Supp. 3d 553, 572 (S.D.N.Y. 2014))).  A statement is material if "a **reasonable** investor would have viewed the nondisclosed information 'as having **significantly altered** the "total mix" of information made available.'"  *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988)).

Plaintiffs argue otherwise.  Their opposition reflects Plaintiffs' belief that Sesen Bio should disclose all information about Vicineum, regardless of whether it had a duty to do so.  *See, e.g.*, Opp. at 19 (misstating the definition of "material" by demanding disclosure of information that would "impact[] investors' decisions"), 32 (calling for disclosure of "adverse facts"), 34 (arguing for disclosure of "factual, specific, and important" information).  Plaintiffs try to distract from the lack of duty by adopting various theories, such as their "selective

19

disclosure" theory, but, as discussed below, this theory does not withstand scrutiny. *See* Point III.C., *infra*, at 21-23.

### B.      There Is No Duty to Disclose the Entire History of a Clinical Trial Every Time an Issuer Discusses Some Aspect of the Regulatory Approval Process.

Tacitly acknowledging that Sesen Bio had no independent duty to disclose protocol violations or interim exchanges with regulators, Plaintiffs argue in the alternative that when a company speaks on a topic, it must speak completely so as to avoid rendering its statements misleading. Opp. at 17-18. But Plaintiffs stretch this doctrine too far. When interpreting the duty to speak completely, courts focus on the content and subject matter of the challenged statement and analyze whether that statement is complete with respect to the subject it addresses.

For example, in *Gillis v. QRX Pharma Ltd.*, the court addressed allegations that QRX Pharma made false and misleading statements about the likelihood of approval of a drug, MoxDuo, after QRX Pharma received a CRL. 197 F. Supp. 3d 557, 584 (S.D.N.Y. 2016). The court found that QRX Pharma's decision not to disclose a "no action letter" from the FDA on QRX Pharma's application for a special protocol assessment was not a material omission, even though QRX Pharma spoke about the safety and efficacy profiles of MoxDuo, potential side effects, QRX Pharma's belief that it "met the basic requirements for clinical data to enable NDA filing for MoxDuo," and that it was making "significant progress" toward commercializing MoxDuo. *Id.* at 581-82, 584.

Plaintiffs' own cases are in accord. In *Kitov Pharmaceuticals*, the court found that the "omissions from statements that do not pertain to the Study's findings are not actionable because the subject of the omissions and the subject of the statements are too attenuated." 2018 WL 1406619, at *5. There, the complaint "allege[d] that a general description of the [Special Protocol Assessment] in the Initial Registration Statement is misleading for failing to disclose

20

that Kitov had already provided falsified clinical trial data to the DMC, with the nearly certain

result that the FDA would not approve the NDA." *Id.* The court, however, rejected this theory,

finding instead that

> [t]he subject of the statement—a general description of the SPA
> process—and the subject of the omission—falsified data—are too
> unrelated for the omission to be actionable as to the statement
> made. In other words, there was nothing inaccurate or incomplete
> about the description of the SPA process without the omitted facts,
> and consequently, there was no duty to disclose them when
> describing the process."

*Id.*

These cases demonstrate that Sesen Bio's decision to speak about Vicineum or the

VISTA Trial did not trigger a duty to disclose every exchange with the FDA or EMA or every

datapoint from the VISTA Trial. As in *Kitov*, Plaintiffs' alleged omissions concerning protocol

deviations and investigator misconduct are "too attenuated" from the statements alleged to be

misleading.

### C.    The Amended Complaint and Plaintiffs' Opposition Confirm That Defendants Did Not Engage in Selective Disclosure.

Contrary to Plaintiffs' bald assertion, Sesen Bio did not improperly choose to disclose

only positive information about Vicineum.[5] As noted above, for example, Sesen Bio disclosed

the four treatment-related SAEs reported in three patients in the VISTA Trial, including one

"Grade 4" case of cholestatic hepatitis (liver injury) and one "Grade 5" case of renal failure (a

patient death due to kidney failure). Regan Decl., Ex. 1 (2020 10-K) at 14. In addition, Sesen

---

[5]    Plaintiffs' advancement of a "selective disclosure" theory makes the Court's consideration of Sesen Bio's SEC filings all the more appropriate on a motion to dismiss. Plaintiffs should not be permitted to defeat a motion to dismiss by asserting a "selective disclosure" theory based, ironically, on selective disclosure.

21

Bio disclosed its receipt of the Day 80 and Day 120 questions from the EMA.  *See* Compl., ¶ 200.

Similarly, Sesen Bio disclosed in June 2019 that the FDA would require an AdCom before approving Vicineum, a step that creates significant additional uncertainty and risk to the approval process.  *See* Regan Decl., Ex. 7 (6/10/2019 8-K).  In November 2019, Sesen Bio disclosed that the FDA required a post-marketing confirmatory trial for Vicineum; such a trial would cause the Company to incur substantial additional expense and create future risks for Vicineum.  Regan Decl., Ex. 9 (11/5/2019 8-K).  These disclosures show that Plaintiffs' refrain that the Company disclosed only positive developments is simply not true.  *See, e.g.*, Opp. at 2, 10, 16, 20, 24, 25, 27, 31, 37.

**IV.    UNDER SETTLED SECOND CIRCUIT LAW, SESEN BIO WAS NOT REQUIRED TO DISCLOSE THE EMA'S DAY 120 QUESTIONS.**

Courts in this Circuit and across the country consistently hold that a company need not disclose interim, non-final feedback from regulators.  *See* Mov. Br. at 35-37 (citing cases).  In applying these cases, courts do not force companies to be silent about **any** aspect of a drug if they are not prepared to disclose **every** last back-and-forth with regulators.  Instead, courts recognize that "no reasonable investor would have inferred that mere statements of confidence suggested that the FDA had not engaged in industry-standard dialogue with Defendants about potential deficiencies in either the testing methodology or the drug itself."  *Tongue*, 816 F.3d at 213.

Critically, Plaintiffs admit that, **even if** Sesen Bio did have a duty to disclose additional facts once it chose to speak on topics related to Vicineum, "whether disclosure of related adverse

22

facts is required turns on an assessment of those facts' materiality." Opp. at 18.[6]  Plaintiffs fail

to mention that this issue of materiality is precisely why courts find that interim, non-final

feedback need not be disclosed.  As explained in the District Court's opinion affirmed by the

Second Circuit in *Tongue*, "**interim FDA feedback is not material** because it does not express a

binding agency decision and is subject to change as the FDA and pharmaceutical companies

work together to develop viable clinical trial and approvable licensing applications."  *In re*

*Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 542 (S.D.N.Y. 2015) (emphasis added).  As a result, even

if Sesen Bio's decision to speak on a particular topic related to Vicineum required the Company

to consider whether additional disclosure was required, any interim feedback from the FDA or

the EMA would not have been material.  Plaintiffs argue that Defendants should have

characterized the EMA's Day 80 and Day 120 questions as "negative feedback" or "strongly

negative feedback."  Opp. at 23-24.  But Plaintiffs again ignore a key point in the moving brief –

anything in the Day 80 and Day 120 questions was interim feedback because, by the EMA's own

admission, Sesen Bio had not yet responded to the EMA's questions at the time the Company

withdrew the MAA.[7]

---

[6]     Plaintiffs argue that materiality is a question for the trier of fact. Opp. at 18.  Courts regularly rule on issues of materiality-as-a-matter-of-law-based doctrines, such as the puffery doctrine. *Okla. Law Enf't Ret. Sys. v. Papa John's Int'l*, 517 F. Supp. 3d 196, 209 (S.D.N.Y. 2021) (dismissing complaint because positive assertions were "inactionable as immaterial puffery").  The Court can make a similar determination of materiality as a matter of law with respect to interim, non-final feedback from regulators because significant and binding precedent establishes that such feedback is immaterial. *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d at 542.

[7]     EUROPEAN MEDICINES AGENCY, "Oportuzumab Monatox DLRC Pharma Services: Withdrawal of the Marketing Authorisation Application," https://www.ema.europa.eu/en/medicines/human/withdrawn-applications/oportuzumab-monatox-dlrc-pharma-services.  Sesen Bio received the Day 120 questions on July 22, 2022 and was due to respond by February 18, 2022.

23

**V.     THE OPPOSITION FAILS TO IDENTIFY ANY WELL-PLEADED FACTUAL ALLEGATIONS GIVING RISE TO A STRONG INFERENCE OF SCIENTER.**

In their moving brief, Defendants demonstrated that Plaintiffs failed to allege facts supporting a strong inference that Defendants acted with scienter because Plaintiffs did not allege any suspicious stock sales or other facts showing a motive to commit fraud; they failed to allege sufficient direct or circumstantial evidence to show conscious misbehavior or recklessness; and the most compelling and cogent inference is the non-fraudulent one – that Defendants believed that Vicineum was on track for regulatory approval.  Mov. Br. at 38-44. Plaintiffs make several arguments in opposition, all of which rehash the core allegation that Defendants failed to disclose the allegations in the *STAT* article and the content of the EMA's Day 120 questions.  Opp. at 34-43.  Plaintiffs' kitchen-sink collection of scienter theories, considered separately and together, fails to show that Defendants knew or recklessly disregarded that any of their statements were false or misleading.  Even if Plaintiffs "alleged a few facts that would be the proverbial 'cherry-on-top' had there been an adequate pleading of scienter, [they have] failed to allege the sundae."  *Long Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 808 (S.D.N.Y. 2020).

**A.     Plaintiffs' Allegations Do Not Show Conscious or Reckless Misbehavior.**

Defendants, in their moving papers, showed that Plaintiffs failed to allege conscious misbehavior or recklessness through direct or circumstantial evidence because the allegations in the *STAT* article lack sufficient indicia of reliability to adequately allege that Defendants knew, or recklessly disregarded that, their statements were false or misleading.  Mov. Br. at 39-41.  In response, Plaintiffs merely repeat the conclusory assertion that Defendants must have been aware

24

of the substance of the *STAT* allegations and the "negative feedback" in the Day 120 Report.[8]

Opp. at 35-36.  "Must have" allegations do not pass muster under the Reform Act.  As explained

in Defendants' moving papers and above, Plaintiffs have not taken any steps to explain why the

*STAT* allegations or the interim EMA feedback in the Day 120 Questions rendered any of

Defendants' statements false or misleading.  Mov. Br. at 39-40; *see also* Point I, *supra*, at 5-10.[9]

Plaintiffs' case law is inapposite.  In *In re Intercept Pharmaceuticals, Inc. Securities*

*Litigation*, the defendant was informed that the clinical trial was going to end early for two

reasons, one positive about efficacy and one negative concerning side effects.  No. 14-cv-1123,

2015 WL 915271, at \*7 (S.D.N.Y. Mar. 4, 2015).  Despite the trial's scientific advisor's

emphasis that both reasons played a part in the decision to end the trial early, the defendant chose

to disclose only the positive news about efficacy, which supported a strong inference of scienter.

*Id.*  Similarly, in *Wyeth*, the defendants were aware of data from a clinical trial showing 27

SAEs, including multiple heart and liver issues as well as a large increase in hypertension among

patients in the study, but still stated that the drug was safe with "nothing new" to report on side

effects.  2010 WL 3910265, at \*2.

Here, by contrast, Plaintiffs have not alleged any contradiction between the *STAT* article

allegations and Sesen Bio's disclosures and ignore that Sesen Bio did, in fact, disclose the liver-

related issues and the SAEs that occurred during the VISTA Trial.  Without allegations showing

---

[8]    In addition, scienter cannot be based on the omission of immaterial information.  *See ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 202 (2d Cir. 2009) (finding no scienter where omitted information was immaterial).

[9]    This lack of specificity is not remedied by the fact that Sesen Bio did not expressly deny all allegations in the *STAT* article when it gave a statement to *STAT*.  Compl. Ex. 1 at 4.  Sesen Bio's statement is not an admission nor is it the kind of non-denial that supports a strong inference of scienter.  *Contra In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d 266, 276 (S.D.N.Y. 2014) (finding that defendant who was accused of bribing police officers made a non-denial by responding that "[t]he police sometimes do contact me").

25

that Defendants had access to information that directly contradicted Sesen Bio's disclosures, it is impossible to find that Defendants knew or recklessly disregarded that the Company's disclosures were false or misleading. *See State Univs. Ret. Sys. of Illinois v. Astrazeneca PLC*, 334 F. App'x 404, 407 (2d Cir. 2009) (finding no conscious misbehavior where facts as known by defendants reasonably supported their disclosures); *Schaeffer v. Nabriva Therapeutics plc*, No. 19-cv-4183, 2020 WL 7701463, at \*12 (S.D.N.Y. Apr. 28, 2020) (finding no scienter where defendants omitted receipt of an FDA Form 483 that did not contradict public statements).

### B. Defendants Did Not Engage in Selective Disclosure.

Plaintiffs, again relying on *Intercept Pharmaceuticals*, attempt to manufacture an inference of scienter by arguing that Defendants engaged in a pattern of selective disclosure of regulatory feedback. Defendants did no such thing. *See* Point III, *supra*, at 18-21. Nor does *Intercept Pharmaceuticals* support Plaintiffs' position. There, as detailed above, the scientific advisor ended the clinical trial early for both a positive and negative reason, but the defendant disclosed only the positive reason publicly. 2015 WL 915271, at \*7. The argument that the defendant engaged in selective disclosure was bolstered by allegations that the defendant debated whether he was obligated to disclose the bad news and even sought (but did not receive) approval from the scientific advisor to disclose only the good news. *Id.*

Here, there are no similar allegations. Sesen Bio's disclosures contained both negative and positive developments during the VISTA Trial and the approval process. *See* Point III.C., *supra*, at 21. Sesen Bio did not disclose every back-and-forth with the FDA or EMA because they had no obligation to do so. *See* Point III.C., *supra*, at 19-21. Nor is there any conflict between positive FDA feedback and the allegedly negative EMA feedback. Opp. at 36-37. Different regulators are entitled to impose different requirements and have different views. As a

26

result, the EMA's decision to deny accelerated assessment of Vicineum did not contradict the FDA's decision to grant Vicineum priority review, nor did the EMA's feedback in the Day 120 questions contradict Sesen Bio's disclosures about positive meetings with the FDA. Accordingly, there was no pattern of selective disclosure here to support a strong inference of scienter.

### C.  Plaintiffs' Argument That Defendants Were "Knowledgeable" Is Just an Application of the Core Operations Doctrine and Should Be Rejected.

As Defendants demonstrated in their moving papers, Plaintiffs' "core operations" allegations can only bolster the inference of scienter, not form the basis of a strong inference of scienter.  Mov. Br. at 40-41.  The opposition merely repackages the core operations theory as a "knowledgeability" theory, arguing that if defendants hold themselves out as knowledgeable, that "contributes" to scienter.  Opp. at 38.  But Plaintiffs' new theory relies on cases that make clear that the core operations doctrine can only bolster, not create, an inference of scienter, and Plaintiffs allege no additional facts supporting a strong inference of scienter.

For example, Plaintiffs rely heavily on *Shanawaz v. Intellipharmaceutics Int'l Inc.*, but there, the scienter allegations included statements from confidential witnesses "describing in detail the personal involvement of" the individual defendants, allegations that the individual defendants' compensation packages were tied to the company's stock price and the generation of NDAs regardless of approval, and suspiciously timed stock sales.  348 F. Supp. 3d 313, 321, 325-26 (S.D.N.Y. 2018).  Allegations that the individual defendants spoke regularly about the NDA and were actively involved in its development did not, on their own, support a strong inference of scienter.  *Id.*; *see also In re Delcath Sys., Inc. Sec. Litig.* 36 F. Supp. 3d 320, 334 (S.D.N.Y. 2014) (finding scienter based on statements from confidential witnesses that the

27

individual defendant was personally involved in the decision to **omit** negative data from public disclosures).

Accordingly, under the core operations theory, even repackaged as Plaintiffs' "knowledgeability" theory, Plaintiffs fail to allege facts supporting a strong inference of scienter.

### D.    A Desire to Raise Capital Does Not Create a Strong Inference of Scienter, and the More Cogent and Compelling Inference Is Non-Fraudulent.

Defendants' moving papers established that Plaintiffs' depiction of Sesen Bio as a struggling startup does not establish a motive to commit fraud because the desire to raise capital is too generalized to support an inference of scienter.  Mov. Br. 38-39.  Plaintiffs, in response, retool their motive theory as a "gamble":  Sesen Bio hid material information from investors to raise money for additional clinical trials in case the FDA did not approve the Company's BLA, but hoped that it would secure approval and its fraud would remain hidden.  Opp. at 39-41.

Plaintiffs' new motive theory runs into the same problem as the former theory – courts agree that a generalized motive to raise money cannot be equated to an intent to commit fraud. Mov. Br. at 38-39.  This rule applies even if a pharmaceutical company is alleged to have hedged its bets by raising money for a back-up plan if the FDA fails to approve its product.  *See Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 414 (S.D.N.Y.), *aff'd*, 757 F. App'x 35 (2d Cir. 2018) (finding that the desire to "have a successful IPO and to raise enough money to purchase another drug candidate if [their current application] failed" did not support an inference of scienter).  Instead, the more cogent and compelling inference is the non-fraudulent one:  Sesen Bio raised money to prepare for the commercial launch of Vicineum.  Mov. Br. 41-44. Plaintiffs' one-sentence response, arguing that "spending money" is "entirely consistent with hoping for near-term approval, while knowing of material undisclosed risks," Opp. at 41, does not save Plaintiffs' claim because, as case law makes clear, evidence that a pharmaceutical

28

company invested in preparations for a commercial launch in anticipation of regulatory approval actually suggests "the **absence** of fraudulent intent,"[10] as does evidence that the company continues to invest time, money, and effort into revising its regulatory application with the inclusion of data from the challenged study. *See QRX Pharma Ltd.*, 197 F. Supp. 3d at 595.

## CONCLUSION[11]

For the reasons set forth above and in Defendants' moving papers, Defendants respectfully request that the Court dismiss the Amended Complaint in its entirety with prejudice.

Dated:    New York, New York
          May 6, 2022

**HOGAN LOVELLS US LLP**

By:    /s/  *William M. Regan*

William M. Regan
william.regan@hoganlovells.com

Allison M. Wuertz
allison.wuertz@hoganlovells.com

Maura C. Allen
maura.allen@hoganlovells.com

390 Madison Avenue
New York, NY 10017
(212) 918-3000 (p)
(212) 918-3100 (f)

*Attorneys for Sesen Bio, Inc., Thomas
R. Cannell, and Monica Forbes*

---

[10]    *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 765 (S.D.N.Y. 2018).

[11]    Plaintiffs offer no real argument to support their Section 20(a) claim. Plaintiffs fail to plead a primary violation, and thus their Section 20(a) claim should be dismissed. *See* Mov. Br. at 46.