# EXHIBIT 36

Table of Contents

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
**Washington, D.C. 20549**

## FORM 10-K

**(Mark One)**

☒ **ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the fiscal year ended December 31, 2018**

**OR**

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from to**

**Commission File No. 001-36296**

# Sesen Bio, Inc.
**(Exact name of registrant as specified in its charter)**

| | |
|---|---|
| **DELAWARE** | **26-2025616** |
| **(State or other jurisdiction of incorporation or organization)** | **(I.R.S. Employer Identification No.)** |
| **245 First Street, Suite 1800** | |
| **Cambridge, MA** | **02142** |
| **(Address of principal executive offices)** | **(Zip code)** |

**Registrant's telephone number, including area code: (617) 444-8550**

**Securities registered pursuant to Section 12(b) of the Act:**

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, par value $0.001 per share | Nasdaq Global Market |

**Securities registered pursuant to Section 12(g) of the Act:**
**None**

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act. ☐ Yes ☒ No

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or 15(d) of the Act. ☐ Yes ☒ No

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. ☒ Yes ☐ No

Indicate by check mark whether the registrant has submitted electronically every Interactive Data File required to be submitted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit such files). ☒ Yes ☐ No

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, a smaller reporting company, or an emerging growth company. See the definitions of "large accelerated filer," "accelerated filer," "smaller reporting company," and "emerging growth company" in Rule 12b-2 of the Exchange Act.

| | | | |
|---|---|---|---|
| Large Accelerated filer | ☐ | Accelerated filer | ☒ |
| Non-accelerated filer | ☐ | Smaller reporting company | ☒ |
| | | Emerging growth company | ☒ |

If an emerging growth company, indicate by check mark if the registrant has elected not to use the extended transition period for complying with any new or revised financial accounting standards provided pursuant to Section 13(a) of the Exchange Act. ☒

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act.): ☐ Yes ☒ No

As of June 29, 2018, the last business day of the registrant's most recently completed second fiscal quarter, the aggregate market value of the

Common Stock held by non-affiliates of the registrant was approximately $132.0 million based on the closing price of the registrant's common stock on June 29, 2018.

Number of outstanding shares of Common Stock as February 27, 2019: 77,456,180

Table of Contents

**SESEN BIO, INC.**
**TABLE OF CONTENTS**

|  |  | **Page** |
|---|---|---|
| **PART I** |  |  |
| Item 1. | Business | 1 |
| Item 1A. | Risk Factors | 55 |
| Item 1B. | Unresolved Staff Comments | 101 |
| Item 2. | Properties | 101 |
| Item 3. | Legal Proceedings | 101 |
| Item 4. | Mine Safety Disclosures | 101 |
| **PART II** |  |  |
| Item 5. | Market for Registrant's Common Equity, Related Stockholder Matters and Issuer Purchases of Equity Securities | 102 |
| Item 6. | Selected Financial Data | 103 |
| Item 7. | Management's Discussion and Analysis of Financial Condition and Results of Operations | 103 |
| Item 7A. | Quantitative and Qualitative Disclosures About Market Risk | 119 |
| Item 8. | Financial Statements and Supplementary Data | 119 |
| Item 9. | Changes in and Disagreements with Accountants on Accounting and Financial Disclosure | 119 |
| Item 9A. | Controls and Procedures | 119 |
| Item 9B. | Other Information | 120 |
| **PART III** |  |  |
| Item 10. | Directors, Executive Officers and Corporate Governance | 121 |
| Item 11. | Executive Compensation | 121 |
| Item 12. | Security Ownership of Certain Beneficial Owners and Management and Related Stockholder Matters | 121 |
| Item 13. | Certain Relationships and Related Transactions, and Director Independence | 121 |
| Item 14. | Principal Accountant Fees and Services | 121 |
| **PART IV** |  |  |
| Item 15. | Exhibits and Financial Statement Schedules | 122 |
| Item 16. | Form 10-K Summary | 122 |

Table of Contents

established options for communicating with existing and new patients, emerging market study centers have difficulty acquiring new patients as well as maintaining consistent contact with existing patients, making follow up very difficult. We do not believe these issues will pose the same challenges in a North American SCCHN clinical trial. In the United States, study centers have established multiple options to enroll and remain in communication with patients.

At the time this SCCHN Phase 3 clinical trial was terminated, 166 patients had been randomized in the trial. Of these, 82 patients were randomized to the Vicinium treatment in combination with the BSC arm and 84 patients were randomized to the BSC alone arm (as discussed below).

*Safety data.* We believe that our safety and anti-tumor activity data in our two Phase 1 clinical trials, our Phase 2 clinical trial, and our partially completed Phase 3 clinical trial support further development of Vicinium for the treatment of SCCHN. There were no Grade 5 serious adverse events that were considered by the clinical investigator to be related to Vicinium. The serious adverse events that were reported in the clinical trials of Vicinium for the treatment of SCCHN and were considered to be possibly, probably or definitely related to treatment consisted of abnormal tumor growth, anorexia, cancer pain, decrease in red blood cells, difficulty swallowing, elevated calcium levels, facial pain, fatigue, high blood sugar, influenza like illness, injection site pain, liver function abnormalities, low albumin level, low sodium concentration, nausea, rash, swelling, tumor hemorrhage and tumor necrosis.

Seven patients died during the clinical trials of Vicinium for the treatment of SCCHN, but none of the deaths were deemed to be related to Vicinium. Eleven patients discontinued treatment due to liver function test abnormalities; however, the serum levels were transient and they eventually returned to baseline without any evidence of permanent liver damage. Four patients withdrew from the clinical trials. Three of the four patients withdrew at their request and one of the four patients withdrew at the request of the investigator.

**Vicinium in Combination with Checkpoint Inhibitor Proposed SCCHN Phase 1/2a Clinical Trial Plan**

We intend to initiate a Phase 1/2a clinical trial that will explore the potential of Vicinium in combination with a checkpoint inhibitor for the treatment of SCCHN and are actively seeking partners for a combination program. We anticipate that the Phase 1/2a clinical trial will explore the potential for Vicinium, due to its potential immunogenic effect, to enhance checkpoint inhibitors in combination therapy for the treatment of SCCHN.

Overall, we believe that our efficacy and safety data support the continued clinical development of Vicinium to fulfill a significant unmet medical need in patients with late-stage SCCHN.

We have deferred further development of Vicinium for the treatment of SCCHN in order to focus our efforts and our resources on our ongoing development of Vicinium for the treatment of high-risk NMIBC. We are also exploring collaborations for Vicinium for the treatment of SCCHN.

*Potential future indications*

Based on the safety and efficacy data in our two Phase 1 clinical trials, our Phase 2 clinical trial and our previous partially completed Phase 3 clinical trial of Vicinium for the treatment of SCCHN, we also believe that there are several other potential applications for Vicinium that we may elect to pursue, including colon, thyroid and prostate cancers.

*VB6-845d*

*Overview*

Our lead systemically-administered product candidate, VB6-845d, is being developed as a treatment for multiple types of EpCAM-positive solid tumors. VB6-845d is a TFPT consisting of an EpCAM targeting Fab genetically linked to deBouganin, which is administered by intravenous infusion. EpCAM is over-expressed on the cell surface of many solid tumors, including breast, colorectal, gastric, lung, ovarian and prostate. EpCAM overexpression has been shown to be involved in promoting malignant progression. In addition, EpCAM overexpression is associated with increased tumor grade, disease progression, increased proliferative phenotypes and diminished survival. EpCAM is also a cancer stem cell marker. A Phase 1 clinical trial conducted with VB6-845, the prior version of VB6-845d, revealed no clinically relevant immune response to the deBouganin payload, and five of seven patients (71.4%) maintained stable disease (meaning no change in tumor size from baseline) after one completed cycle of treatment (four weeks) two patients had decreases in target tumor size, and one subject who continued treatment through a third cycle (12 weeks) maintained stable disease. Interim safety data from our Phase 1

24

Table o
f Contents

**SIGNATURES**

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized.

SESEN BIO, INC.

By:    /s/ Thomas R. Cannell, D.V.M.

**Thomas R. Cannell, D.V.M.**

**President and Chief Executive Officer**

March 1, 2019

Pursuant to the requirements of the Securities and Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities and on the dates indicated.

| | | |
|---|---|---|
| /s/ Thomas R. Cannell, D.V.M. <br> **Thomas R. Cannell, D.V.M.** | Director, President and Chief Executive Officer (Principal Executive Officer) | March 1, 2019 |
| /s/ Richard F. Fitzgerald <br> **Richard F. Fitzgerald** | Chief Financial Officer (Principal Financial and Accounting Officer) | March 1, 2019 |
| /s/ Wendy L. Dixon, Ph.D. <br> **Wendy L. Dixon, Ph.D.** | Chair of the Board of Directors | March 1, 2019 |
| /s/ Leslie Dan, B.Sc. Phm,. M.B.A., C.M. <br> **Leslie Dan, B.Sc. Phm,. M.B.A., C.M.** | Director | March 1, 2019 |
| /s/ Jay S. Duker, M.D. <br> **Jay S. Duker, M.D.** | Director | March 1, 2019 |
| /s/ Jane V. Henderson <br> **Jane V. Henderson** | Director | March 1, 2019 |
| /s/ Daniel S. Lynch <br> **Daniel S. Lynch** | Director | March 1, 2019 |

127