**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE SESEN BIO, INC. SECURITIES LITIGATION | Case No.: 1:21-cv-07025-AKH |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;**
**(II) CERTIFICATION OF THE SETTLEMENT CLASS; AND**
**(III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ..................................................................................... 1

II.     NATURE OF THE ACTION .......................................................................................... 4

III.    PROCEDURAL HISTORY.............................................................................................. 4

        A.      The Initial Complaint And Lead Plaintiff Appointment Process............................ 4

        B.      Defendants' Motion To Transfer ................................................................. 5

        C.      Lead Counsel's Investigation And Amended Complaint ....................................... 5

        D.      The Motion To Dismiss The Amended Complaint.................................................. 6

        E.      Mediation Efforts And Settlement Negotiation ....................................................... 7

IV.     STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E) ..................... 8

A.      Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement Is
        "Fair, Reasonable, And Adequate" And The Court Will "Likely" Be Able To Grant Final
        Approval ............................................................................................................... 8

V.      ARGUMENT................................................................................................................... 10

A.      The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By
        Rule 23(e)(2) And The Remaining *Grinnell* Factors......................................................... 10

                1.      Plaintiffs And Lead Counsel Adequately Represented The Class............ 10

                2.      The Settlement Is The Result Of Arm's Length Negotiations.................. 11

                3.      The Settlement Is An Excellent Result For The Class In Light Of The
                        Benefits Of The Settlement And The Risks Of Continued Litigation ...... 12

                        a.      Complexity, Expense and Duration of Litigation ......................... 12

                        b.      Establishing Liability .................................................................... 13

                        c.      Risks of Maintaining Class Action Status ................................... 15

                        d.      Range of Reasonableness in Light of the Best Possible Recovery
                                and Attendant Risks of Litigation ................................................ 16

                4.      Rule 23(e)(2)(C)(iii)-(iv) ............................................................... 16

                5.      The Settlement Treats All Members Of The Class Equitably ................. 18

6. The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval ................................................................................. 18

B. Certification Of The Settlement Class Is Appropriate ...................................................... 20

    1. The Settlement Class Satisfies The Requirements Of Rule 23(a) ......................... 20

    2. The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ................... 22

    3. The Court Should Appoint Lead Counsel As Counsel For The Settlement Class ....................................................................................................................... 23

C. The Court Should Approve The Proposed Form And Method Of Notice To The Settlement Class ............................................................................................................... 24

VI. PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................... 25

VII. CONCLUSION ................................................................................................................. 25

# TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ............................................................................................ 2

*Amchem Prod., Inc. v. Windsor*,
    521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997)................................................ 22, 23

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
    133 S. Ct. 1184 (2013)...................................................................................................... 21

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000)................................................................................................ 10

*Beach v. JPMorgan Chase Bank, N.A.*,
    2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ..................................................................... 9

*Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229 (2d Cir. 2007)............................................................................................. 21

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................................... 15

*Christine Asia Co., Ltd. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) .................................................................. 18

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974).............................................................................................. 9, 12

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) .................................................................... 24

*Dairy Farmers of Am.*,
    80 F. Supp. 3d 838 (N.D. Ill. 2015) ................................................................................. 14, 15

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)................................................................................................ 11

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ..................................................................... 14

*In re "Agent Orange" Prods. Liab. Litig.*,
    597 F. Supp. 740 (E.D.N.Y. 1984) ................................................................................... 16

*In re AOL Time Warner, Inc.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)........................................................................ 20, 22

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012).................................................................................... 18

*In re China Med. Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ........................................................................ 12

*In re Citigroup, Inc. Sec. Litig.*,
965 F. Supp. 2d 369 (S.D.N.Y. 2013).................................................................................... 18

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................................ 11

*In re GSE Bonds Antitrust Litig.*,
414 F. Supp. 3d 686 (S.D.N.Y. 2019).................................................................... 12, 13, 15

*In re IMAX Sec. Litig.*,
283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................................ 19

*In re Marsh ERISA Litig.*,
265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................................ 18

*In re Metlife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................................... 19

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
310 F.R.D. 230 (S.D.N.Y. 2015) ..................................................................................... 20, 23

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................................ 11

*In re Patriot Nat'l, Inc. Sec. Litig.*,
828 Fed.Appx. 760 (2d Cir. 2020)................................................................................... 10, 21

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................................ 9

*In re Pfizer Inc. Sec. Litig.*,
282 F.R.D. 38 (S.D.N.Y. 2012) .............................................................................................. 20

*In re Sadia, S.A. Sec. Litig.*,
269 F.R.D. 298 (S.D.N.Y. 2010) ............................................................................................ 20

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
   2013 WL 5505744 (D.N.J. Oct. 1, 2013)........................................................................ 14

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) .............................................................................. 21

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ...................................................................................... 22

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008).................................................................. 24

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005)...................................................................... 2, 15

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000)............................................................................... 14

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015)............................................................................... 15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)....................................................................................................... 13

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)....................................................................................................... 23

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)........................................................................................... 22

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) ........................................................................................... 2

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005).................................................................................... 10, 11

*Wilson v. LSB Indus., Inc.*,
   2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)........................................................... 21, 24

STATUTES

14 U.S.C. §§ 78j(b), 78t(a) ..................................................................................................... 4

15 U.S.C. § 78u-4 ................................................................................................................. 2

RULES

FED. R. CIV. P. 23.......................................................................................................... *passim*

Lead Plaintiffs Ryan Bibb, Rodney Samaan, Lionel Dreshaj, and Benjamin Dreshaj (collectively, "Lead Plaintiffs" or "Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated August 3, 2022 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class;[2] (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) the scheduling of a hearing date ("Final Approval Hearing") at which the Court will consider (a) final approval of the proposed Settlement and entry of the proposed Final Judgment Approving Class Action Settlement, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.

## I.      PRELIMINARY STATEMENT

The proposed Settlement, which provides for a non-reversionary cash payment of $21 million in exchange for the resolution of the Action, represents an excellent result for the

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which is attached as Exhibit 1 to the accompanying Declaration of Matthew M. Houston. All references to "Ex. _" are to exhibits to the Houston Declaration.

[2] The "Settlement Class" means all persons and entities that purchased or otherwise acquired Sesen Bio Common Stock, and/or Sesen Bio Call Options, and/or wrote Sesen Bio Put Options, between December 21, 2020 and August 17, 2021, inclusive, and who were damaged thereby. Excluded from the Settlement Class are: (a) Defendants; (b) any person who served as an executive officer and/or director of Sesen Bio during the Settlement Class Period, and members of their Immediate Family; (c) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Sesen Bio; (d) any entity in which Defendants have or had a controlling interest during the Settlement Class Period; (e) any trust of which any Individual Defendant is the settlor or that is for the benefit of any Individual Defendant and/or member(s) of their Immediate Family; and (f) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (a) through (e) hereof. Also excluded from the Settlement Class are any persons and entities who or that validly exclude themselves by submitting a request for exclusion that is accepted by the Court.

Settlement Class, particularly when juxtaposed against the significant hurdles that Plaintiffs would have needed to overcome in order to prevail in this complex securities fraud litigation. In undertaking this litigation, Lead Counsel faced numerous challenges to establishing liability. The risk of losing was very real and it was greatly enhanced by the fact that they would be litigating against a corporate defendant represented by highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the PSLRA. *See* 15 U.S.C. § 78u-4; *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.").[3] Indeed, "[o]f the securities class action cases filed and resolved between 1 January 2012 and 31 December 2021, a motion to dismiss was filed in 96%. Among those, a decision was reached in 73% of cases. Of the cases with a decision on a motion to dismiss, approximately 56% were granted while only 19% were denied." *See* Ex. 2 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022 at p. 14) ("NERA Report"); *see also* Ex. 3 (*Securities Class Action Filings: 2020 Year in Review* (Cornerstone Research 2021 at p. 18 (Fig. 17)) ("Recent annual dismissal rates have been closer to 50%."). There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("Precedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy."); *Silverman v. Motorola Sols., Inc.*, 739 F.3d

---

[3] Unless otherwise noted, all internal citations and quotation marks are omitted and all emphasis is added.

2

956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits.").

Despite these risks, Lead Plaintiffs were able to reach the Settlement that will resolve all claims against Defendants[4] in exchange for a sizable cash payment of $21,000,000 (the "Settlement Amount") for the benefit of the Settlement Class.  This represents a recovery of approximately 6.14% of the ***maximum*** recoverable damages related to the pending claims.  This recovery percentage is more than three times higher than the average securities class action settlement; it is also one of the rare cases in which Plaintiffs were able to recover more than all of the available applicable insurance policies.

By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses.  Prior to reaching the Settlement, Lead Counsel, among other things: conducted an extensive investigation into Sesen Bio's allegedly wrongful acts; worked with an investigator to locate and interview relevant former employees and third parties; consulted with experts in the fields of loss causation, damages, and Food and Drug Administration ("FDA") regulations; drafted a comprehensive consolidated amended complaint; engaged in substantial briefing opposing Defendants' motion to dismiss; conducted significant informal discovery, which included review and analysis of the 39,200 files (equating to 151,403 pages) produced by Sesen Bio, and an interview with Sesen Bio's CEO, Defendant Cannell; and participated in a lengthy mediation process under the auspices of a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS.

The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced and well-respected neutral.  As

---

[4] Defendants are: Sesen Bio, Inc. ("Sesen Bio" or the "Company") and, Thomas R. Cannell and Monica Forbes (collectively, the "Individual Defendants," and, together with Sesen Bio, "Defendants").

discussed in greater detail below, Lead Plaintiffs and Lead Counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Settlement Class. Accordingly, Lead Plaintiffs respectfully request that the Court grant the Settlement preliminary approval.

## II.    NATURE OF THE ACTION

This is a securities class action brought by investors alleging that Defendants made materially false and misleading statements and/or failed to disclose that: (i) Sesen Bio's clinical trials showed Vicineum leaked out from the bladder into the body, interacting with non-cancerous cells and leading to side effects, including potentially fatal drug-induced liver injury; (ii) the VISTA clinical trial for Vicineum had more than 2,000 trial protocol violations, including 215 classified as "major"; (iii) three of Sesen Bio's clinical investigators were found guilty of "serious noncompliance," including "back-dating data"; (iv) Sesen Bio submitted the tainted data in connection with applications for regulatory approval to market Vicineum; and (v) the European Medicines Agency ("EMA") identified and raised serious concerns about Vicineum and the VISTA trial and conveyed such concerns to Sesen Bio. Plaintiffs further alleged that the prices of Sesen Bio's publicly traded securities were artificially inflated as a result of Defendants' allegedly false and misleading statements and/or omissions, and declined when the truth was revealed.

## III.    PROCEDURAL HISTORY

### A.    The Initial Complaint And Lead Plaintiff Appointment Process

On August 19, 2021, Plaintiff Ryan Bibb initiated this action by filing a putative class action complaint in the United States District Court for the Southern District of New York (the "Court") asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 14 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. 240.10b-5. The case was styled as *Bibb v. Sesen Bio, Inc.*, *et al.*, 1:21-cv-07025-

4

AKH.  Two other putative class action complaints were subsequently filed in the Court, styled as *Cizek v. Sesen Bio, Inc., et al.*, 1:21-cv-07309-AKH, and *Markman v. Sesen Bio, Inc., et al.*, 1:21-cv-08308-AKH.

By Order dated October 29, 2021, the Court ordered that the cases be consolidated and recaptioned as *In re Sesen Bio, Inc. Securities Litigation*, Master File No. 1:21-cv-07025-AKH; appointed Ryan Bibb, Rodney Samaan, Lionel Dreshaj, and Benjamin Dreshaj as Lead Plaintiffs for the consolidated action; and approved Lead Plaintiffs' selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel for the putative class.

### B.   Defendants' Motion To Transfer

On November 24, 2021, Defendants filed and served a motion to transfer venue to the United States District Court of Massachusetts.  ECF Nos. 60-63.  On December 6, 2021, Lead Plaintiffs opposed Defendants motion to transfer venue, and on December 13, 2021, Defendants filed and served their reply brief.  ECF Nos. 64-65.

### C.   Lead Counsel's Investigation And Amended Complaint

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Sesen Bio's allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) Sesen Bio's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysts, news articles and other publicly available material concerning Sesen Bio, and (c) Sesen Bio's investor call transcripts; and (ii) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, interviews of former Company employees and other sources of relevant information.  Lead Counsel also consulted with experts on the subjects of loss causation, damages, and FDA regulations.

On December 6, 2021, Lead Plaintiffs filed and served their Amended Class Action

Complaint for Violations of the Federal Securities Laws (the "Complaint") asserting claims against all Defendants under Section 10(b) of the Exchange Act and against Individual Defendants under Section 20(a) of the Exchange Act. Among other things, the Complaint alleged Defendants published materially false and misleading statements about the safety, trial results, and prospects for rapid approval of Vicineum, Sesen Bio's lead product candidate, by the FDA and the EMA. According to the Complaint, the alleged misrepresentations proximately caused class member losses as it became clear that Vicineum would not gain regulatory approval in the near future.

### D.    The Motion To Dismiss The Amended Complaint

On March 7, 2022, Defendants moved to dismiss the Complaint. ECF No. 73. Therein, Defendants argued, among other things, that the alleged misstatements were: (i) protected by the Exchange Act's safe harbor for forward looking statements; (ii) inactionable statements of opinion under *Omnicare*; and/or (iii) mere corporate optimism and puffery. Defendants further argued that they had no duty to disclose interim regulatory feedback from governmental agencies or the allegations made in the STAT article. Regarding scienter, Defendants argued that they had no motive to commit fraud as they did not sell any stock during the class period, and that the more plausible inference—based in their communications with the FDA—was that the FDA was going to approve Vicineum. As Defendants explained, Sesen Bio continued to receive positive signs from the FDA – "the FDA granted an Application Orientation Meeting, the FDA accepted the BLA for Vicineum and granted Priority Review, and the FDA informed Sesen Bio that the FDA was no longer planning to hold an AdCom meeting on Vicineum." *See id.* at 43. Defendants also argued that their lack of scienter and belief that the product would be approved was supported by the fact that Sesen Bio had begun making major investments into its planned commercial launch of the product, including the hiring of a substantial number of staff. It simply would not make sense to spend their limited resources pointlessly.

6

Lead Plaintiffs filed their opposition to Defendants' motion on April 6, 2022, and on May 6, 2022, Defendants filed their reply brief.  ECF Nos. 75, 77.

### E.    Mediation Efforts And Settlement Negotiation

On June 3, 2022, the Parties sent a letter requesting that the Court not rule on Defendants' motion to dismiss until after the Parties participated in a mediation before Jed Melnick, Esq. of JAMS.  That same day, June 3, 2022, the Court granted the Parties' request and ordered the Parties to inform the Court of the outcome of the mediation no later than July 14, 2022.

To facilitate the mediation, and pursuant to Rule 408 of the Federal Rules of Civil Procedure and subject to the terms and conditions of a confidentiality agreement, Sesen Bio provided Lead Counsel with Company documents, including the CEO's non-privileged emails from the Class Period, the CFO's non-privileged emails from the Class Period, and meeting materials (agenda, decks, minutes and resolutions) from Sesen Bio's board of director and board committee meetings held during the Class Period).  The production consisted of 39,200 files, equating to 151,403 pages.  Moreover, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits, which addressed the strengths and weaknesses of the arguments advanced by the Parties on the pending motion to dismiss, as well as the substantive factual issues that would determine the outcome of the case if the matter proceed to summary judgment or trial.

On June 30, 2022 the Parties participated in an in-person, all-day mediation before Mr. Melnick.  The matter was not resolved that day, but the Parties held a second telephonic mediation before Mr. Melnick on July 6, 2022, and continued to negotiate with the assistance of Mr. Melnick over the course of the next several weeks.[5]    The process culminated in a mediator's

---

[5] By way of Order dated July 14, 2022, the Court agreed to continue holding the motion to dismiss

*(Cont'd)*

7

recommendation to resolve the action for $21,000,000, which was accepted by all of the Parties. The agreement was memorialized in a term sheet (the "Term Sheet") that was executed on July 19, 2022. The Term Sheet set forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants of $21,000,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers. One other such condition was that Plaintiffs' could conduct a four-hour interview of the Company's CEO, Defendant Cannell, to further assess the strengths and weaknesses of the Parties' claims and defenses that would be advanced if the case proceeded to summary judgment and trial.

On May 3, 2022, Sesen Bio announced it initiated a process to review strategic alternatives with the goal of maximizing shareholder value, and that the alternatives to be explored may include a sale of the Company, a merger, acquisition or other business combination, a strategic partnership with one or more parties, or the licensing, sale or divestiture of some of the Company's proprietary technologies. Lead Plaintiffs believe the proposed Settlement will materially reduce litigation uncertainty and has the potential to enable a favorable strategic transaction by increasing the range and attractiveness of strategic alternatives that the Company is able to consider.

## IV.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

### A.    Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement Is "Fair, Reasonable, And Adequate" And The Court Will "Likely" Be Able To Grant Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair,

---

in abeyance to allow the Parties to continue their settlement negotiations with the assistance of Mr. Melnick.

reasonable, and adequate." FED. R. CIV. P. 23(e)(2).  Rule 23(e)(1) provides preliminary approval

should be granted where "the parties show[] that the Court will likely be able to: (i) approve the

proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."

*Id.*   Rule 23(e)(2)—which governs final approval—requires courts to consider the following

questions in determining whether a proposed settlement is fair, reasonable, and adequate:

> (A)  have the class representatives and class counsel adequately represented the class;
> (B)  was the proposal negotiated at arm's length;
> (C)  is the relief provided for the class adequate, taking into account:
>  (i)  the costs, risks, and delay of trial and appeal;
>  (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>  (iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and
>  (iv)  any agreement required to be identified under Rule 23(e)(3); and
> (D)  does the proposal treat class members equitably relative to each other.

These Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors" traditionally

considered by courts within the Second Circuit.  *In re Payment Card Interchange Fee and*

*Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).  The Second Circuit's

traditional factors utilized to evaluate the propriety of a class action settlement (certain of which

overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement;[6] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan*

*Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on

---

[6] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

factors set forth in FED. R. CIV. P. 23(e)(2) and *Grinnell*).  As set forth below, the proposed

Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well

as the relevant, non-duplicative *Grinnell* factors.

## V.     ARGUMENT

### A.     The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors

#### 1.     Plaintiffs And Lead Counsel Adequately Represented The Class

FED. R. CIV. P.  23(e)(2)(A) requires the Court to consider whether the "class

representatives and class counsel have adequately represented the class."  In assessing adequacy,

"the primary factors are whether the class representatives have any 'interests antagonistic to the

interests of other class members' and whether the representatives 'have an interest in vigorously

pursuing the claims of the class.'"  *In re Patriot Nat'l, Inc. Sec. Litig*., 828 Fed.Appx. 760, 764 (2d

Cir. 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52,

60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether:

1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2)

plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").[7]

First, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement

Class, and they have no antagonistic interests.  Plaintiffs suffered substantial losses as a result of

Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible

recovery is, therefore, aligned with the other Settlement Class Members.  *See Patriot*, 828 Fed.

Appx. at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as

much as possible for each class member.").  In addition, Plaintiffs diligently oversaw the litigation

---

[7] *Accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 106-07 (2d Cir. 2005) ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

and communicated with Lead Counsel on a regular basis to discuss case developments, including settlement. *See In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness.").

Second, Plaintiffs retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* ECF No. 48. As noted above, Lead Counsel vigorously prosecuted the Settlement Class's claims. The Parties were acutely aware of the strengths and weaknesses of the case, including the motion to dismiss arguments and the key factual issues that would determine the outcome if the case proceeded to summary judgment or trial, prior to settling the Action (*see* Sec. III., *supra*) (detailing Lead Counsel's extensive investigation into the Company, briefing on the motion to dismiss, and hard-fought mediation efforts). *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

## 2.    The Settlement Is The Result Of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B). A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel. *Wal-Mart*, 396 F.3d at 116. Here, as set forth in detail above (Sec. III.D., *supra*), the Parties engaged in a lengthy mediation process with Jed Melnick, Esq. The arm's-length nature of the settlement negotiations, and the involvement of a mediator with substantial experience mediating complex securities class actions, supports the conclusion that the Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a

11

"mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

### 3. The Settlement Is An Excellent Result For The Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).[8] As discussed below, each of these factors supports preliminary approval.

### a. Complexity, Expense and Duration of Litigation

This Action involved alleged violations of the federal securities laws, and Plaintiffs and Lead Counsel believe the claims asserted against Defendants have merit. They acknowledge, however, the expense and duration of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability, loss causation, and damages (as discussed below). Assuming Plaintiffs' claims were certified under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the Action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor. Were the litigation to continue, a

---

[8] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'"). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b.    Establishing Liability

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'" *Id.* at 694. While Lead Counsel believes Plaintiffs' claims have merit, they also recognize substantial obstacles to proving liability. When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

At the time the Settlement was reached, the Court had not ruled on Defendants' motion to dismiss. While Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants argued their statements were not materially false and misleading; rather, they were true statements of opinion, and therefore, subject to the heightened pleading standards of *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015). Additionally, Defendants asserted that certain challenged statements were forward-looking and thus protected under the PSLRA safe-harbor, while others amounted to inactionable corporate puffery.

Moreover, Defendants argued that scienter was not adequately alleged, and they genuinely believed they would secure FDA approval for Vicineum. In support of their arguments, Defendants claimed that the FDA provided positive feedback to Sesen Bio throughout the Class

13

Period by, among other things, granting Fast Track status and Priority Review, informing Sesen Bio that an AdCom meeting and confirmatory trial was not required, not issuing any "Warning Letters" or Discipline Review Letters, and agreeing on Vicineum's label's final wording.

While Plaintiffs and Lead Counsel strongly disagreed with the import of Defendants' claims, they were not meritless, and had the litigation continued there is simply no guarantee that the trier of fact would have adopted Plaintiffs' view of the case. Indeed, the scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

Additionally, this Action did not have certain factors that would have made it more likely for Plaintiffs to successfully defeat Defendants' motion to dismiss (and potentially future summary judgment motions). For example, another indicia of risk is whether there has been a restatement. When companies restate their financials, they are admitting a material misstatement of their financial reporting. A case predicated on a restatement is, therefore, less risky because the misstatement and materiality elements of a securities fraud claim are already met. *See In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744 at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement). Here, there was no such restatement.

Similarly, "[o]ne proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter." *Dairy*

14

*Farmers of Am.*, 80 F. Supp. 3d 838, 848 (N.D. Ill. 2015).  "This inquiry provides insight into whether class counsel benefitted from the work of others, which acts a red flag for judges assessing fee petitions."  *Id.*  In the instant case, no civil or criminal charges have been filed by the SEC or DOJ or any other governmental agency.  As such, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class."  *Meredith Corp. v. SESAC*, *LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015).

In short, this case lacked several strong factors that often support liability and provide a roadmap for proving fraud, such as a corporate restatement or a companion SEC or DOJ action. The risk to Plaintiffs was high and, consequently, this factor militates in favor of preliminary approval.  *See Xcel Energy*, 364 F. Supp. 2d at 995 (noting the "case did not benefit from meaningful governmental investigations" and it did not involve a "a restatement of financials").

### c.      Risks of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Sec. V.B., *infra*, the class has not yet been certified, and Plaintiffs are aware there is a risk the Court could disagree, or that the class period could be shortened based on decisions related to loss causation.  Even if the Court were to certify the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").  Thus, the risks and uncertainty surrounding class certification also support preliminary approval of the Settlement, as Defendants undoubtedly would have challenged class certification.  *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

15

#### d.      Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prods. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  Here, the proposed Settlement provides for a non-revisionary cash payment of $21,000,000 for the benefit of the Settlement Class.  This is an excellent result in light of the significant risks of continued litigation.  Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on all their claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' best case scenario—the total *maximum* damages potentially available in this Action would be approximately $342 million.  Thus, the $21 million Settlement represents a recovery of 6.14%, which is more than three times the median recovery of 1.8% of estimated damages in securities class actions in 2021.  *See* Ex. 2, NERA Report at p. 24 (Fig. 22).

#### 4.      Rule 23(e)(2)(C)(iii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors either supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23 (e)(2)(C)(ii):**  The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for

16

processing claims and efficiently distributing the Net Settlement Fund. Here, A.B. Data, Ltd. ("A.B. Data"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 25% to compensate them for the services they have rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 25% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See In re Genworth Financial, Inc. Sec. Litig.*, Case No. 14-cv-02392-AKH, ECF No. 178 (S.D.N.Y. Nov. 16, 2017) (awarding 30% attorney fee in securities class action) (Ex. 4); *Munoz v. China Expert Tech, Inc.*, Case No. 07-10531-AKH, ECF No. 276 (S.D.N.Y Feb. 20, 2014) (awarding 25% attorney fee in securities class action) (Ex. 5). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Ex. 1 (Stipulation) at ¶17.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement

Class Members who collectively purchased over a certain threshold of Sesen Bio common stock request exclusion from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

### 5.    The Settlement Treats All Members Of The Class Equitably

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, detailed in the proposed Notice (Ex. A-1 to Ex. 1), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.[9]  Courts have repeatedly approved similar plans.  *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

### 6.    The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Grinnell* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.  These factors also support preliminary approval.

**The Stage of the Proceedings and the Amount of Discovery Completed:**  This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear*

---

[9] Sesen Bio Call and Put Option trading accounted for less than 2.0% of total dollar trading volume for Sesen Bio Securities during the Settlement Class Period.  As such, claims for Sesen Bio Call and Put Option transactions are allotted 2.0% of the Net Settlement Fund pursuant to the Plan of Allocation.

*Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012).  Here, Plaintiffs conducted an extensive investigation into Sesen Bio, including, *inter alia*: interviewing former employees; analyzing the Company's myriad SEC filings and regulatory filings; and consulting with FDA, loss causation and damages experts.  Moreover, the Parties submitted substantial briefing relating to the motion to dismiss, exchanged detailed mediation briefs, Defendants produced the equivalent of over one-hundred and fifty thousand pages of key documents to Plaintiffs, including CEO and CFO emails and board of director materials from the Settlement Class Period.  In addition, Lead Counsel used the documents to interview the Company's CEO for four hours.  The fact that there has been no formal discovery in the Action does not weigh against preliminary approval, especially given the PSLRA discovery stay in securities class actions.  *See, e.g.*, *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

**The Ability of Defendants to Withstand a Greater Judgment:**  "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).  Here, the Company was in the pre-revenue stage and, as a result of the FDA's complete response letter and subsequent communications, it needed to initiate a new clinical trial that would require several years and hundreds of millions of dollars to complete.  Given the significant time required to get to trial and resolve all appeals in this Action, there was a substantial risk that the Company's cash resources would have been depleted before Plaintiffs could obtain any significant recovery for the Settlement

19

Class.  In addition, the Settlement Amount was greater than all of the Company's available D&O insurance.  Under these circumstances, ability to pay cuts strongly in favor of the Settlement.  *In re AOL Time Warner, Inc.*, 2006 WL 903236, at \*12 (S.D.N.Y. Apr. 6, 2006) ("the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair.").

### B.  Certification Of The Settlement Class Is Appropriate

#### 1.  The Settlement Class Satisfies The Requirements Of Rule 23(a)

**Numerosity:**  "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period."  *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).  Here, the Settlement Class is comprised of purchasers of Sesen Bio common stock and/or Sesen Bio call options, and/or those who wrote Sesen Bio put options.  During the Settlement Class Period, Sesen Bio actively traded on the NASDAQ with millions of shares traded in that period.  Accordingly, there are likely to be hundreds, if not thousands of Settlement Class Members, thereby satisfying numerosity.  *See id.* ("Sufficient numerosity can be presumed at a level of forty members or more.").

**Common Questions:**  Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions."  *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012).  Here, questions of law and fact regarding Plaintiffs' Exchange Act claims will be common to the Settlement Class, including whether Defendants' representations to the investing public during the Settlement Class Period were "materially misleading."  These questions are susceptible to common answers because their resolution does not differ based on the plaintiff's identity.  Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.  *In re MF Glob. Holdings Ltd. Inv.*

*Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015).

**Typicality:** Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). Plaintiffs' claims are typical of the Settlement Class because they are based on the alleged misrepresentations and omissions. Thus, any Settlement Class Member's claim arising from these misrepresentations and omissions will necessarily rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**Adequacy:** As explained in Sec. V.A.1., *supra*, Plaintiffs and Lead Counsel are adequate representatives. First, Plaintiffs and Settlement Class Members purchased Sesen Bio common stock, call options and/or wrote put options during the Settlement Class Period, and they were all injured by Defendants' allegedly materially false statements and omissions. Plaintiffs were highly motivated to recover as much as possible in damages for the Settlement Class in light of their significant losses. *Patriot*, 828 Fed.Appx. at 764. If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims. *See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Second, Plaintiffs demonstrated their commitment to this litigation by retaining qualified counsel. *See Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *18 (S.D.N.Y. Aug. 13, 2018) (appointing GPM as class counsel and noting that "GPM has had extensive experience serving as

21

lead or co-lead counsel in class action securities litigation.")

### 2.    The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

**Common Questions Predominate:**  Predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015).  The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

Here, there are common questions of law and fact involving violations of the federal securities laws based on a common course of conduct directed at the entire Settlement Class, and these questions predominate over any individualized questions that may exist.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007) ("The common issues in this action include whether defendants issued materially false and misleading statements . . . , scienter, reliance, and causation.  All plaintiffs will rely on the same or substantially similar documents, statements, and legal theories to prove the defendants' liability.").  Predominance has, therefore, been satisfied.  *See id.*; *see also AOL Time Warner*, 2006 WL 903236, at *5 (predominance readily met because "[a]llegations of [d]efendants' misrepresentations and the improper inflation of AOL's accounting revenues underlie the factual and legal claims of every Class Member").

**Class Action Is Superior:**  Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  FED. R. CIV. P. 23(b)(3).

22

Securities suits easily satisfy Rule 23(b)(3)'s superiority requirement because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

### 3. The Court Should Appoint Lead Counsel As Counsel For The Settlement Class

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

GPM was appointed Lead Counsel in October 2021. As set forth above in Sec. III, *supra*, Lead Counsel devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter. Moreover, as explained in Sec. V.A.1., *supra*, and as can be seen in the firm's resume, Lead Counsel are experienced in handling class action litigation and are

23

highly familiar with securities class action litigation. Ex. 6 (GPM firm resume).  For these reasons, among others, Lead Plaintiffs respectfully request that the Court appoint Lead Counsel to serve as Class Counsel.  *See Wilson*, 2018 WL 3913115, at *18 (appointing GPM as class counsel).

**C.      The Court Should Approve The Proposed Form And Method Of Notice To The Settlement Class**

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, including through the stock transfer records maintained by Sesen Bio during the Settlement Class Period.  The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice.  The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses.  The Notice also will provide specifics on the date, time and place of the Settlement Hearing, and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class.  In addition to mailing the Notice and Claim Form, the Summary Notice will be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.

The proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.  *See, e.g., City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008 WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008).  Accordingly, Plaintiffs submit that the proposed notice and related procedures are appropriate and should be approved.

24

## VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The specific timing of events is determined by the date on which the Preliminary Approval Order is entered and the date on which the Settlement Hearing is scheduled.  In order to allow sufficient time for the notice program, Plaintiffs request the Court schedule the Settlement Hearing for a date not earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 7) | Not later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶ 26) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶ 13, 17) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience |

## VII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the requested relief.

DATED: August 16, 2022                    **GLANCY PRONGAY & MURRAY LLP**


By: *Matthew M. Houston*
Matthew M. Houston (MH-2218)
745 Fifth Avenue, 5th Floor
New York, New York 10151
Telephone: (212) 935-7400
Facsimile: (212) 756-0346
mhouston@glancylaw.com

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 358
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

*Attorneys for Lead Plaintiffs and the Settlement Class*

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of August 2022, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Matthew M. Houston*
Matthew M. Houston
