**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| IN RE SESEN BIO, INC. SECURITIES LITIGATION | Case No. 1:21-cv-07025-AKH |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND**
**<u>PLAN OF ALLOCATION</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STANDARDS FOR FINAL APPROVAL UNDER RULE 23(e) AND *GRINNELL*........ 4

III.  ARGUMENT.................................................................................................... 5

       A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors
             Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors ........................ 5

             1.    Plaintiffs And Counsel Adequately Represented The Settlement Class..... 5

             2.    The Settlement Was Reached After Substantial Litigation And Arm's-
                   Length Negotiations Between Experienced Counsel Conducted Under The
                   Auspices Of A Well-Respected Mediator.................................................. 7

             3.    The Settlement Is An Excellent Result For The Settlement Class In
                   Light Of The Benefits Of The Settlement And The Risks Of Continued
                   Litigation.................................................................................................. 9

                   (a)   Complexity, Expense And Duration Of Litigation ........................ 9

                   (b)   Risks Of Establishing Liability And Damages ............................ 10

                         (i)    Risks To Proving Liability................................................. 10

                         (ii)   Risks To Proving Loss Causation And Damages ............. 12

                   (c)   Risks Of Maintaining Class Action Status................................... 13

                   (d)   Range Of Reasonableness In Light Of The Best Possible Recovery
                         And Attendant Risks Of Litigation .............................................. 14

             4.    Rule 23(e)(2)(C)..................................................................................... 15

             5.    The Settlement Treats All Members Of The Settlement Class Equitably
                   Relative To Each Other........................................................................... 16

             6.    The Settlement Class's Reaction To The Settlement Supports Final
                   Approval ................................................................................................ 17

             7.    The Ability Of Defendants To Withstand A Greater Judgment ............... 18

       B.    The Plan Of Allocation Is Fair And Reasonable ................................................ 18

IV.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED........................... 21

V.    THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA AND DUE PROCESS ................................................................................................................ 21

VI.    CONCLUSION ............................................................................................................... 23

## TABLE OF AUTHORITIES

CASES

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000).................................................................................................. 6

*Beach v. JPMorgan Chase Bank, N.A.*,
    2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) ....................................................................... 5

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) .................................................................................... 13

*Christine Asia Co. v. Yun Ma*,
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................................................... 12, 16, 19, 20

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974)................................................................................... 5, 9, 10, 14

*City of Providence v. Aéropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ....................................................................... 8

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001).................................................................................................. 8

*Dornberger v. Metro. Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ...................................................................................... 23

*Dura Pharms., Inc., v. Broudo*,
    544 U.S. 336 (2005)........................................................................................................... 12

*Fishoff v. Coty Inc.*,
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ...................................................................... 12

*Gross v. GFI Grp., Inc.*,
    784 F. App'x. 27 (2d Cir. Sept. 13, 2019) ......................................................................... 11

*In re AOL Time Warner, Inc.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)................................................................... 10, 18

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. Nov. 9, 2012).................................................................. 14

*In re China Med. Corp. Sec. Litig.*,
  2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ................................................................ 9

*In re Citigroup, Inc. Sec. Litig.*,
  965 F. Supp. 2d 369 (S.D.N.Y. 2013)......................................................................... 17

*In re EVCI Career Colls.*,
  2007 WL 2230177 (S.D.N.Y. July 27, 2007) ........................................................... 6, 8

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015).............................................................. 8, 13

*In re Facebook, Inc., IPO Sec. & Deriv. Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. Nov. 26, 2018)......................................................... 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)........................................................................................ 12, 13

*In re FLAG Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................................................. 9, 14

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. Nov. 24, 2004) ................................................................ 10

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019)........................................................................ 9, 10, 14

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................................................... 20

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. June 20, 2012) ................................................................. 19

*In re Marsh & McLennan Co., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................... 13, 19

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................... 17

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
  246 F.R.D. 156 (S.D.N.Y. Sept. 5, 2007) .................................................................. 21

*In re Metlife Demutualization Litig.*,
  689 F. Supp. 2d 297 (E.D.N.Y. 2010) ....................................................................... 18

*In re NASDAQ Mkt. Makers Antitrust Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) .................................................................................. 7

*In re Patriot Nat'l, Inc. Sec. Litig.*,
  2020 WL 5868283 (2d Cir. Oct. 2, 2020) .................................................................... 6

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................... 4, 5

*In re WorldCom, Inc. Sec. Litig.*,
  388 F.Supp.2d 319 (S.D.N.Y. 2005) .......................................................................... 18

*Kalnit v. Eichler*,
  99 F. Supp. 2d 327 (S.D.N.Y. 2000) .......................................................................... 12

*Maley v. Del Global Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002) ................................................................... 10, 17

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) .................................................................................................. 11

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................................................. 7

*Too v. Rockwell Medical, Inc.*,
  2020 WL 1023435 (E.D.N.Y. Feb. 26, 2020) ............................................................ 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ........................................................................ 6, 10, 14, 21

*Yang v. Focus Media Holding Ltd.*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............................................................... 8

STATUTES

15 U.S.C. § 78u-4(a)(7) .............................................................................................. 22

RULES

Fed. R. Civ. P. 23 .............................................................................................. *passim*

v

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs Ryan Bibb, Rodney Samaan, Lionel Dreshaj, and Benjamin Dreshaj (collectively, "Plaintiffs"),[1] on behalf of themselves and the Settlement Class, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement and Plan of Allocation.

## I.   INTRODUCTION[2]

After a hard-fought litigation, Plaintiffs and Defendants have agreed to settle all claims in the Action in exchange for a non-reversionary cash payment of $21,000,000. The Settlement is an excellent result for the Settlement Class, especially when juxtaposed against the many risks inherent in this litigation and considering that the Settlement is greater than available insurance.

While Plaintiffs and Lead Counsel believe their claims are meritorious, they recognize the substantial challenges to establishing liability and achieving (and collecting upon) a greater recovery. Sesen Bio has and will continue to contest each element of Plaintiffs' claims. For example, Defendants strenuously argued, and would likely continue to argue, among other things, that: (1) they had fully and accurately disclosed Vicineum's clinical trial data and potential side effects; and (2) they had no motive to commit fraud and in fact believed that the FDA would

---

[1] Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated August 3, 2022 (ECF No. 88-1), or in the concurrently filed Declaration of Garth Spencer in Support of: (I) Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Spencer Declaration" or "Spencer Decl."). Citations to "¶__" or "Ex. __" in this memorandum refer to paragraphs in, or exhibits to, the Spencer Declaration. Unless otherwise indicated, all emphasis is added, and all internal quotation marks and citations are omitted.

[2] The Spencer Declaration is an integral part of this submission. For the sake of brevity, the Court is respectfully referred to it for a detailed description of, *inter alia*: the factual background and procedural history of the Action (¶¶19-26); the nature of the claims asserted (¶17); the mediation and negotiations leading to the Settlement (¶¶27-33); the risks and uncertainties of continued litigation (¶¶34-47); and the terms of the Plan of Allocation of the Net Settlement Fund (¶¶54-65).

1

approve Vicineum.  In support of their arguments, Defendants claimed the FDA provided positive feedback to Sesen Bio throughout the Settlement Class Period by, among other things, granting Fast Track status and Priority Review, informing Sesen Bio that an FDA Advisory Committee meeting and confirmatory trial was not required, not issuing any "Warning Letters" or Discipline Review Letters, and agreeing on Vicineum's label's final wording.

Moreover, if Plaintiffs successfully won a post-trial appeal, there is no guarantee that they would succeed in collecting a judgment.  The $21,000,000 Settlement Amount exceeds Defendants' insurance available to contribute to this Action, meaning that any possibly larger recovery on a final judgment could only come from *additional* contributions of Defendants' own assets and, absent settlement, the amount of available insurance will continue to erode..  Since the end of the Settlement Class Period, Sesen Bio has paused clinical development of Vicineum, has experienced substantial operating losses, has sought to re-orient its business via a merger with another clinical stage biopharmaceutical company, and has seen its common stock trade below $1.00 for over a year.  In short, collectability absent Settlement was of great concern.

The Settlement also removes the significant risks that lay ahead in summary judgment, trial, and any eventual appeal.  An adverse decision at any one of these litigation milestones could result in a zero—or substantially reduced—recovery.  In contrast, the Settlement represents a recovery of 6.14% of the total *maximum* damages potentially available in this Action, which is well above the 1.8% median recovery in securities class action settlements.  *See* Ex. 6 at 24 (Fig. 22). The Settlement is, therefore, substantively fair, reasonable and adequate.

Furthermore, the process by which the Settlement was obtained evidences a lack of collusion amongst the Parties and supports a finding of procedural fairness.  As described in detail in the Spencer Declaration, prior to reaching the Settlement, Lead Counsel, *inter alia*: conducted

an extensive investigation into Sesen Bio's allegedly wrongful acts; worked with an investigator to locate and interview relevant former employees and third parties; consulted with experts in the fields of loss causation, damages, and Food and Drug Administration ("FDA") and European Medicines Agency ("EMA") regulations; drafted the 77-page consolidated amended complaint ("Amended Complaint"); engaged in substantial briefing opposing Defendants' motion to dismiss; conducted significant informal discovery, which included review and analysis of the 39,200 files (equating to 151,403 pages) produced by Sesen Bio, and an interview with Sesen Bio's CEO, Defendant Cannell; and participated in a lengthy mediation process under the auspices of a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS.  ¶¶19-31.  Under these circumstances, it simply cannot be disputed that the Settlement is the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with a well-respected mediator.  Because the Settlement is substantively and procedurally fair, reasonable and adequate, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Plaintiffs also move for approval of the proposed Plan of Allocation of the Net Settlement Fund.  The Plan of Allocation was developed in conjunction with Plaintiffs' damages expert and is designed to fairly and equitably distribute the proceeds of the Settlement to Settlement Class Members.  ¶¶54-65.  Plaintiffs believe that the Plan of Allocation—which treats all similarly situated Settlement Class Members the same—is fair and reasonable and, as such, that it too should be approved.

Finally, the notice program constituted the "best notice ... practicable under the circumstances" and thus satisfies Rule 23 and due process.  The Claims Administrator mailed a total of 51,742 Notice Packets to potential Settlement Class Members and their nominees, caused the Summary Notice to be published once in *Investor's Business Daily* and released once over *PR*

*Newswire*, and made the Notice, Claim Form, and other important documents available on a dedicated website. Ex. 5 ("Schachter Decl.") at ¶¶9, 10, 12. While the deadline to request exclusion or object to the Settlement has not yet passed, it is indicative of the high quality of the Settlement that no objections or requests for exclusion have been received to date. *Id.* at ¶¶15-16.

For these reasons, and those set forth below and in the Spencer Declaration, Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation and grant final certification of the Settlement Class for settlement purposes.

## II.    STANDARDS FOR FINAL APPROVAL UNDER RULE 23(e) AND *GRINNELL*

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).[3] Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)    have the class representatives and class counsel adequately represented the class;
(B)    was the proposal negotiated at arm's length;
(C)    is the relief provided for the class adequate, taking into account:
    (i)    the costs, risks, and delay of trial and appeal;
    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)    the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)    does the proposal treat class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2). "Paragraphs (A) and (B) constitute the 'procedural' analysis factors, and examine 'the conduct of the litigation and of the negotiations leading up to the proposed settlement.'" *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) quoting FED. R. CIV. P. 23 Advisory Committee Notes to 2018

---

[3] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

Amendments, 324 F.R.D. 904, 919 (2018). "Paragraphs (C) and (D) constitute the 'substantive' analysis factors, and examine '[t]he relief that the settlement is expected to provide to class members ... .'" *Id*.

These factors do not, however, "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e) advisory committee's notes to 2018 amendment, 324 F.R.D. at 918; *see also In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. at 29. Thus, the Second Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545, at *2 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in FED. R. CIV. P. 23(e)(2) and *Grinnell*). As set forth below, the proposed Settlement satisfies the criteria for final approval under the four Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Grinnell* factors.

## III.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors

#### 1.    Plaintiffs And Counsel Adequately Represented The Settlement Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class

5

representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 2020 WL 5868283, at *3 (2d Cir. Oct. 2, 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class; and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.").[4]

Here, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests. Plaintiffs, like all other Settlement Class Members, are investors who purchased Sesen Bio securities during the Settlement Class Period and suffered damages as a result of Defendants' allegedly wrongful conduct. Their interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See Patriot*, 2020 WL 5868283, at *3 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member."). In addition, Plaintiffs diligently oversaw the litigation, communicated with their counsel on a regular basis and were fully engaged in the settlement process. *See* Plaintiffs' Declarations (Ex. 1 (Bibb Decl.) ¶5; Ex. 2 (Samaan Decl.) ¶5; Ex. 3 (L. Dreshaj Decl.) ¶5; Ex. 4 (B. Dreshaj Decl.) ¶5). Plaintiffs' active participation in the Action reinforces the reasonableness of the Settlement. *See In re EVCI Career Colls.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement

---

[4] *Accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 106–07 (2d Cir. 2005) ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

6

reached under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness.").

Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have long and successful track records representing investors in such cases. *See* Ex. 10 (Lead Counsel's firm resume); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (judgment of counsel "who have extensive experience in prosecuting complex class actions" is entitled to "great weight."). Moreover, Lead Counsel vigorously prosecuted the Settlement Class's claims, and were acutely aware of the case's strengths and weaknesses prior to entering the Settlement, including the limited sources of recovery. *See* ¶¶8, 19-31 (detailing counsel's extensive investigation of Sesen Bio, drafting of the amended complaint, work with FDA, market efficiency, and loss causation/damages experts, substantial briefing of Sesen Bio's motion to dismiss, informal discovery efforts, exchange of detailed mediation statements and hard-fought mediation efforts). Based on their expertise, experience, and the work done in this case, Lead Counsel possesses a thorough understanding of the strengths and weaknesses of the Action, and Lead Counsel firmly believes that final approval of the Settlement is in the best interests of the Settlement Class. *See* ¶14; *In re NASDAQ Mkt. Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts consistently give "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

> **2.    The Settlement Was Reached After Substantial Litigation And Arm's-Length Negotiations Between Experienced Counsel Conducted Under The Auspices Of A Well-Respected Mediator**

The Court must also consider whether the settlement was "negotiated at arm's-length" in

weighing approval of a class action settlement.  Fed. R. Civ. P. 23(e)(2)(B).[5]  In application, "[a]

proposed class action settlement enjoys a strong presumption that it is fair, reasonable and adequate

if, as is the case here, it was the product of arm's-length negotiations conducted by capable counsel,

well-experienced in class action litigation arising under the federal securities laws." *In re EVCI*

*Career Colleges Holding Corp. Sec. Litig.*, 2007 WL 2230177, at \*4 (S.D.N.Y. July 27, 2007);

*see also City of Providence v. Aéropostale, Inc.*, 2014 WL 1883494, at \*4 (S.D.N.Y. May 9, 2014)

("Absent fraud or collusion, the court should be hesitant to substitute its judgment for that of the

parties who negotiated the settlement."), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d

Cir. 2015).

Here, the Settlement was reached only after extensive arm's-length negotiations between

experienced counsel, who thoroughly evaluated the merits of the claims and were well-aware of

the strengths and weaknesses of the case following a hard-fought litigation.  ¶¶12-13, 19-26.  And,

the mediation process—which included a full-day mediation where the Parties were unable to

reach an agreement, followed by weeks of additional negotiations—was led by Mr. Melnick, an

experienced and well-respected neutral.  ¶30.  The manner by which the Settlement was achieved

supports the conclusion that the Settlement is fair and was achieved free of collusion.  *See D'Amato*

*v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in … settlement

negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *Yang*

*v. Focus Media Holding Ltd.*, 2014 WL 4401280, at \*5 (S.D.N.Y. Sept. 4, 2014) ("The

participation of this highly qualified mediator [Jed D. Melnick, Esq.] strongly supports a finding

---

[5] This "procedural" fairness determination also encompasses the third *Grinnell* factor, which assesses "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 2015 WL 6971424, at \*4 (S.D.N.Y. Nov. 9, 2015).

that negotiations were conducted at arm's length and without collusion."); *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

### 3. The Settlement Is An Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).[6] As discussed below, each supports the Settlement's approval.

### (a) Complexity, Expense And Duration Of Litigation

"[I]n evaluating the settlement of a securities class action, federal courts, including this Court, 'have long recognized that such litigation is notably difficult and notoriously uncertain.'" *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010). This Action involved alleged violations of the federal securities laws, and Plaintiffs and Lead Counsel believe the claims asserted against Defendants have merit. They acknowledge, however, the expense and duration of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability, loss causation, and damages (as discussed below).

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

Assuming Plaintiffs' claims were certified under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the Action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor. Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class. *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'"). By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### (b)    Risks Of Establishing Liability And Damages

In assessing the fairness, reasonableness, and adequacy of a settlement, courts should consider the "risks of establishing liability [and] the risks of establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Analyzing these risks "does not require the Court to adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. Nov. 24, 2004); *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *11 (S.D.N.Y. Apr. 6, 2006) (same). In other words, "the Court should balance the benefits afforded to members of the Class and the immediacy and certainty of a substantial recovery for them against the continuing risks of litigation." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 364 (S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

### (i)    Risks To Proving Liability

At the time the Settlement was reached, the Court had not ruled on Defendants' motion to

10

dismiss. While Plaintiffs believe they effectively demonstrated that Defendants made materially false and misleading statements in violation of the federal securities laws, Defendants argued their statements were not materially false and misleading; rather, they were true statements of opinion, and therefore, subject to the heightened pleading standards of *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015). ¶40. Additionally, Defendants asserted that certain challenged statements were forward-looking and thus protected under the PSLRA safe-harbor, while others amounted to inactionable corporate puffery. *Id.*; *see also Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding the statement actionable).

Moreover, Defendants argued that scienter was not adequately alleged, and they genuinely believed they would secure FDA approval for Vicineum. ¶40. In support of their arguments, Defendants claimed that the FDA provided positive feedback to Sesen Bio throughout the class period by, among other things, granting Fast Track status and Priority Review, informing Sesen Bio that an AdCom meeting and confirmatory trial was not required, not issuing any "Warning Letters" or Discipline Review Letters, and agreeing on Vicineum's label's final wording. *Id.*

Additionally, Defendants argued that they had no motive to commit fraud as Sesen Bio insiders did not sell a single share of stock during the putative class period, and Individual Defendants did not otherwise personally profit from the alleged fraud. *See* ECF No. 73 at 5; ECF No. 77 at 3 ("No insider sold a single share of stock").[7] Defendants also argued that their lack of

---

[7] While Sesen Bio itself sold stock during the Class Period, Defendants cited cases finding that plaintiffs could not plead scienter based on such company stock sales. *See* ECF 73 at 38-39.

scienter and belief that the product would be approved was supported by the fact that Sesen Bio had begun making major investments into its planned commercial launch of the product, including the hiring of a substantial number of staff.  It simply made no sense to spend Sesen Bio's limited resources pointlessly.  The more plausible inference, according to Defendants, was that the Defendants truly believed the FDA was going to approve Vicineum. ¶40.  While Plaintiffs strongly disagreed with the import of Defendants' claims, they were not frivolous, and had the litigation continued there is simply no guarantee that the trier of fact would have adopted Plaintiffs' view of the case.  *See Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at \*12 (S.D.N.Y. Oct. 16, 2019) ("As with falsity, although Plaintiffs uncovered significant evidence that they believe supported a finding of Defendants' scienter, Defendants would have marshalled substantial evidence in opposition.").  Indeed, the scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim.  *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at \*2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

**(ii)     Risks To Proving Loss Causation And Damages**

Even if Plaintiffs established liability, they faced significant risks in proving loss causation and damages.  *See Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("It is well-established that plaintiffs alleging claims under Section 10(b) of the '34 Act must prove loss causation.").  For example, Plaintiffs would have to demonstrate that all the losses

were attributable to the fraud and not some other unrelated reason. ¶42. Defendants could claim this was not possible. *See FLAG Telecom*, 574 F.3d at 36 ("to establish loss causation, *Dura* requires plaintiffs to disaggregate those losses caused by 'changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events,' from disclosures of the truth behind the alleged misstatements").

Of course, in order to resolve all disputed issues regarding damages and loss causation, the Parties would have had to rely on expert testimony. ¶42. This creates further litigation risk because Plaintiffs could not be certain whether a jury would accept the view of its experts or of the well-qualified experts that Defendants would no doubt be able to present at trial. *See In re Facebook, Inc. IPO Sec. and Derivative Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation."); *In re Marsh & McLennan Co., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages.").

**(c)    Risks Of Maintaining Class Action Status**

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, a class has not yet been certified (absent preliminarily for purposes of settlement), and Plaintiffs are aware that there is a risk the Court could disagree. ¶37. Even if the Court were to certify a class, there is always a risk that it could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Thus, the risks and uncertainty surrounding certification also support approval of the Settlement, as Defendants

13

undoubtedly would have challenged class certification.  *See GSE*, 414 F. Supp. 3d at 694

("Although the risk of maintaining a class through trial is present in [every] class action … this

factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose

class certification if the case were to be litigated.").

> **(d)    Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation**

Courts typically analyze the last two *Grinnell* factors together.  *See Grinnell*, 495 F.2d at

463.  In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the

situation of the parties, and the exercise of business judgment in determining whether the proposed

settlement is reasonable."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at

\*20 (S.D.N.Y. Nov. 8, 2010)(quoting *Grinnell*, 495 F.2d at 462). A court's "determination of

whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not

involve the use of a mathematical equation yielding a particularized sum." *In re Bear Stearns Cos.,*

*Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 269 (S.D.N.Y. Nov. 9, 2012).  Instead, the

Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range

which recognizes the uncertainties of law and fact in any particular case and the concomitant risks

and costs necessarily inherent in taking any litigation to completion."  *Wal-Mart*, 396 F.3d at 119.

Here, Plaintiffs' damages expert estimates that if Plaintiffs had fully prevailed on all their

claims at summary judgment and after a jury trial, if the Court certified the same class period as

the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*,

Plaintiffs' **best-case scenario**—the total **maximum** damages **potentially** available in this Action

would be approximately $342 million.  ¶48.  Under this scenario, the $21 million settlement

represents a recovery of 6.14% of the Settlement Class's **maximum** estimated damages.  *Id*.  This

recovery is well above the median recovery of 1.8% in securities class actions settled in 2021, as

well as the median recovery of 2.3% for similar sized securities class actions (with estimated damages of $200-$399 million) from 2012-2021.  Ex. 6 (NERA Report) at p. 23 (Fig. 21) and p. 24 (Fig. 22).

Moreover, had Defendants prevailed on any of their liability or damages arguments, recoverable damages would have been substantially reduced, if not altogether eliminated.  ¶49. And, even if Plaintiffs were successful at trial, Defendants could have challenged the damages of each and every large class member in post-trial proceedings, substantially reducing any aggregate recovery.  The Settlement Amount is, therefore, fair and reasonable, especially when juxtaposed against the significant obstacles that Plaintiffs would need to overcome in order to prevail in this complex securities fraud litigation.  *See In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 414 (S.D.N.Y. Nov. 26, 2018) ("Because Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery.").

### 4.    Rule 23(e)(2)(C)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors supports approval of the Settlement.

**Rule 23(e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  The Claims Administrator will process claims under Lead Counsel's guidance, allow Claimants an opportunity to cure claim

15

deficiencies or request the Court to review their claim denial, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. This proposed claims processing method is standard in securities class action settlements. It has been long found to be effective, as well as necessary, as neither Plaintiffs nor Sesen Bio possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.

**Rule 23(e)(2)(C)(iii):** The Notice stated that Lead Counsel would apply for a percentage of the common fund fee award in an amount not to exceed 25% to compensate them for services rendered on behalf of the Settlement Class. Consistent with Notice, Lead Counsel is applying for attorneys' fees in an amount equal to 18.5% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount). This request, which equates to a lodestar multiplier of 1.87, is reasonable in light of the work performed and the results obtained, and it is also consistent with awards in similar complex class action cases. *See* Fee Memorandum, §§ II.C.1. (percentage of the fund analysis) and II.C.2. (lodestar/multiplier analysis). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation, ¶17.

**Rule 23(e)(2)(C)(iv):** The Parties entered into a confidential agreement establishing certain conditions under which Defendants may terminate the Settlement if Settlement Class Members who collectively purchased a specific number of Sesen Bio securities request exclusion from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia*, 2019 WL 5257534, at *15.

### 5.  The Settlement Treats All Members Of The Settlement Class Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members

16

equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  ¶63.  Courts have repeatedly approved similar plans.  *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).).

### 6.   The Settlement Class's Reaction To The Settlement Supports Final Approval

The second *Grinnell* factor—the reaction of the class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object.  As required by Rule 23(e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement.  Schachter Decl., Ex. 5-A (Notice) at pp. 2-3, ¶¶75-77; 81-85.  As of December 9, 2022, a total of 51, 742 Notice Packets have been distributed to potential Settlement Class Members and their nominees.  Schachter Decl., ¶9.  To date, no requests for exclusion have been received, and no objections have been filed with the Court.  *Id.* ¶¶15-16; Spencer Decl., ¶¶5, 67.[8]   The Settlement Class's overwhelmingly positive reaction strongly supports final approval of the Settlement.  *See, e.g.*, *Maley*, 186 F. Supp. 2d at 362 ("It is well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy.").

---

[8] The deadline to request exclusion from, or to object to any aspect of, the Settlement is January 2, 2023.  If any objections or requests for exclusion are received after the date of this filing, they will be addressed on reply.

### 7.    The Ability Of Defendants To Withstand A Greater Judgment

Defendant's ability, or potential lack thereof, to withstand a greater judgment (*Grinnell* factor seven) weighs in favor of final approval.  Here, collecting a judgment larger than $21 million after trial and appeals was not a foregone conclusion.  As a result of the FDA's complete response letter and subsequent communications, approval of Vicineum would require a new clinical trial that would take several years and hundreds of millions of dollars to complete.  Since the end of the Settlement Class Period, Sesen Bio has paused clinical development of Vicineum, has experienced substantial operating losses, has sought to re-orient its business via a merger with another clinical stage biopharmaceutical company, and has seen its common stock trade below $1.00 for over a year.  ¶47.  Thus, there was no guarantee the Company would ever turn a profit.

Moreover, given the significant time required to get to trial and resolve all appeals in this Action, there was a substantial risk that the Company's cash resources would have been depleted before Plaintiffs could obtain any significant recovery for the Settlement Class.  In addition, the Settlement Amount is ***greater than all of the Company's available D&O insurance***.  ¶8.  And, the insurance was wasting.  Under these circumstances, ability to pay cuts strongly in favor of the Settlement.  *AOL Time Warner*, 2006 WL 903236, at *12 ("the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair.").[9]

### B.    The Plan Of Allocation Is Fair And Reasonable

"To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized – namely, it must be fair and adequate."  *In re WorldCom, Inc. Sec. Litig.*, 388 F.Supp.2d 319, 344 (S.D.N.Y. 2005).  "As numerous courts have held, a plan of

---

[9] Even if it did not, "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'"  *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010).

allocation need not be perfect." *Christine Asia*, 2019 WL 5257534, at \*15. Rather, "[w]hen formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 192 (S.D.N.Y. June 20, 2012); *see also Christine Asia*, 2019 WL 5257534, at 15-16. Thus, "[i]n determining whether a plan of allocation is fair, courts look largely to the opinion of counsel." *Marsh & McLennan*, 2009 WL 5178546, at \*13.

The proposed Plan of Allocation, developed by Plaintiffs' expert in conjunction with Lead Counsel, reflects an assessment of the damages Plaintiffs contend could have been recovered under the theories of liability asserted in the Action.[10]  ¶56.  More specifically, the Plan of Allocation reflects, and is based on, Plaintiffs' allegation that the price of Sesen Bio's securities were artificially inflated during the Settlement Class Period due to Defendants' alleged materially false and misleading statements and omissions.  *Id*.[11]  The same methodology would have been proffered by Plaintiffs at summary judgment and trial had the Action not settled.

An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including how many and what types of Sesen Bio securities the Claimant purchased, acquired, or sold during the Settlement Class Period, when that Claimant bought, acquired, or sold the securities, and the number of valid claims filed by other Claimants.  ¶64.  If a Claimant has an overall market *gain* with respect to his, her, or its transactions in Sesen securities during the relevant period, the Claimant is not entitled to recover under the Plan of Allocation.  *Id*.; Schachter

---

[10] The Plan of Allocation is detailed in the Notice.  *See* Schachter Decl., Ex. 5-A (Notice) at ¶¶48-73.

[11] Sesen Bio Call and Put Option trading accounted for less than 2.0% of total dollar trading volume for Sesen Bio Securities during the Settlement Class Period.  As such, claims for Sesen Bio Call and Put Option transactions are allotted 2.0% of the Net Fund Settlement Fund pursuant to the Plan of Allocation.

Decl., Ex. 5-A (Notice) at ¶¶66-67.  Moreover, if a Claimant purchased Sesen securities during the Settlement Class Period, but did not hold any of those securities through an alleged disclosure event, the Claimant is not a Settlement Class Member and would have no Recognized Loss under the Plan of Allocation, as any loss suffered would not have been caused by the revelation of the alleged fraud.  *Id.*

Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, subject to a $10 minimum distribution.  ¶65; Schachter Decl., Ex. 5-A (Notice) at ¶¶58, 68-70.  More precisely, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  ¶63; Schachter Decl., Ex. 5-A (Notice) at ¶¶58, 68-70.

If any funds remain after an initial distribution to Authorized Claimants, as a result of uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as they are cost effective.  ¶65 n.6; Schachter Decl., Ex. 5-A (Notice) at ¶71.  At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court.  *Id.*

Lead Counsel believe the Plan of Allocation will result in a fair and equitable distribution of the Settlement proceeds among Settlement Class Members who submit valid claims.  *See Too v. Rockwell Medical, Inc.*, 2020 WL 1023435, at *1 (E.D.N.Y. Feb. 26, 2020) (approving substantially similar plan of allocation); *Christine Asia*, 2019 WL 5257534, at *15-16 (same).  To date, no objections to the Plan of Allocation have been filed on this Court's docket.  ¶67. Accordingly, Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation.

*See In re Heritage Bond Litig.*, 2005 WL 1594403, at \*12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate.").

## IV.    THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's October 3, 2022, Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 96 at ¶ 1. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Preliminary Approval Brief (*see* ECF No. 87), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## V.    THE NOTICE PROGRAM SATISFIES RULE 23, THE PSLRA AND DUE PROCESS

Rule 23(e) and due process together require that notice of a settlement be "reasonable"— *i.e.*, it must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Wal-Mart Stores*, 396 F.3d at 114 (noting "[t]here are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements"); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 246 F.R.D. 156, 166 (S.D.N.Y. Sept. 5, 2007) ("Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice, so long as class counsel acted reasonably in choosing the means likely to inform potential class members.").

In accordance with the Preliminary Approval Order, A.B. Data, Ltd. Class Action Administration Company ("A.B. Data"), under the direction and supervision of its Senior Vice

President, Eric Schacter, the Court-appointed Claims Administrator: (a) mailed copies of the Notice Packet via first-class mail to all potential Settlement Class Members who could be identified with reasonable effort; and (b) notified brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of securities to either (i) mail the Notice Packet to potential Settlement Class Members, or (ii) provide A.B. Data with mailing information that would enable A.B. Data to notify potential Settlement Class Members.  Schachter Decl. ¶¶2-9.  As of December 14, 2022, a total of 51,742 potential Settlement Class Members and nominees were mailed Notice Packets.  *Id*. at ¶9.

As required by Fed. R. Civ. P. 23(c)(2)(B), the Notice Packet informs Settlement Class Members of, among other things: (a) the nature of the Action; (b) the Settlement Class definition; (c) the claims and defenses asserted; (d) a description of the terms of the Settlement; (e) the right of a Settlement Class Member to enter an appearance; (f) the right of a Settlement Class Member to request exclusion from the Settlement Class, and the instructions, manner, and time for doing so; (g) the right of a Settlement Class Member to object to any aspect of the Settlement, and the instructions, manner, and time for doing so; (h) the binding effect of the Settlement on Settlement Class Members that do not elect to be excluded; and (i) the date and time of the final Settlement Hearing.  *See* FED. R. CIV. P. 23(c)(2)(B); Schachter Decl., Ex. 5-A (Notice).[12]

The notice program also satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth in plain, easily understandable language: (a) a cover page summarizing the

---

[12] The Notice further advises that Lead Counsel will apply to the Court for an award of attorneys' fees on behalf of all Plaintiffs' Counsel in an amount not to exceed 25% of the Settlement Fund, as well as reimbursement of Litigation Expenses, including an application for reimbursement of the reasonable costs and expenses incurred by Lead Plaintiffs directly related to their representation of the Class, and explains that Settlement Class Members may object to any aspect of the fee and expenses request. *Id*. (Notice) at ¶¶5, 74.

22

information in the Notice; (b) a statement of plaintiff recovery, and the estimated recovery per damaged share; (c) a statement of potential outcomes of the case; (d) a statement of attorneys' fees or costs sought; (e) identification of lawyers' representatives; and the (f) reasons for settlement. Schachter Decl., Ex. 5-A (Notice).

In addition to ensuring the dissemination of the Notice Packet, A.B. Data caused the Summary Notice to be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire* on November 14, 2022. Schachter Decl. ¶10, Exs. 5-B and 5-C. A.B. Data also posted downloadable versions of the Stipulation, Preliminary Approval Order, Notice, Claim Form, and Amended Complaint on the Settlement Website (*id.* at ¶12), and established a toll-free number to respond to Settlement Class Member inquiries. *Id.* ¶11.

These various methods of notice provided all the information necessary for Settlement Class Members to make an informed decision regarding the Settlement. Moreover, courts routinely find the combination of mailed and publication notice sufficient to satisfy due process requirements. *See, e.g.*, *Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 123-24 (S.D.N.Y. 2001) (approving notice plan and concluding that "reasonable efforts were taken to notify all members of the class" where notice was delivered by direct mail and by publication notice).

## VI.    CONCLUSION

For the reasons stated herein and in the Spencer Declaration, Plaintiffs respectfully request that the Court grant final approval of the Settlement, certify the Settlement Class, and approve the Plan of Allocation.

DATED: December 19, 2022                    **GLANCY PRONGAY & MURRAY LLP**


By: *Matthew M. Houston*
Matthew M. Houston (MH-2218)
745 Fifth Avenue, 5th Floor
New York, New York 10151
Telephone: (212) 935-7400
Facsimile: (212) 756-0346
mhouston@glancylaw.com

Garth Spencer (GS-7623)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
gspencer@glancylaw.com

*Attorneys for Lead Plaintiffs and the Settlement Class*

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.


Dated: December 19, 2022                    */s/ Matthew M. Houston*
                                            Matthew M. Houston