**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE SESEN BIO, INC. SECURITIES
LITIGATION

Case No.: 1:21-cv-07025-AKH

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED**
**<u>MOTION FOR CLASS DISTRIBUTION ORDER</u>**

Court-appointed Lead Plaintiffs Ryan Bibb, Rodney Samaan, Lionel Dreshaj, and Benjamin Dreshaj (collectively, "Plaintiffs"), respectfully submit this memorandum of law in support of their unopposed motion ("Motion") for entry of the Proposed Class Distribution Order ("Class Distribution Order") in the above-captioned action (the "Action").[1]  If entered by the Court, the Class Distribution Order will, among other things, (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.  The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Schachter Declaration. *See* Schachter Decl. ¶¶39(a)-(f).

## I.    BACKGROUND

On August 3, 2022, the Parties entered into the Stipulation, the terms of which established a $21,000,000 Settlement Fund for the benefit of the Settlement Class, consisting of all persons and entities that purchased or otherwise acquired Sesen Bio, Inc. ("Sesen Bio") Common Stock, and/or Sesen Bio Call Options, and/or wrote Sesen Bio Put Options, between December 21, 2020 and August 17, 2021, inclusive (the "Settlement Class Period"), and who were damaged thereby. Excluded from the Settlement Class are: (a) Defendants; (b) any person who served as an executive officer and/or director of Sesen Bio during the Settlement Class Period, and members of their

---

[1]    All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated August 3, 2022 (ECF No. 88-1) (the "Stipulation"), or the concurrently filed Declaration of Eric A. Schachter in Support of Plaintiffs' Unopposed Motion for Class Distribution Order ("Schachter Decl." or "Schachter Declaration"), submitted on behalf of the Court-approved Claims Administrator, A.B. Data, Ltd. ("Claims Administrator").

Immediate Family; (c) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Sesen Bio; (d) any entity in which Defendants have or had a controlling interest during the Settlement Class Period; (e) any trust of which any Individual Defendant is the settlor or that is for the benefit of any Individual Defendant and/or member(s) of their Immediate Family; and (f) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (a) through (e) hereof. Also excluded from the Settlement Class were the persons who validly excluded themselves by submitting a request for exclusion that was accepted by the Court. *See* ECF No. 107.

The Court granted preliminary approval of the Settlement on November 16, 2020. ECF No. 96 (the "Preliminary Approval Order"). Pursuant to the Preliminary Approval Order, the Claims Administrator disseminated 52,050 copies of the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), along with the Proof of Claim and Release Form (the "Claim Form" and, together with the Notice, the "Notice Packet") to potential members of the Settlement Class, published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service), established case-specific website dedicated to the Settlement (www.SesenBioSecuritiesSettlement.com), and set up a toll-free telephone helpline. *See* Schachter Decl. ¶¶3, 5. The Notice and the Settlement Website provided Settlement Class Members with information about the Settlement, including the deadlines for requesting exclusion, objecting, and filing Claims. The Settlement Website also provided Settlement Class Members with access to downloadable documents relevant to the Settlement, such as the Stipulation, Notice, and Claim Form.

On February 1, 2023, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate. ECF No. 107. That same day, the Court entered an order approving the Plan of Allocation, which was explained in the Notice, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund. ECF No. 106.

Lead Counsel now request that the Court authorize: (1) the distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, Taxes and escrow fees) to Authorized Claimants; and (2) payment of the remaining 75% of the attorneys' fees and expenses that were awarded by this Court in its Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses dated February 1, 2023. *See* ECF No. 108, ¶4.

## II.    CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, postmarked or received no later than February 28, 2023. *See* ECF No. 101-5, Exhibit A at p. 2. The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. Schachter Decl., ¶¶19-26.

Of the 4,213 Claims submitted to and fully processed by the Claims Administrator, 623 were paper submissions, and 1,153 were online submissions through the online filing portal on the Settlement Website. *Id.*, ¶9. The remaining 2,437 Claims were Electronic Claims filed by E-Claim Filers, who are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants. *Id*., ¶¶9, 13. Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim

Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing reams of paper requiring manual data entry. *Id.* This process is designed to expedite the claims process.

If a paper or online Claim was deficient or defective, the Claims Administrator sent a letter to the Claimant, a sample of which is attached as Exhibit A to the Schachter Declaration. *Id.*, ¶¶19-20, Ex. A. The letter advised the Claimant that he, she, or it had twenty (20) days from the date of the letter to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.* at ¶20. Of the 1,776 paper and online Claims, the Claims Administrator sent deficiency letters for 895 Claims (or approximately 50%). *Id.,* ¶19. If an Electronic Claim was deficient or defective, the Claims Administrator sent an email to each E-Claim Filer with an attached spreadsheet containing detailed information associated with the accounts and indicating which of those accounts within the filing were deficient and/or rejected, samples of which are attached as Exhibits B and C to the Schachter Declaration respectively. *Id.*, ¶¶22-25, Ex. B & C. Of the 2,437 Electronic Claims, 1,498 (or approximately 61%) were incomplete or deficient and were filed by a total of 52 E-Claim filers. *Id.,* ¶22. The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible, and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Schachter Declaration, after the deficiency process was complete, the Claims Administrator determined that 2,148 Claims are acceptable and should receive a distribution. Schachter Decl., ¶¶34-35. This number includes 1,933 timely and valid claims, and 215 Late But Otherwise Eligible Claims (addressed in Section III below). *Id.* These

Claims represent a total Recognized Loss amount of $142,372,306.14.[2]  *Id.*, ¶¶34-35; Exs. E, F. The Claims Administrator also determined that 2,065 Claims are not eligible and should be rejected for the following reasons: (i) 537 Claims had no purchase(s) of Sesen Bio Common Stock, and/or Sesen Bio Call Options, and/or wrote Sesen Bio Put Options; (ii) 1,256 Claims did not result in a Recognized Claim under the Court-approved Plan of Allocation; (iii) 268 Claims were duplicates; (iv) 3 Claims were rejected for not providing the required backup documentation to support their transactions during the Settlement Class Period; and (v) 1 Claim was withdrawn.  *Id.*, ¶¶36-37(c); Ex. G.

### III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the February 28, 2023, claim filing deadline.  Although the Claims Administrator attempted to accept all eligible claims submitted after the deadline, there must be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place.  *See In re Gypsum Antitrust Cases,* 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001).  Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution.  Accordingly, the Claims Administrator imposed a cut-off date of July 3, 2023—approximately four months after the Court-imposed February 28, 2023, deadline.

---

[2]    The Recognized Loss amount is $134,409,935.42 for timely and valid Claims, and $7,962,370.72 for Late But Otherwise Eligible Claims.  *Id.*, ¶¶34-35.

Of the 4,213 Claims submitted, 490 Claims were received or postmarked after the initial February 28, 2023, deadline, but before the Claims Administrator's imposed cut-off of July 3, 2023. Schachter Decl., ¶29. Of these 490 Claims, 215 are otherwise eligible ("Late But Otherwise Eligible Claims"). *Id.* ¶¶35, 37(b), Ex. F. These 215 Late But Otherwise Eligible Claims have been recommended for payment. *Id.* Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit a Claim Form, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 150 (S.D.N.Y. 2020) (accepting "late but otherwise valid Proofs of Claim"); *In re Toyota Motor Corp. Sec. Litig.*, No. CV 10-922 DSF (AJWx), 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (accepting "Late but Otherwise Eligible Claims"). Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Schachter Decl., ¶¶35, 37(b); Ex. F.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims or responses to deficiency letters received after July 3, 2023, be included in the distribution. "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman*

*v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, Nos. 1:09–md–2070 (SHS), 1:07–cv–9901 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## IV.    THE COURT SHOULD REJECT THE ONE DISPUTED CLAIM

One Claimant disputes A.B. Data's determination and has requested Court review of the rejection of its Claim for having no Recognized Claim under the Court-approved Plan of Allocation. *See* Schacter Decl., ¶¶27-28, Ex. D; ECF No. 106 (Order Approving Plan of Allocation of Net Settlement Fund). As set forth in the Schacter Declaration, the Claimant seeking Court review had an ***overall market gain*** of $4,637 on the Claimant's transactions in Sesen Bio Common Stock. *See Id.*, Ex. D (showing calculations under the Plan of Allocation resulted in an overall market gain). Under the Plan of Allocation, which was set forth in the Notice, "[i]f a Claimant had a Market Gain with respect to his, her, or its overall transactions in Sesen Bio Securities during the Settlement Class Period, the value of the Claimant's Recognized Claim will be zero, and the Claimant will in any event be bound by the Settlement." ECF No. 101-5, Ex. A at ¶67. Numerous courts, including this one, have approved plans of allocation including market gain (or netting) provisions. *See, e.g., In re Cendant Corp. Sec. Litig.*, 454 F.3d 235, 246-47 (3d Cir. 2006) (upholding application of a "netting provision" providing that "all profits shall be subtracted from all losses on all transactions of CUC and Cendant publicly-traded securities during the class period to determine the net claim of each class member. If a class member made a net profit, the value of his, her or its claim shall be zero."); *In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *2-4 (S.D.N.Y. Dec. 29, 2014) (overruling objection based on objector's "aggregate gain" from class period transactions where plan of allocation provided: "[t]o the extent an Authorized Claimant had

an aggregate gain from his, her or its transactions in Citigroup common stock during the Class Period, the value of his, her or its total Recognized Loss will be zero.").

Accordingly, the Court should affirm A.B. Data's determination that the Claim should be rejected.

## V.    DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution").  *See* Schachter Decl., ¶39(a)(ii)-(iv).  Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Class Members who filed valid Claims will not be cashed promptly.  To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to uncashed checks, Lead Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY; VOID AND SUBJECT TO REDISTRIBUTION IF NOT NEGOTIATED WITHIN 120 DAYS OF DISTRIBUTION."  *Id*., ¶39(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution.  However, if after nine months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so.  *Id*., ¶39(b).  During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second

Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id*. Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible. *Id*., ¶39(c).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to Public Justice, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy. *See* Declaration of F. Paul Bland, Jr. of the Public Justice Foundation, ¶¶2-12 (including list of securities related cases in which Public Justice received court approval as the *cy pres* beneficiary); Schachter Decl., ¶39(c). The proposed Class Distribution Order filed concurrently herewith confirms the Settlement's provisions for such redistribution of any residue of the Net Settlement Fund.

## VI.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Plaintiffs respectfully request that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the

processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g., Wilson v. LSB Indus., Inc.*, No. 1:15-cv-07614-RA-GWG, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. 2020) (approving substantially similar language in order authorizing distribution of settlement proceeds); *In re Patriot Nat'l, Inc. Sec. Litig.*, No. 1:17-cv-01866-ER, 2021 WL 1040462, at *2 (S.D.N.Y. Mar. 18, 2021) (same); *In re Merrill Lynch & Co.,*

10

*Inc. Sec., Deriv.& ERISA Litig.*, No. 1:07-cv-9633 (JSR)(DFE), 2010 WL 11595033, at *2 (S.D.N.Y. Dec. 23, 2010) (same).

**VII.   THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES**

The cost of the administration for this project up to the Initial Distribution is $301,227.07. Schachter Decl., ¶38.  To date, the Claims Administrator has received payment of $289,790.31. *Id.*  The estimate to conduct the Initial Distribution is $14,958.84.  *Id.*; Ex. H.  Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $26,395.60, consisting of $11,436.76 for fees and expenses already accrued, and $14,958.84 in anticipation of the work that will be performed in conjunction with the Initial Distribution.[3]  *Id.*

**VIII.   RECORDS RETENTION AND DESTRUCTION**

Plaintiffs respectfully request the Court order that: (i) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation.  *Id.*, ¶39(f).

**IX.   CONCLUSION**

For all of the above reasons, Plaintiffs respectfully request that the Motion be granted.

---

[3]   If the anticipated fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

11

DATED: October 24, 2023                    **GLANCY PRONGAY & MURRAY LLP**

                                           */s/Matthew M. Houston*
                                           Matthew M. Houston (MH-2218)
                                           745 Fifth Avenue, 5th Floor
                                           New York, New York 10151
                                           Telephone: (212) 935-7400
                                           Facsimile: (212) 756-0346
                                           mhouston@glancylaw.com

                                           Garth Spencer (GS-7623)
                                           1925 Century Park East, Suite 2100
                                           Los Angeles, California 90067
                                           Telephone: (310) 201-9150
                                           gspencer@glancylaw.com

                                           *Attorneys for Lead Plaintiffs and the Settlement Class*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.

Dated: October 24, 2023                          /s/Matthew M. Houston
                                         Matthew M. Houston

13